# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAP AG and SAP AMERICA, INC., | |
| Plaintiff, | Case No. 1:11-cv-02648 KBF |
| v. | (ECF CASE) |
| DATATERN, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF SAP AG'S AND SAP AMERICA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SAP AG and SAP America, Inc. ("SAP") respectfully submit this memorandum of law in support of their motion for partial summary judgment on their declaratory judgment claim for non-infringement of U.S. Patent No. 5,937,402 (the "'402 Patent") and on DataTern, Inc.'s ("DataTern's") corresponding infringement counterclaim for damages on that same patent pursuant to Federal Rules of Civil Procedure 56 and 16.

## I.    INTRODUCTION

This case stems from DataTern's assertion of the '402 Patent, as well as U.S. Patent No. 6,101,502 (the "'502 Patent") against numerous SAP customers.  So far, DataTern has sued more than a dozen SAP customers in four different actions in Texas based at least in part on their use of various SAP BusinessObjects products.  In response, SAP brought this action to protect its customers from DataTern's ongoing litigation campaign.[1]

---

[1] The still-pending Texas customer cases have been stayed in favor of this action.  Order in *DataTern Inc. v. Staples, Inc. et al.*, 2:10-cv-00133-MHS-CMC (E.D. Tex.) [#185]; Order in *DataTern Inc. v. Eli Lilly and Company et al.*, 2:10-cv-00413-MHS-CMC (E.D. Tex.) [#180]; Order in *DataTern Inc. v. Abbott Laboratories, et al.*, 2:11-cv-00203-MHS-CMC (E.D. Tex.) [#126].

The purpose of this motion is to narrow and focus this case to what is truly at issue. DataTern has accused at least five SAP customers of infringing both the '402 and '502 Patents based on their use of SAP's BusinessObjects products.  However, it now appears that DataTern is having second thoughts concerning its allegations based on the '402 Patent.  Even though DataTern's counterclaims allege infringement of the '402 Patent, it knowingly failed to comply with the Court's unambiguous scheduling order — an order requiring service of infringement contentions charting the '402 Patent against SAP by a date that DataTern itself had proposed and then had extended.

When asked about its failure to pursue its infringement allegations regarding the '402 Patent, DataTern responded repeatedly that it viewed such a disclosure as "premature" even though DataTern first accused SAP's customers of infringing the '402 Patent nearly three years ago.  In light of this fact, and the fact that DataTern itself had proposed the date on which its infringement contentions were due only weeks earlier (and then requested and received a short extension on that date), there is absolutely nothing premature about this Court's deadline for infringement contentions.

DataTern has abandoned its allegations based on the '402 Patent, and summary judgment should be entered.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    DataTern's Customer Suits

Beginning in June 2009, DataTern brought suit against SAP customers in four different actions in the Eastern District of Texas:  *DataTern, Inc. v. The Allstate Corporation et al.* (09-cv-00178); *DataTern, Inc. v. Staples, Inc. et al.* (10-cv-00133); *DataTern, Inc. v. Eli Lilly and Company et al.* (10-cv-00413); and *DataTern, Inc. v. Abbott Laboratories et al.* (11-cv-00203).

DataTern sued a total of 72 defendants in these cases for infringement of the '402 and/or '502 Patents.

At least 15 of those defendants were accused by DataTern of infringement because of their use of SAP's BusinessObjects products. *See, e.g.*, Exhibit A to Declaration of Jeb B. Oblak ("Oblak Decl.") (DataTern contentions sent to Bank of New York Mellon Corp.). Of those 15 defendants, at least five were accused by DataTern of infringing its '402 Patent based on their use of SAP's BusinessObjects products. *See, e.g., id.* ("BNY Mellon uses SAP's Business Objects, one of many business intelligence tools that facilitates infringement of the '402 Patent"); Exhibit B to Oblak Decl. (DataTern contentions sent to BP America, Inc.); Exhibit D to Oblak Decl. (Letter from DataTern to Volkswagen Group of America, Inc.); Exhibit E to Oblak Decl. (DataTern contentions sent to Eli Lilly and Company). At least some of these contentions were served as early as September 17, 2010. *See* Exhibit C to Oblak Decl.

