UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICROSOFT CORPORATION, SAP AG, and SAP AMERICA, INC., | ) ) ) ) | **Consolidated Cases:** |
| Plaintiffs, | ) ) | Civil Action No. 11-cv-02365-KBF Civil Action No. 11-cv-02648-KBF |
| v. | ) ) ) ) | (Cases pending in U.S. District Court for the Southern District of New York) |
| DATATERN, INC., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT DATATERN, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
ITS OPPOSITION TO SAP'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant DataTern, Inc. ("DataTern") opposes SAP's Motion for Partial Summary Judgment for three reasons. First, SAP's argument principally hinges on its assertion that DataTern formulated and served in late 2010 contentions that SAP's BusinessObjects software infringed U.S. Patent No. 5,937,402 (the "402 Patent") in litigation against SAP's customers in matters before the United States District Court for the Eastern District of Texas. However, its sole evidence in support of this argument are four unauthenticated documents (attached as Exhibits A, B, D and E) to the Oblak Declaration which are ***not*** infringement contentions served in the Texas cases (as averred in Paragraph 2 of SAP's Rule 56.1 Statement of Facts), but are in fact illustrative and preliminary claim charts exchanged between DataTern and SAP's customers under the

cloak and protection of Fed. R. Ev. 408 in an attempt to settle those matters.  As DataTern argues in its Motion to Strike, accompanying this Opposition, the documents are unauthenticated, inadmissible and should be disregarded by the Court.  SAP points to no admissible evidence which demonstrate that the Texas cases had reached a point where infringement contentions were due and were in fact served by DataTern on SAP's customers, or even that claims alleging violation of the '402 Patent by SAP's BusinessObjects were made.

Second, SAP's Motion should be denied because DataTern's inability to formulate substantive infringement contentions with respect to BusinessObjects and the '402 Patent by the agreed upon March 23, 2012 deadline is due solely to SAP's failure to produce on a timely basis source code and technical documents (identified in its July 8, 2011 Rule 26(a)(1) "initial disclosures" on which DataTern intends to rely.   When the deadline for infringement contentions was first adopted in February 2012, DataTern understood from SAP's initial disclosures that its BusinessObjects source code and other technical material were in SAP's possession and available for review.  Despite repeated requests for this information, SAP did not provide any technical information concerning BusinessObjects until mid-April (with the vast majority coming in just the last two weeks) and still has not made available critical and relevant source code for DataTern to review.  DataTern should not suffer the severe penalty of a judgment declaring that SAP's BusinessObjects does not infringe the patent when DataTern has not yet been able to analyze confidential technical materials and the source code in order support its good faith belief that BusinessObjects infringes '402.  This Court's Procedures for Patent Cases (Attachment B, Section 1(f)) permit amendments to infringement contentions

"upon a timely showing of good cause." DataTern can conceive of no better cause than SAP's utter intransigence in producing source code and other technical documents which will permit DataTern's experts and counsel to properly formulate the infringement contentions.

Finally, although SAP requests a judgment of non-infringement of the 402 patent with regard to all SAP products, this Court lacks declaratory judgment jurisdiction over any SAP products other than BusinessObjects because that is the only product at issue in this case. *See* Complaint, ¶¶ 1, 28, 29, 31, 32.

## FACTS

Brief History of the 402 and 502 Patents

DataTern is a wholly owned subsidiary of Amphion Innovations plc. For the last 25 years Amphion and its predecessors have been in the business of funding start-ups, with a special focus on medical products and software. Amphion's central strategy involves developing strong intellectual property in its start-up companies. Amphion's major successes in the medical products industry include MediSense and Celgene, both of which are publicly traded and generate substantial revenues. *See* Declaration of Richard C.E. Morgan, attached as Exhibit 1 ("*Morgan Declaration*"), at ¶ 2. Among its start-ups was a company called Ontos which, through its employees, invented the 402 and 502 patents. *See* Morgan Declaration, ¶ 3.

