UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAP AG and SAP AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DATATERN, INC., <br><br> Defendant. | Case No. 1:11-cv-02648 KBF <br><br> (ECF CASE) |

**SAP AG AND SAP AMERICA, INC.'S REPLY IN SUPPORT OF THEIR
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

SAP AG and SAP America, Inc. ("SAP") respectfully submit this reply in support of their motion for partial summary judgment of non-infringement of U.S. Patent No. 5,937,402 (the "'402 Patent") and on DataTern, Inc.'s ("DataTern's") corresponding infringement counterclaim.

## I.   INTRODUCTION

DataTern's opposition confirms that it willfully violated this Court's scheduling order by failing to serve infringement contentions for the '402 Patent by this Court's deadline — even though it now attempts to complicate this case by vaguely keeping open that option for the future. Specifically, DataTern does not deny the following facts which establish its intentional rule violation:

1. DataTern proposed the infringement contention deadline adopted by the Court.

2. DataTern sought an extension so it could meet the deadline, but did not mention any issue relating to the '402 Patent.

3. The Court granted DataTern an extension to prepare its infringement contentions.

4. DataTern was well aware that this Court specifically requires extensions to be sought in *advance* of the expiration of a deadline.

5. DataTern never mentioned any issue that prevented if from complying with the extended deadline due to discovery, but nevertheless failed to serve contentions for the '402 Patent.

DataTern's lead argument in response — *to wit*, that its prior infringement contentions are inadmissible — fails, as does its attempts to justify its rule violation. Without good cause, this Court's schedule should not be disrupted and its orders ignored to the tactical advantage of the rule-breaker. There is no good cause here and the motion should be granted so that the parties can focus on the many complex issues properly preserved in this case.

## II.   DATATERN'S RESPONSE CONFIRMS THE MOTION SHOULD BE GRANTED

DataTern makes two arguments to attempt to stave off summary judgment. DataTern's lead argument is that its prior '402 Patent infringement contentions are inadmissible. Its second argument is that it should be relieved of the deadline for good cause. Each will be addressed in turn. Finally, the practical problems with DataTern's proposal are explained.

### A.   DataTern's Prior Infringement Contentions Are Admissible

Surprisingly, DataTern's feature argument is a weak evidentiary point. The fact is that DataTern prepared '402 Patent infringement contentions years ago targeted specifically at SAP's BusinessObjects products — the same products that are at issue in this case. Declaration of Jeb B. Oblak in Support of SAP's Motion for Partial Summary Judgment ("Oblak Decl."), Exhs. A, B, D, and E ("Preexisting Infringement Contentions"). It is also a fact that the Preexisting Infringement Contentions were used by DataTern to pressure SAP customers to settle for a fraction of the cost of defense. *See, e.g.*, Declaration of Lisa S. Buccino in Support of SAP's Opposition to DataTern's Motion to Stay or Dismiss [DI 25] ("Buccino Decl."), Exhs. D-F. For example, DataTern offered to settle with Volkswagen for its use of SAP's BusinessObjects software for $300,000 to license the "patents-in-suit." Buccino Decl., Exh. D; Oblak Decl., Exh. D [Oct. 11, 2010 DataTern Letter to Volkswagen]. The patents to which DataTern refers in that letter are the '402 Patent and U.S. Patent No. 6,101,502 (the "'502 Patent"), which were the only two patents identified in the complaint. *Id.*

A review of the Preexisting Infringement Contentions shows that they are labeled "Infringement Contentions" and look exactly like the infringement contentions required by this Court's order (notwithstanding DataTern's attempt to deny this and instead call them "claim charts"). These exhibits are highly relevant to this motion because they single-handily disprove

DataTern's assertion that it did not believe it had sufficient information to prepare the infringement contentions that this Court required to be served by a stipulated deadline back in March. DataTern's attempt to deprive the Court of the ability to consider these exhibits on evidentiary grounds is meritless, as shown below.

DataTern's first argument challenges the authenticity of the exhibits. DataTern insinuates that the Preexisting Infringement Contentions are not what they purport to be. But DataTern's Answer in this case acknowledges that it had sent to SAP's customers the Preexisting Infringement Contentions attached to the complaint. DataTern's Amend. Answer ¶¶ 28-29. If any doubt were to remain as to the authenticity of the exhibits in question, it would be eliminated by the Declaration of John Caruso, DataTern's Chief Executive Officer. In his declaration, prepared by DataTern itself, he testifies directly to the authenticity of the challenged exhibits: "The illustrative claim charts used by DataTern in these settlement negotiations are the *same* documents that SAP purports to offer as evidence in support of its Motion for Partial Summary Judgment, attached as Exhibits A, B, D, and E to the Declaration of Jeb B. Oblak in Support of SAP AG's and SAP America, Inc.'s Motion for Partial Summary Judgment ("Oblak Declaration")." Declaration of John Caruso in Support of Opposition of DataTern, Inc. to SAP's Motion for Partial Summary Judgment ("Caruso Decl. ") ¶ 4 (emphasis added).

