UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAP AG and SAP AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DATATERN, INC., <br><br> Defendant. | Case No. 1:11-cv-02648 KBF <br><br> (ECF CASE) |

**SAP AG AND SAP AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DATATERN'S MOTION TO STRIKE PORTIONS OF THE <u>DECLARATION OF JEB B. OBLAK</u>**

SAP AG and SAP America, Inc. ("SAP") hereby oppose DataTern, Inc.'s ("DataTern's") Motion to Strike Portions of the Declaration of Jeb B. Oblak Filed in Support of SAP AG's and SAP America, Inc.'s Motion for Partial Summary Judgment and References and Inferences Arising Therefrom (the "Motion to Strike").

## I.     INTRODUCTION

DataTern makes two arguments to support its assertion that portions of the Declaration of Jeb B. Oblak (the "Oblak Declaration") should be stricken: (1) the relevant portions of the Oblak Declaration were not made upon personal knowledge but instead only on information or belief; and (2) the infringement contention exhibits to the Oblak Declaration do not constitute admissible evidence.

DataTern's first argument fails because DataTern mooted the issue of authenticity of the infringement contention exhibits by acknowledging their authenticity in its opposition to SAP's Motion for Partial Summary Judgment and the supporting declarations and exhibits. DataTern's second argument fails because the Federal Rules of Evidence specifically anticipate and disallow the misuse of FRE 408 that DataTern attempts in its Motion to Strike. Finally, the evidence strongly suggests that the infringement contentions DataTern used in other cases were in fact served in at least some instances on SAP's customers as the formal contentions in the case.

## II.    DATATERN'S AUTHENTICITY ARGUMENT HAS BEEN MOOTED BY ITS OWN FILINGS

DataTern's first argument is based on the authenticity of its infringement contentions (Exhs. A, B, D, and E to Oblak Declaration (the "Preexisting Infringement Contentions")). DataTern argues that Jeb Oblak's Declaration authenticating the Preexisting Infringement Contentions is merely based on information and belief and thus cannot properly authenticate

2

those documents.  But DataTern itself has authenticated the Preexisting Infringement Contentions in multiple ways, so this evidentiary dispute is a wasteful distraction.

At the outset, DataTern's Answer in this case acknowledges that it sent to SAP's customers the Preexisting Infringement Contentions attached to the complaint.  DataTern's Amend. Answer ¶¶ 28-29.  If any doubt were to remain as to the authenticity of the exhibits in question, it would be eliminated by the Declaration of John Caruso (DataTern's Chief Executive Officer) in Support of DataTern's Opposition to SAP's Motion for Partial Summary Judgment.  In his declaration, prepared by DataTern itself, he testifies directly to the authenticity of the challenged exhibits:  "The illustrative claim charts used by DataTern in these settlement negotiations are the *same* documents that SAP purports to offer as evidence in support of its Motion for Partial Summary Judgment, attached as Exhibits A, B, D, and E to the Declaration of Jeb B. Oblak in Support of SAP AG's and SAP America, Inc.'s Motion for Partial Summary Judgment ("Oblak Declaration")."  Declaration of John Caruso in Support of Opposition of DataTern, Inc. to SAP's Motion for Partial Summary Judgment ("Caruso Decl.") ¶ 4 (emphasis added).  Given these statements, the Oblak Declaration (though itself still correct) is no longer necessary to authenticate the documents in question because DataTern has done so itself.

### III. DATATERN'S PREEXISTING INFRINGEMENT CONTENTIONS ARE ADMISSIBLE

DataTern in fact and undisputedly prepared U.S. Patent No. 5,937,402 ("'402 Patent") infringement contentions years ago targeted specifically at SAP's BusinessObjects products — the same products that are at issue in this case.  It is also undisputed that at least some of the Preexisting Infringement Contentions were used by DataTern to pressure SAP's customers to settle for a fraction of the cost of defense.  *See, e.g.*, Declaration of Lisa S. Buccino in Support of

3

SAP's Opposition to DataTern's Motion to Stay or Dismiss [DI 25], Exhs. D-F.  For example, DataTern offered to settle with Volkswagen for its use of SAP's BusinessObjects software for $300,000 to license the "patents-in-suit."  Declaration of Lisa S. Buccino [DI 25], Exh. D; Oblak Decl., Exh. D [Oct. 11, 2010 DataTern Letter to Volkswagen].

A review of the Preexisting Infringement Contentions shows that they are labeled "Infringement Contentions" and look exactly like the infringement contentions required by this Court's order (notwithstanding DataTern's attempt to deny this and instead call them "claim charts").  These exhibits are highly relevant to SAP's Motion for Partial Summary Judgment because they single-handily disprove DataTern's assertion that it did not believe it had sufficient information to prepare the infringement contentions that this Court required to be served by a stipulated deadline back in March.  DataTern's attempt to deprive the Court of the ability to consider these exhibits on two evidentiary grounds is meritless, as shown below.

DataTern's first evidentiary point relates to the authenticity of the documents, as discussed above in Section II, *supra*.  DataTern itself has authenticated the Preexisting Infringement Contentions and thus no further analysis of the sufficiency of the Oblak Declaration is necessary.