### B.    The Declaratory Judgment Complaint In This Case

More than a year ago, on April 18, 2011, SAP brought this declaratory judgment action in response to DataTern's litigation campaign against SAP's customers. SAP's complaint explained that DataTern's customer suits placed a cloud over SAP's BusinessObjects products by alleging they infringe *both* the '402 and '502 Patent. DJ Complaint ¶¶ 28-31. Specifically, SAP explained that DataTern alleged infringement against SAP's customers based on both patents in letters, claim charts, complaints, and infringement contentions. *Id.*

Because DataTern accused SAP's customers of infringing *both* the '402 and '502 Patents through their use of SAP's BusinessObjects products, SAP included declaratory judgment claims of non-infringement and invalidity for both patents. DJ Complaint ¶¶ 35-42.

**C.      DataTern's Answer And Counterclaims Involving The '402 Patent**

In its answer, DataTern acknowledged that it sent SAP's customers "claim charts showing infringement of the '402 and/or '502 patents."  DataTern's Amended Answer ¶ 28.  DataTern also admitted that it "contacted from time to time defendants in the various litigations currently pending in Texas, including Volkswagen (an SAP customer), and has delivered to such defendants claim charts showing infringement of the '402 and/or '502 patents."  *Id.* ¶ 29.

In addition, DataTern included with its answer a counterclaim alleging infringement of the '402 Patent, in addition to the '502 Patent, by SAP and its customers for their use of certain SAP BusinessObjects products:

> In violation of at least 35 U.S.C. § 271(b) and/or (c), SAP has been and still is contributing to and/or actively inducing infringement of the '402 patent by manufacturing, using, offering to sell and/or selling within the United States certain software programs and programming tools and instructing others how to use them, including, inter alia, BusinessObjects, or specific components, tools, or programs within BusinessObjects (i.e., the Accused Products).

*Id.* ¶ 12.  DataTern labeled this counterclaim as "conditional" pending the Court's determination that it has jurisdiction and it should go forward with this case.  *Id.*  These conditions have been met by the Court's Orders denying DataTern's Motion To Stay or Dismiss and denying DataTern's Motion for Reconsideration of the same.  February 15, 2012 Order [#43];  April 23, 2012 Order [#65].  Thus, DataTern's counterclaim based on the '402 Patent is now unqualified.

**D.      This Court's Scheduling Order Requires Infringement Contentions**

This Court issued an amended scheduling order on February 14, 2012 requiring DataTern to serve infringement contentions by March 16, 2012.  February 14, 2012 Order [#39].  This date was negotiated by the parties and jointly proposed to the Court.  Exhibit F to Oblak Decl. (e-

mails regarding negotiation); February 9, 2012 Order [#37].  In fact, after SAP proposed a set of dates which included February 16, 2012 for filing of infringement contentions, DataTern agreed to those dates provided they were all pushed back approximately 30 days.  Exhibit F to Oblak Decl.  This date was later extended to March 23, 2012 on request from DataTern.  March 16, 2012 Endorsed Letter [#54].  While DataTern timely served infringement contentions for the '502 Patent against both SAP and Microsoft, it served only Microsoft with infringement contentions for the '402 Patent.  It has not served SAP with any infringement contentions for the '402 Patent.  Declaration of Edward R. Reines ("Reines Decl.") ¶ 2.

Because DataTern abandoned its infringement claims based on the '402 Patent by failing to serve infringement contentions against SAP's products, SAP asked for a covenant not to sue that would prevent DataTern from suing SAP customers based on the use of SAP products.  Exhibit A to Reines Decl. (E-mail from Edward Reines to Lee Bromberg).  DataTern repeatedly responded that it was "premature" for it to serve contentions based on the '402 Patent because it had not decided yet whether to pursue such claims.  Reines Decl. ¶ ¶ 4-5.