The 402 and 502 patents were the product of substantial investment and many years of development work. The patents provided the pathway for software products that would facilitate data integration between systems with different legacy data structures. *Id.* at ¶ 4. Ontos and another subsidiary, FireStar Software, Inc., which had acquired both

patents from Ontos, attempted to commercialize the patents. Subsequent to 2001, FireStar and Amphion determined that the market opportunities for each patent had been overwhelmed by the infringing activities of various others, effectively forcing FireStar to develop new products to save its business. *Id.* at ¶¶ 5-7. In 2007, FireStar and Amphion agreed that FireStar should focus on building and selling new products and Amphion would attempt to recover at least some of the tremendous value of the 402 and 502 patents that had been misappropriated by others at great cost to Amphion and its investors. As a result, DataTern was formed and various patent infringement suits were filed. *Id.* at ¶¶ 7-8.

Procedural History

This case was filed in April 2011. DataTern filed its First Amended Answer and Counterclaim on July 1, 2011. *See Docket #13*. On July 8, 2011, SAP served on DataTern its Initial Disclosures Pursuant to Rule 26(a)(1). See Declaration of Daniel J. Kelly ("Kelly Declaration"), ¶ 4, Ex. 1. Judge Howell issued a Scheduling Order on July 21, 2011 that provided, among other things, for the delivery of Rule 26(a)(1) initial disclosures by September 2, 2011, exchange of claim constructions at the end of October 2011, depositions of claim construction experts by January 20, 2012 and a *Markman* hearing in April 2012. *See Docket Entry #22*. Although the Order contained no deadlines for serving infringement or invalidity contentions, it was presumed that a schedule for exchanging those documents would be adopted in the ordinary course of this infringement case.

On June 28, 2011, the Court held a Scheduling Conference. During that conference DataTern advised the Court that it would be seeking to stay or dismiss the

4

case. By Order dated June 29, 2011, the Court set a deadline of August 15, 2011 for filing all briefs related to the Motion to Dismiss or Stay. *See Docket, #13*. On January 31, 2012, Judge Howell heard arguments concerning the Motion to Dismiss or Stay this case. On that day the Court denied the Motion. *See Docket #43*.

Discovery and Infringement Contentions

In its July 8th initial disclosures, SAP identified among "the following categories of documents or things that may be in its possession, custody, or control that it may use to support one or more of its claims or defenses. . . . 5. Technical documents concerning the design, development, and operation of SAP's BusinessObjects." SAP represented that "[a]ll of these documents or things are located in the offices of Woodcock Washburn LLP, Cira Centre, 12th Floor, 2929 Arch Street, Philadelphia, PA 19104 or at one or more of SAP's United States locations (SAP America, Inc.'s corporate headquarters: 3999 West Chester Pike, Newtown Square, PA 19703)." Finally, SAP stated that it reserved the right to withhold production of these documents which contain "trade secrets, proprietary information, or other confidential information of SAP until this Court has issued a protective order preserving the confidentiality of SAP's trade secrets and other proprietary information during this litigation and thereafter." Kelly Declaration, ¶ 4, Ex. 1.

For the first time seven months later, on February 3, 2012, SAP proposed to send a draft protective order to DataTern; the draft protective order was delivered on February 7th. Kelly Declaration, ¶ 5. On February 14, counsel for DataTern conferred with counsel for SAP, during which DataTern counsel asked when SAP would make its technical materials ready for review. Notwithstanding the statements in SAP's initial

ME1 13425391v.1

disclosures, SAP counsel stated that SAP did not have any of the technical materials ready for review and, in any event, SAP would not produce the information, including source code, without a document request.  Kelly Declaration, ¶ 7.  The following day DataTern served its first request for documents.  Kelly Declaration, ¶ 8, Ex. 4.

A week later, on February 22nd, during a meeting between counsel for SAP and DataTern, Ed Reines, SAP counsel, informed DataTern that "SAP was prepared to produce immediately SAP's source code to expedite matters and conform to the Court's schedule . . . ."  *See* Declaration of Lee Bromberg, Esq. ("Bromberg Declaration"), at ¶ 2.  In the week before and after this meeting, SAP and DataTern continued negotiating a protective order and DataTern continued to request the production of the information described in SAP's initial disclosure.  Kelly Declaration, ¶¶ 8, 10, 11.  It was not until March 30th that the parties agreed on an interim protective order which was filed with the Court and entered in the docket.  Kelly Declaration, ¶¶ 13-15.