When all its papers are studied, DataTern's only real quibble is that, although the documents themselves are labeled "Infringement Contentions," DataTern would characterize them instead as informal claim charts. For the purposes of this motion, this is a distinction without a difference; regardless, it is certainly not a legitimate authenticity objection. It should be noted that DataTern also appears to deny that it asserted the '402 Patent in its prior litigation against customers of SAP. For this it apparently relies on the phrase in those complaints that

SAP's customers' use of BusinessObjects software infringes the "'402 Patent and/or the '502 Patent." This is an attempt to make far too much out of far too little.

DataTern's second evidentiary point relates to FRE 408. This objection fares no better because it misapprehends the purpose of these exhibits. SAP has *not* submitted DataTern's Preexisting Infringement Contentions to prove that SAP's customers do not infringe. Rather, SAP submits those exhibits because they prove that DataTern believed it had adequate information to formulate infringement contentions long before it violated this Court's deadline to serve the same on SAP itself. FRE 408 is irrelevant because it only prevents the use of settlement communications to prove the validity or amount of claims. DataTern's evidentiary objection is meritless.

### B.     DataTern Has Not Shown Good Cause For Its Rule Violation

DataTern attempts to excuse its failure to serve the required infringement contentions for the '402 Patent based on supposed discovery misdeeds of SAP that prevented it from having the information it needed to prepare its contentions. That is its only attempt to justify its position. But this is flatly inconsistent with the record.

First, as demonstrated above, DataTern prepared infringement contentions years ago charting infringement of the '402 Patent to help it pressure SAP customers to settle. Its argument now that it was unable to prepare infringement contentions with the information it had at the deadline in this case because Rule 11 applies in litigation, but not to its settlement tactics, should be an embarrassment to DataTern. DataTern Opp'n at 10 n. 1.

Second, DataTern asserted infringement of the '402 Patent in its counterclaims. Especially in view of its prior assertions of the '402 Patent, it should have had a basis for its counterclaims that would allow it to prepare the required infringement contentions.

Third, until February, DataTern refused totally to engage in discovery on the ground that its motion to stay was still pending. Oblak Decl., Exh. G [Feb. 10, 2012 DataTern Email to SAP] ("DataTern repeatedly maintained its position that it would not engage in document discovery until the motion [to stay] was adjudicated."). This dilatory position was a square violation of Judge Holwell's July 21, 2011 Order [DI 22] which specified that "Discovery pursuant to this case management plan <u>shall not</u> be stayed pending the Court's disposition of Datatern's anticipated motion to dismiss or to stay." [DI 22] (emphasis in original). This violation of a Court Order is inconsistent with any good cause argument.

Fourth, when, on February 9, DataTern agreed to a March 16 date for service of infringement contentions, it had served no document requests and it had not mentioned a need for the production of source code or any other information before it could comply with its own proposed infringement contention deadline. Indeed, the discovery correspondence shows that it was *SAP* that sought to get discovery going, but that it was *DataTern's* position even after its stay motion was denied that no such discovery should take place until the protective order was negotiated and entered. Oblak Decl., Exh. G [Feb. 10, 2012 DataTern Letter to SAP] at 1 ("DataTern will not produce documents until there is a mutually agreeable confidentiality order in place."); Kelly Decl., Exh. 7 [Feb. 24, 2012 Email Chain btw DataTern and SAP] at 3 ("we [DataTern] are ready to begin document production as soon as we resolve our differences over the proposed protective order."); Kelly Decl., Exh. 8 [Feb. 28, 2012 Email Chain btw DataTern and SAP] at 1 ("We [DataTern] are concerned about an exchange limited to "attorney's eyes

6

only" without a written agreement in place governing the terms and conditions of the use of such documents.").

Fifth, given DataTern's refusal to produce any confidential information without a completed protective order, and its insistence on sending SAP's source code to India under unsafe conditions, it had no reasonable basis to believe that SAP would produce its source code before the infringement contention deadline.  This Court ultimately agreed that SAP was entitled to greater protection for its source code than DataTern was willing to provide.

Sixth, when DataTern sought an extension of the deadline for infringement contentions from March 16 to March 23 it never mentioned that it would need source code or any other discovery before it could comply with the Court's schedule; nor would such a position make sense.  DataTern could not have expected to resolve the protective order issues, gain access to source code, and integrate that analysis into its infringement contentions within a matter of days.