DataTern's second evidentiary point relates to FRE 408.  This objection fares no better because it misapprehends the purpose of these exhibits.  SAP has not submitted DataTern's Preexisting Infringement Contentions to prove that SAP's customers do not infringe.  Similarly, SAP has not submitted DataTern's Preexisting Infringement Contentions to attack DataTern's credibility through impeachment.  Rather, SAP submitted those exhibits because they prove that DataTern believed it had adequate information to formulate infringement contentions long before it violated this Court's deadline to serve the same on SAP.  FRE 408 is irrelevant because it only

proscribes the use of settlement communications to prove the validity or amount of claims, or to impeach a witness through prior inconsistent statement or by contradiction. Fed. R. Evid. 408.[1]

DataTern describes SAP's inclusion of these documents with its Motion for Partial Summary Judgment as an attempt to "impeach through a prior inconsistent [statement] or contradiction." Fed. R. Evid. 408. But DataTern confuses the matter of witness impeachment with that of demonstrating a material fact through admissible evidence. By introducing the Preexisting Infringement Contentions, SAP is not attempting to impeach any witness.

SAP introduced the Preexisting Infringement Contentions to demonstrate a material fact in issue — the fact that DataTern believed it had adequate information to formulate infringement contentions long before it violated this Court's deadline to serve the same on SAP. That this material fact happens to be counter to a statement DataTern made in its infringement contentions does not in any way make SAP's *purpose* in introducing the Preexisting Infringement Contentions to attack DataTern's credibility through impeachment. Thus DataTern's evidentiary argument must fail, and the Preexisting Infringement Contentions should be admitted for the purpose for which they were submitted — to demonstrate a material fact in issue, which is "another purpose" separate and apart from those proscribed by FRE 408.

Furthermore, it appears that at least some of the four exhibits in question were not "illustrative claim charts" at all, as DataTern alleges, and thus not subject to FRE 408.[2] Exhibit

---

[1] FRE 408(a) states that "[e]vidence of [compromise offers and negotiation] is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FRE 408(b) states that "[t]he court <u>may admit this evidence for another purpose</u> . . . ." (emphasis added).

[2] "[N]o infringement contentions concerning the 402 patent or BusinessObjects were formally served upon Eli Lilly & Company, Bank of NY Mellon, Volkswagen Group of America, Inc. or BP America, Inc.." DataTern Opposition to SAP's Motion for Partial Summary Judgment at 9;

C to Jeb Oblak's declaration is Plaintiff DataTern, Inc.'s Notice of Compliance with P.R. 3-1 and 3-2, signed and dated September 17, 2010 (the "Notice of Compliance"). In that document, DataTern states that "Plaintiff [DataTern] has disclosed its respective 'Disclosure of Asserted Claims and Preliminary Infringement Contentions' on each individual Defendant as required by the Court's order (Dkt. 206) and Patent Rules 3-1 and 3-2 on September 17, 2010." This document was filed in multiple cases, including *DataTern, Inc. v. The Allstate Corporation et al.* ("*Allstate*"). One such "individual Defendant" in the *Allstate* litigation was BP America, Inc.

Exhibit B to Jeb Oblak's Declaration, one of the documents that DataTern contends is inadmissible under FRE 408, is entitled "BP America, Inc. Infringement Contentions U.S. Patent No. 5,937,402". The terms "claim chart", "preliminary", "illustrative", and "408" do not appear in the document. The document does, however, contain a column titled "Accused Instrumentalities Utilizing SAP Business Objects", and further states "DataTern reserves the right to amend and supplement this disclosure after the disclosure of BP confidential information, including the source code for the programs used by BP as well as other confidential information in the possession, custody or control of BP." DataTern has made no showing, aside from bare assertion, that this document is not what it purports to be on its face, especially in light of the Notice of Compliance: Infringement Contentions served by DataTern on BP America, Inc. during the course of the *Allstate* litigation, not subject to FRE 408.

Corroborating this fact further is a communication SAP received from Allstate Insurance Company dated November 3, 2010, the cover letter to which states, in part:

---

"there is no evidence before the Court that the claims brought by DataTern in the Texas actions against BP America, Eli Lilly, Bank of NY Mellon and Volkswagen Group, accused SAP"s BusinessObjects of infringing the 402 patent." *Id.* at 9-10.

On September 17, 2010, DataTern served its Disclosure of Asserted Claims and Preliminary Infringement Contentions.  In those contentions, for the first time in the litigation, DataTern accused Allstate of infringement 'through its use, operation and maintenance of databases which use SAP's BusinessObjects.'
Exh. A to Declaration of Lisa S. Buccino ("Buccino Decl."). This statement comports with the Notice of Compliance, as Allstate Insurance Company was a defendant in the *Allstate* litigation. The Infringement Contentions served by DataTern on Allstate, like those served on BP America, Inc., refer to "Accused Instrumentalities Utilizing SAP Business Objects" in the context of "Allstate Insurance Company Infringement Contentions U.S. Patent No. 5,937,402". Exhs. B-C to Buccino Decl.  Indeed, they contain an identical reservation of rights as the Infringement Contentions served on BP America, Inc., as quoted above.  *Id.*  This incredible similarity leads to only one logical conclusion — that Exhibit B to Jeb Oblak's Declaration is a copy of the Infringement Contentions that were formally served on BP America, Inc. by DataTern in the *Allstate* litigation.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny DataTern's Motion to Strike with prejudice so that it might rule on SAP's Motion for Partial Summary Judgment using all relevant, admissible evidence available to it.

Dated: May 29, 2012

Aleksander J. Goranin (*pro hac vice*)
Steven Rocci (*pro hac vice*)
Daniel J. Goettle (*pro hac vice*)
Erich M. Falke (*pro hac vice*)
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Tel. (215) 568-3100

Respectfully submitted,

/s/ Edward R. Reines
Edward R. Reines (*pro hac vice*)
Evan N. Budaj (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Telephone: (650) 802 3000
Facsimile: (650) 802 3100

Douglas McClellan (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002-2755
Telephone: (713) 546 5000
Facsimile: (713) 224 9511

Timothy E. DeMasi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

***Attorneys for Plaintiffs-Counterclaim Defendants***
SAP AG and SAP America, Inc.