## III.    ARGUMENT

### A.    This Court Should Grant Summary Judgment For SAP On Its Declaratory Judgment Claim For Non-Infringement Of The '402 Patent And Dismiss DataTern's Related Infringement Counterclaim With Prejudice

SAP's declaratory judgment non-infringement claim on the '402 Patent should be granted and DataTern's corresponding infringement allegations should be dismissed with prejudice. SAP brought this case to free itself and its customers from DataTern's infringement claims based in part on the '402 Patent.  Although DataTern counterclaimed infringement of the '402 Patent, its wholesale failure to serve SAP with infringement contentions on that patent warrants the entry of judgment against those claims.

In *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2005), the Federal Circuit affirmed a district court's grant of summary judgment based on the patentee's failure to serve timely and adequate infringement contentions.  In reaching its decision, the Federal Circuit held that its law, not regional circuit law, governs the interpretation and application of patent rules and orders, such as those at issue on this motion, that are designed to "require parties to crystallize their theories of the case early in the litigation" so as to "prevent the 'shifting sands' approach to claim construction." *Id.*  at 1364.

In *In Re Papst Licensing GMBH & Co. Litigation*, No. 07-493 (RMC) (D.D.C. February 8, 2011), the district court applied *O2 Micro* to narrow and focus the case based on the limited scope of the contentions that were timely served.  In *Papst*, although the patentee served infringement contentions regarding the patent at issue, the contentions were too vague and otherwise insufficient.  As a result, the court barred the patentee from asserting the patent-in-suit against some of the defendants and otherwise limited patentee's allegations to those theories it advanced in the contentions it had served.

Even more recently, in *Enroute Systems Corp. v. ArrivalStar S.A.*, No. C11-0451 (RSL) (W.D. Wash. March 28, 2012), a Washington district court also applied *O2 Micro* to eliminate infringement claims due to the patentee's failure to serve infringement contentions.  In holding so, the court concluded that elimination of the infringement claims was warranted given the undeniable scheduling order violation.  The court explained that lack of diligence by the violating party, not prejudice, is the key issue when eliminating infringement claims based on scheduling order violations.

This Court should follow the guidance of *O2, Papst,* and *Enroute Systems* and dismiss DataTern's infringement claims on the '402 Patent based on its absolute failure to serve

infringement contentions as required by the Court's Order.  DataTern requested and received an extension from March 16, 2012 to March 23, 2012, but did not seek leave from the Court nor ask SAP for any extension of that date.  In fact, when asked about its failure to do so, DataTern replied only that providing its infringement contentions by the Court-ordered date would be "premature."  Reines Decl. ¶ ¶ 4-5.  DataTern disregarded the Court's Order and has yet to provide any valid justification for its failure to serve infringement contentions on the '402 Patent. DataTern thus has no rational basis to oppose SAP's declaratory judgment claim for non-infringement of the '402 Patent.

In fact, this is not the first time DataTern has, without leave of the Court, acted contrary to the Court's rulings.  Prior to reassignment, Judge Howell entered a scheduling order on July 22, 2011 explicitly stating that "Discovery pursuant to this case management plan shall not be stayed pending the Court's disposition of Datatern's anticipated motion to dismiss or to stay." July 22, 2011 Order [#22] (emphasis in original).  Despite the Court's order, DataTern admitted that it had "repeatedly maintained its position that it would not engage in document discovery until the motion [to stay or to dismiss] was adjudicated on the merits." Exhibit G to Oblak Decl.

DataTern's failure to serve contentions warrants entry of summary judgment. Specifically, it discharges SAP's "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  DataTern cannot identify properly preserved contentions to stave off summary judgment, much less supporting evidence, which is what *Celotex* requires.  *Id.; see also* FRCP 16(f) (authorizing the enforcement of scheduling orders).