During this time, specifically on March 23rd, DataTern served its Disclosure of Asserted Claims and Infringement Contentions.  Kelly Declaration, ¶ 16.  As part of that pleading DataTern expressly reserved the right to amend the contentions.  Kelly Declaration, ¶ 16, Ex. 15.  Although DataTern had a good faith and reasonable basis for believing that SAP's BusinessObjects infringes the 402 patent, DataTern elected to omit making substantive infringement contentions with regard to the '402 Patent and BusinessObjects, reserving its rights to amend the contentions until and after it had an opportunity to review source code and other technical materials which SAP's counsel in the February 22 settlement conference stated would be made immediately available.  Bromberg Declaration,, ¶ 4.

6

It was in this context that Lee Bromberg, DataTern's counsel, engaged in discussions with Edward Reines, SAP's counsel. More specifically, in a conversation on or about March 28th Mr. Bromberg informed Mr. Reines that DataTern had prepared infringement contentions regarding BusinessObject's infringement of the 402 patent. *Id.* However, Mr. Bromberg said that DataTern decided to confirm its infringement contentions by reviewing SAP's documents and source code, all of which had been requested from SAP but not yet disclosed. *Id.* In this context, Mr. Bromberg indicated that it would be "premature" to serve infringement contentions concerning BusinessObjects and the 402 patent. *Id.* For these reasons Mr. Bromberg also indicated that it would be premature to dismiss claims of infringement of the 402 patent by BusinessObjects. *Id.*

Finally, on April 9th, SAP began producing documents. Over the past four weeks SAP has produced almost 300,000 pages and over 15 gigabytes of data and this summarizes only what DataTern has been able to successfully open and view. SAP has produced disks with single files containing thousands of pages of documents, a hard drive with almost 4,000 files on it, a myriad file formats – but **NO SOURCE CODE.** *Kelly Decl.*, ¶¶ 17-20. Indeed, it could be weeks before DataTern gains access to and uncovers the technical materials that was promised by SAP last July.

SAP's BusinessObjects and the 402 Patent

It is not disputed that DataTern has filed several patent infringement cases in Texas (the "Texas cases"). In three of the Texas cases, DataTern asserted infringement of the 402 and/or the 502 patents. After those cases were filed DataTern engaged several defendants in settlement discussions. As part of those settlement discussions DataTern

7

created and used illustrative claim charts.  Those claim charts were delivered to BP America, Inc., Eli Lilly & Company, Volkswagen Group of America, Inc. and Bank of NY Mellon.  *See* Declaration of John Caruso in Support of DataTern, Inc.'s Opposition to SAP's Motion for Partial Summary Judgment ("Caruso Decl."), ¶¶ 3, 4.   Contrary to SAP's assertions, however, DataTern did not intend to use, and did not in fact use, those illustrative claim charts for evidentiary purposes.  *Id.*  Moreover, DataTern did not serve infringement contentions in accordance with the local patent rules against BP America, Inc., Eli Lilly & Company, Volkswagen Group of America, Inc. or Bank of NY Mellon that alleged infringement of the 402 patent by BusinessObjects.  *See* Declaration of William E. Davis III, Esq. ("Davis Decl."), ¶¶ 3 – 6.

## ARGUMENT

I.  **The Court Should Deny SAP's Motion Because It Lacks Admissible Evidentiary Support, SAP Failed To Produce Critical Discovery Material And DataTern Should Retain The Opportunity To Amend Its Contentions**

"Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, this Court must view all facts in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett* , 477 U.S. 317, 323 (1986); *El Sayed* , 627 F.3d at 933." *Maywood v. Research in Motion Ltd.*, 11 Civ. 5345 (KBF) (S.D.N.Y. Jan. 24, 2012).

8

Partial summary judgment is being requested not because DataTern's '402 claim against BusinessObjects lacks merit; but rather DataTern has been unable to formulate infringement contentions by the March 23, 2012 deadlines established by the Court, despite asserting certain claims against SAP's customers in the Texas litigation, because SAP has simply refused to make the information necessary to make these contentions available until recently.  Despite SAP's suggestions, no infringement contentions concerning the 402 patent or BusinessObjects were formally served upon Eli Lilly & Company, Bank of NY Mellon, Volkswagen Group of America, Inc. or BP America, Inc.. Nonetheless, SAP chose to file this case to resolve claims in Texas that were not, in fact, presented there.  Meanwhile, DataTern has spent months trying to gain access to critical information in SAP's exclusive possession in order to confirm whether or not BusinessObjects infringes the 402 patent, access which is still being denied by SAP and DataTern should be permitted a reasonable opportunity to review SAP's technical material and amend, or not, its infringement contentions.