Seventh, even though the parties raised with the Court the protective order issues concerning source code on multiple occasions, and even though DataTern stipulated to a deadline and requested an extension from the Court, it *never* mentioned a discovery need before it could comply with the stipulated dates.  Especially in view of this Court's Rule of Practice, Section 1(E) requirement that deadlines be modified in advance (obviously to the extent practical), DataTern's failure to raise its supposed inability to meet the infringement contention deadline due to discovery issues is inconsistent with any good cause argument.

Eighth, DataTern has not provided any coherent explanation for why it could timely serve infringement contentions for the '502 Patent against SAP and both the '402 and 502 Patents against Microsoft without the discovery materials it now claims it needs.

### C.     DataTern's Disregard For The Schedule, If Permitted, Would Disrupt The Schedule Prejudicially

As explained in *O2 Micro*, and applied in *Papst* and *Enroute Systems*, the issue for "good cause" to amend focuses on diligence, not prejudice when there is a wholesale addition proposed that would change the case fundamentally. *O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355 (Fed. Cir. 2006); *In re Papst Licensing GmbH & Co. KG Litigation*, No. 07-493 (RMC) (D.D.C. Feb. 8, 2011); *Enroute Systems Corp. v. ArrivalStar S.A.*, No. C11-0451 (RSL) (W.D. Wash. Mar. 28, 2012).  Indeed, adding a whole patent to the case is not a bona fide amendment to contentions, as there are no '402 Patent infringement contentions to amend. DataTern abandoned its claim of infringement of the '402 Patent when it served infringement contentions omitting that patent. *See Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269 (Fed. Cir. 2012) (finding that, because plaintiff's infringement contentions contained fewer claims than those encompassed in the complaint, the case has been "narrowed" to exclude such claims).

Even DataTern does not argue that proof of prejudice is required and it does not cite, much less distinguish, *Papst* or *Enroute Systems*.  This makes sense because the disruption of the Court's schedule is itself prejudicial both to the parties and to the Court.  If parties could ignore schedules and shift the burden to the harmed party to prove prejudice, the system would not work sensibly.

This case is a good example.  DataTern's delay is disruptive and prejudicial.  The best explanation for DataTern's failure to assert the '402 Patent against SAP is that such an assertion of the '402 Patent against SAP's products would force DataTern to apply its patent so broadly that it would become invalid.  The parties have already proposed constructions and submitted

8

claim construction briefs.  Invalidity contentions have been submitted without view of DataTern's overbroad application of the claims that would have been required.  This would also allow DataTern to review the invalidity contentions before creating and serving its infringement contentions, which is contrary to this Court's schedule and gives DataTern an obvious tactical advantage that it was not meant to have.

In addition, the schedule is already densely packed.  Fact discovery close and expert report preparation is almost upon us.  Requiring a fire-drill to introduce infringement contentions against SAP based on the '402 Patent into this case months late would create obvious prejudice and distraction.

## III.   CONCLUSION

For the foregoing reasons, the Court should enter judgment in favor of SAP on its declaratory judgment claim of non-infringement of the '402 Patent and against DataTern on its infringement counterclaim based on that same patent.

Dated:  May 21, 2012                                                                  Respectfully submitted,

*/s/ Edward R. Reines*

| | |
|---|---|
| Aleksander J. Goranin (*pro hac vice*) | Edward R. Reines (*pro hac vice*) |
| Steven Rocci (*pro hac vice*) | Evan N. Budaj (*pro hac vice*) |
| Daniel J. Goettle (*pro hac vice*) | WEIL, GOTSHAL & MANGES LLP |
| Erich M. Falke (*pro hac vice*) | 201 Redwood Shores Parkway |
| WOODCOCK WASHBURN LLP | Redwood Shores, CA 94065-1134 |
| Cira Centre, 12th Floor | Telephone: (650) 802 3000 |
| 2929 Arch Street | Facsimile: (650) 802 3100 |
| Philadelphia, PA 19104 | |
| Tel. (215) 568-3100 | Douglas McClellan (*pro hac vice*) |
| | WEIL, GOTSHAL & MANGES LLP |
| | 700 Louisiana, Suite 1600 |
| | Houston, TX 77002-2755 |
| | Telephone: (713) 546 5000 |
| | Facsimile: (713) 224 9511 |
| | |
| | Timothy E. DeMasi |
| | WEIL, GOTSHAL & MANGES LLP |
| | 767 Fifth Avenue |
| | New York, NY 10153 |
| | Telephone: (212) 310-8000 |
| | Facsimile: (212) 310-8007 |

***Attorneys for Plaintiffs-Counterclaim Defendants***
SAP AG and SAP America, Inc.