DataTern's only explanation for its refusal to dismiss its claims based on the '402 Patent is that serving SAP with contentions would have been "premature."  Reines Decl. ¶¶ 4-5  This "prematurity" assertion is meritless for at least five reasons.  First, DataTern already asserted the '402 Patent against at least five companies based on their use of SAP's BusinessObjects products *nearly three years ago*.  *See* Exhibit H to Oblak Decl. (Complaint in *DataTern, Inc. v. The Allstate Corporation et al.*, No. 2:09-cv-178 (E.D. Tex.) filed June 2, 2009).  It should have had a basis for doing so.  Moreover, any claim that charting the '402 Patent against SAP's BusinessObjects products would be premature fails on the basis that DataTern already charted the '402 Patent against SAP's customers in the Texas actions.  *See, e.g.*, Exhibits A, B, D, and E to Oblak Decl.  Second, DataTern asserted a counterclaim for infringement of the '402 Patent in this case almost a year ago, in June of 2011.  Again, it should have had a basis for doing so.  Third, DataTern served infringement contentions for the '402 Patent on Microsoft in the co-pending action before this Court.  It knew that such contentions were due and was able to prepare them for Microsoft apparently without issue.  Fourth, DataTern failed to seek relief from this deadline from the Court *before* the deadline had passed, as required by this Court's Rules of Practice, including Section 1(E).  If DataTern believed that its contentions were premature, it was obligated to seek relief rather than ignoring the deadline — a deadline which, it should be noted, was initially proposed by DataTern itself and ordered by the Court on two different occasions, then extended once at DataTern's request.  February 9, 2012 Order [#37]; February 13, 2012 Order [#39]; March 16, 2012 Endorsed Letter [#54].  Fifth, this Court's scheduling order creates an orderly and fair sequence of events to crystallize the parties' issues and frame their claim construction disputes.  If parties could unilaterally ignore deadlines by claiming

prematurity — especially those set and even extended at their own request — this Court's scheduling order and standing orders in patent cases would be an empty letter.

Given that DataTern's explanation (or lack thereof) for its failure to serve infringement contentions has no merit, summary judgment is warranted.   Any one of the following considerations alone justifies summary judgment, but taken together they militate forcefully for summary judgment:

(1)     DataTern has not been diligent in pursuing its infringement allegations based on the '402 Patent that it conceived of at least as early as June of 2009 and plead in this case almost a year ago;

(2)     DataTern purposefully ignored the Court's (extended) deadline and failed to serve infringement contentions on the '402 Patent by the required date;

(3)     DataTern was aware of its need to meet the Court's deadline if it wanted to pursue the claims contained in its Answer;

(4)     Allowing these claims to remain in the case without compliance with the Court's scheduling order would be prejudicial to SAP because it would disrupt the entire case schedule and the sequence of events required by this Court; and

(5)     DataTern cannot allege infringement of the '402 Patent because it has no evidence to demonstrate that each requirement of the claims is met.

## IV.     CONCLUSION

For the foregoing reasons, the Court should enter judgment in favor of SAP on its declaratory judgment claim of non-infringement of the '402 Patent and against DataTern on its infringement counterclaim based on that patent.

Dated:  April 26, 2012

Respectfully submitted,

/s/ Edward R. Reines _____

Aleksander J. Goranin (*pro hac vice*)
Steven Rocci (*pro hac vice*)
Daniel J. Goettle (*pro hac vice*)
Erich M. Falke (*pro hac vice*)
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Tel. (215) 568-3100

Edward R. Reines (*pro hac vice*)
Evan N. Budaj (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Telephone: (650) 802 3000
Facsimile: (650) 802 3100

Douglas McClellan (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002-2755
Telephone: (713) 546 5000
Facsimile: (713) 224 9511

Timothy E. DeMasi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

***Attorneys for Plaintiffs-Counterclaim
Defendants***
SAP AG and SAP America, Inc.