      A.      **The Court Should Strike All Of SAP's References To Infringement Actions Brought By DataTern Elsewhere As Misleading And Wholly Unsupported By Admissible Evidence**

For the reasons set forth in DataTern's Motion to Strike the Declaration of Jeb B. Oblak in Support of SAP AG's and SAP America, Inc.'s Motion for Partial Summary Judgment, the draft illustrative claim charts are inadmissible and should not be considered by the Court.

SAP has produced no evidence which supports its bald assertion in paragraph 2 of its Rule 56.1 Statement of Facts that DataTern served infringement contentions in the Texas cases with regard to BusinessObjects and the '402 Patent.  In fact, there is no

9

evidence before the Court that the claims brought by DataTern in the Texas actions against BP America, Eli Lilly, Bank of NY Mellon and Volkswagen Group, accused SAP's **BusinessObjects** of infringing the 402 patent.  The only actual pleading which refers to DataTern's claims cited by SAP is DataTern's Complaint against, inter alia, BP America Inc. (attached as Exhibit H to the Oblak Declaration).  The Court will find no allegation in the complaint specifically averring infringement of the '402 Patent by Business Objects.  As demonstrated by the Declaration of William E. Davis III, Esq., DataTern's patent litigation counsel in Texas, SAP's allegations that DataTern had long before this case had formulated and served infringement contentions against BP America, Eli Lilly, Bank of NY Mellon and Volkswagen Group could not be farther from the truth.  As a result, the Court should strike all statements and inferences in SAP's moving papers that DataTern asserted infringement of the 402 patent by BusinessObjects against these Texas defendants.[1]  Absent these erroneous assertions, SAP offers no basis for finding non-infringement of the 402 patent and its Motion should be denied.

> B. **SAP, Which Has Wholly Failed To Produce Critical Technical Materials Concerning BusinessObjects, Should Be Estopped From Seeking Summary Judgment Based On Omission Of Infringement Contentions Regarding The 402 Patent**

In its Rule 26 initial disclosures, filed and served on July 8, 2011, SAP represented to DataTern and the Court that the technical materials related to BusinessObjects, were located at SAP counsel's offices in Philadelphia or at SAP's facilities in the United States.  SAP further stated that it would only release those materials once an appropriate protective order was in place.  *See* Kelly Declaration, ¶ 3.

---

[1] While it appears that DataTern sent "illustrative" claim charts to several defendants in the Texas cases in which references to BusinessObjects' infringement of the 402 patent were included, this is hardly the equivalent of serving infringement contentions, subject to the requirements of Rule 11, that make the same claim.

10

SAP waited until Judge Howell's ruling on DataTern's Motion to Stay or Dismiss this case, issued on January 31, 2012, to propose a form of protective order it found acceptable.  *See* Kelly Declaration, ¶ 4.  On February 14, 2012, SAP counsel said that the BusinessObjects source code and related technical documents were not available for review and that, in any event, SAP would not produce those materials until DataTern served a formal document request.  *See* Kelly Declaration, ¶¶ 6, 7.  Nonetheless, during a meeting between counsel on February 22nd, SAP counsel informed DataTern counsel that SAP was prepared to "produce immediately SAP's source code to expedite matters and conform to the Court's schedule, . . . ."  *See* Bromberg Declaration, ¶ 2.  As of May 10, 2012, SAP has failed and refused to make the source code for the critical versions of BusinessObjects available for DataTern's inspection.  *See* Kelly Declaration, ¶ 17, 18.

This is a software patent infringement case.  It is not SAP's first engagement in infringement litigation.[2]  SAP certainly has reason to know that an essential element in the litigation of such cases is the patent holder's opportunity to inspect an accused infringer's source code, yet it has repeatedly prevented DataTern from doing so.

    C.    **Partial Summary Judgment Under All Of The Present Circumstances Is Not Supported By The Cases And Would Unjustifiably Preclude DataTern From Seeking To Amend Its Contentions**

SAP contends, by including allegations of infringement of the 402 patent in its Answer and Counterclaim, DataTern had to serve its final infringement contentions by March 23, 2012, months before discovery closed and SAP provided its source code and technical documents.  But it offers no jurisprudential support for this proposition.

---

[2] According to SAP's 2009 Annual Report, in that year SAP was engaged in not less than 11 intellectual property infringement cases, including several patent infringement cases, that were sufficiently material to warrant reporting in the Notes to SAP's Consolidated Financial Statement. *See* www.sapannualreport.com/2009/en/annual-report-2009/financial-statements/notes-to-the-consolidated-financial-statements/24-litigation-and-claims.html.

Instead, it relies on *O2 Micro Int'l Ltd. V. Monolithic Power Sys. Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) and two unreported District Court cases for the proposition that DataTern's failure to serve infringement contentions concerning the 402 patent arises from a lack of diligence and constitutes undue delay. However, the facts and circumstances in this case simply do not match the holdings in *O2 Micro* and its progeny.

SAP represented, on July 8, 2011, that the technical materials concerning BusinessObjects were available for inspection. Despite repeated requests thereof, SAP did not begin to produce those materials until three weeks ago. As recounted in pargraphs 18-21 of the Kelly Declaration, DataTern has received a virtual Niagara Falls of documents in just the last three weeks. The Bates count for these documents is up to 294,063. But that does not reveal the true picture of how massive a production SAP has made. Multiple documents are produced under a single Bates number, in native format and of file types that are not able to be reviewed in a typical litigation review tool such as CaseLogistics. Many of these files may only be reviewed or opened with the software that they are native to, and in some cases, counsel does not have those software applications readily available. On April 16, 2012, counsel for DataTern received an external hard drive with 3,973 files on it, all produced under a single Bates number consisting of 15.2 gigabytes of information. Just two days ago, on May 8, 2012, SAP produced thirteen disks. Nine of those contain software installs for certain SAP products, including BusinessObjects. This is the first time SAP has produced software for BusinessObjects. As noted below, critical source code for BusinessObjects has still not been made available. Of the remaining disks, one contains all native files with a total file count of 57,426 files, all produced under a single Bates number. The other three contain

12

99,807 Bates numbered pages.  In addition, some of the records in the disk link out to zip folder files which contain multiple documents produced under a single Bates number.

With regard to SAP source code, on April 24, 2012, and immediately following the Court's April 23, 2012 order denying DataTern's request for source code review in India, DataTern provided to SAP the CV and other requisite information for Thomas J. Carter, a software consulting expert, pursuant to Section 7.4(a)(2) of the final Protective Order.  The protective order gives SAP and Microsoft up to 5 business days to object to the disclosure of protected material to a consultant designated by DataTern.  On the fifth business day, May 1, 2012 at 3:35 p.m., SAP's and Microsoft's counsel advised DataTern that they had no objections to Mr. Carter reviewing protected material.   Counsel for DataTern then made arrangements to have Mr. Carter review the source code allegedly available for review at SAP's counsel's offices on May 7, 2012.  Mr. Carter has been at SAP's and Microsoft's counsel's offices for this entire week reviewing source code.  Although Mr. Carter has been able to review some source code for SAP's products, code critical to formulating DataTern's '402 infringement allegations (BusinessObjects version 5.0, at a minimum) has still not been made available to DataTern.

To summarize, despite DataTern's best efforts to press SAP to produce technical documents and source code concerning BusinessObjects, which is needed to support DataTern's infringement claims and which SAP has represented has been in its possession since July 8, 2011, critical source code has still not been made available to DataTern, and only within the last three weeks (the majority of which in the last few days) has SAP produced technical documents which are so vast in number that it will take weeks and thousands of manhours to sort out the relevant information.  SAP's

13

failure to timely produce technical documents and relevant source code prevents DataTern from opposing a summary judgment on SAP's declaratory judgment claim of non-infringement on the '402 patent and the dismissal of DataTern's infringement counterclaim on that patent.

Critical to the comparison between this case and *O2 Micro* is the content of the initial disclosures. According to the Federal Circuit, a significant element of its assessment (and the District Court's finding) of O2 Micro's lack of diligence was Monolithic's delivery, as part of its initial disclosures, of materials from which O2 Micro could glean an alternative infringement theory. *See O2 Micro Int'l Ltd. V. Monolithic Power Sys. Inc.*, 467 F.3d at 1367. The new infringement theory was confirmed during depositions (eleven months later) and O2 Micro still waited 3 months (14 months after the initial disclosures) before offering an amendment to its infringement contentions to assert the new theory. *Id.* There is simply no comparison between those events and this case.

SAP produced ***no technical materials of any kind*** or any substantive information related to BusinessObjects with its Rule 26 initial disclosure. And despite its representations that those materials were available upon request, SAP has just begun to make them available after months of representing they were ready for inspection. No depositions have been taken and no substantive interrogatory answers have been received. DataTern has ample and reasonable grounds to seek at an appropriate times from this Court an opportunity to amend its infringement allegations within the confines of the Court's existing discovery schedule pursuant to this Court's Individual Practices governing patent litigation. *Cf. Board of Trustees of the Leland Stanford Junior Univ. v.*

*Roche Molecular Systems, Inc.*, N.D. Cal. No. C-05-04158 (2008 WL 624771)(N.D.Cal. March 4, 2008)(request to amend infringement contentions served five months after amended contentions served held not the result of lack of diligence where other party on notice of possible infringement claim and therefore not prejudiced); *Yodlee v. CashEdge, Inc.*, N.D. Cal. No. C 05-01550 (2007 WL 1454259)(N.D.Cal. May 17, 2007)(request to amend final invalidity contentions 6 months after final invalidity contentions filed held to be for good cause where, among other things, no evidence of gamesmanship, no substantive rulings issued by the Court, newly discovered information material to invalidity defense, no substantial prejudice).

The *O2 Micro* decision is significant here not because of its ruling on O2 Micro's delay; rather, it discusses the balance that Federal Courts, including the Federal Circuit, must attempt to find between the right of parties to conduct discovery and the need to provide adequate and timely notice of infringement and invalidity claims. Specifically, the *O2 Micro* Court, in the context of analyzing the Local Patent Rules for the District Court for the Northern District of California, found that amendments to infringement contentions during discovery are permissible if such amendments are filed with "diligence." *See O2 Micro Int'l Ltd. V. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1363-1366 (Fed. Cir. 2006). This approach is codified by at least some Federal District Courts that have adopted Local Patent Rules. *See, e.g.* Patent Local Rules 3.4, 3.6 for the U.S. District Court for the Southern District of California (source code and related documents must accompany the service of invalidity contentions and patentee may amend its infringement contentions, within 30 days after the claim construction ruling, based on the source code and related documentation); Local Rule 16.6 and Appendix E,

15

U.S. District Court for the District of Massachusetts (sample scheduling order includes the opportunity to amend preliminary infringement contentions up to a certain date (30 days are suggested) before the *Markman* hearing).  *See* Davis Declaration, ¶ 7 (*American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F.Supp 2d 558 (E.D. Tex. 2005)("Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendant's allegedly infringing source code and not the source code itself . . . . [U]ntil plaintiffs have access to the source code, plaintiffs are typically unable to give highly specified infringement contentions . . . . In these situations, through Rules 3-6 and 3-7, the Patent Rules recognize the preliminary nature of plaintiff's preliminary contentions accommodate plaintiff's need to supplement their initial contentions.")).

## II.     DataTern Should Be Permitted to Conduct Discovery to Amend its Infringement Contentions and Respond to SAP's Motion

Rule 56(d)[3] provides non-moving parties with protection from being "railroaded" by premature summary judgment motions.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554 (1986).  It permits the non-moving party an opportunity to conduct discovery in order to respond to summary judgment motions when it can show that it is unable to present facts essential to its opposition.  *See* F.R.C.P. 56(d).  "The grant of summary judgment of non-infringement, with respect to accused devices whose components or methods are not readily observable and are in dispute, requires sufficient discovery to assure that the issue has been fully and fairly resolved.  Rule [56(d)] serves the dual purpose of safeguarding against too hasty a grant of summary judgment, while requiring that parties who seek time for additional discovery have not been dilatory . . . ."

---

[3] Formerly FRCP 56(f).  *See* F.R.C.P. 56, 2010 Amendment.

16

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 809 (Fed. Cir. 1999).  DataTern should be permitted time to conduct the initial discovery in this case.  With proper discovery DataTern believes it will be in a position to better inform the Court that a judgment of non-infringement is incorrect as a substantive and a procedural matter.

The Kelly Declaration, discussed above, describes the lengths to which DataTern has gone to obtain and review critical technical information about BusinessObjects and SAP's promises to make the information available with one hand while the other hand refuses to produce the material.  Among other things, and merely by way of example, DataTern expects to learn from the BusinessObjects technical materials whether and to what extent BusinessObjects defines a logical table, whether it allows users to work with a subset of columns from at least one physical table and whether it allows a user to designate one column of the logical table as a logical primary key column.  These matters go to the heart of whether BusinessObjects infringes claim 1 of the 402 patent.  The operation of BusinessObjects is not reasonably observable, which makes review of the source code and related materials critical to DataTern's infringement claims in this case.

### III.   The Court's Jurisdiction Is Limited To Existing Infringement Claims

If, notwithstanding the foregoing, the Court is inclined to grant SAP's Motion, the Court's declaratory judgment jurisdiction is limited and it lacks authority to grant all of the relief SAP requests.

The test for determining the existence of a case or controversy requires "that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a

17

decree of a conclusive character. . . ." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764 (2007). The party claiming declaratory judgment jurisdiction must show "under all the circumstances, . . . that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* It is well-established that, in patent cases, the existence of a "case or controversy must be evaluated on a claim-by-claim basis." *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269, 1281 (Fed. Cir. 2012), *quoting Jervis B. Webb Co. v. So. Sys., Inc.,* 742 F.2d 1388, 1399 (Fed.Cir.1984). The party seeking declaratory judgment must "prove the existence of facts underlying" the allegations that a case or controversy exists, *see Jervis B. Webb Co. v. So. Sys., Inc.,* 742 F.2d at 1399, and the case or controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Grain Processing Corp. v. American Maize-Products Company,* 840 F.2d 902, 906 (Fed. Cir. 1988), quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334 (1975). Where the patentee reduces the patent claims allegedly infringed, as by asserting infringement of only certain claims in its infringement contentions, the Court loses declaratory judgment jurisdiction over the unasserted claims. *See Hoffman-La Roche, Inc. v. Mylan, Inc.*, No. 2:09-01692 2009 WL 4796736 (D.N.J. Dec. 9, 2009). Applying the foregoing test, this Court never had jurisdiction over claims of infringement involving any SAP product other than BusinessObjects.

      SAP filed this case to obtain a "declaratory judgment (a) that U.S. Patent Nos. 5,937,402 (the "402 patent") and 6,101,502 (the "502 patent") are invalid and (b) that SAP's BusinessObjects enterprise software ("BusinessObjects") does not infringe the

'402 or '502 patents . . . ." Complaint, ¶ 1.  The only SAP product mentioned by SAP in its Complaint is BusinessObjects.  *See, e.g.* Complaint, ¶¶ 12, 28, 29 and 31.  In its Motion for Partial Summary Judgment, SAP admits that "DataTern has accused at least five SAP customers of infringing both the '402 and '502 Patents **based on their use of SAP's BusinessObjects products**."  *Memorandum of Law in Support of SAP's Motion for Partial Judgment*, p. 2 (emphasis added).   There is no dispute that the Complaint filed in this case, arising from DataTern's lawsuits against five SAP customers, mentions only BusinessObjects.  The attachments to the Complaint mention only BusinessObjects.  SAP's Memorandum of Law in Support of Partial Summary Judgment likewise refers only to BusinessObjects.  The Court's jurisdiction is therefore limited to whether BusinessObjects infringes the 402 and 502 patents.  Consequently, and notwithstanding the breadth of SAP's request for partial summary judgment, even if the Court were otherwise inclined to enter judgment, its authority is limited to claims of infringement involving SAP's BusinessObjects products.

## CONCLUSION

For the foregoing reasons, and based on the authorities cited, DataTern requests that the Court deny SAP's Motion for Partial Summary Judgment.  If the Court grants SAP's Motion, its jurisdiction is limited to a judgment pertaining to BusinessObjects only.

DATATERN, INC.
By its Attorneys,


  /s/ Lee Carl Bromberg
Lee Carl Bromberg, BBO# 058480
William A. Zucker, BBo #541240
Erik Paul Belt, BBO# 558620

McCarter English, LLP  
265 Franklin Street  
Boston, Massachusetts 02110  
Telephone: (617) 449-6500

## **CERTIFICATE OF SERVICE**

I certify that, on this 10th day of May, I served by electronic and first class mail true copies of this document on counsel of record for each other party.

/s/ Lee Carl Bromberg_____  
Lee Carl Bromberg