

# McCARTER & ENGLISH
ATTORNEYS AT LAW

August 14, 2012

VIA HAND DELIVERY

The Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/20/12
```

Re: **Microsoft Corporation v. DataTern, Inc.**
No. 11-cv-2365-KBF
**SAP AG and SAP America, Inc. v. DataTern, Inc.**
No. 11-cv-2648-KBF

William A. Zucker
Partner
T. 617.449.6516
F. 617.607.9152
wzucker@mccarter.com

McCarter & English, LLP
265 Franklin Street
Boston, MA 02110-3113
T. 617.449.6500
F. 617.607.9200
www.mccarter.com

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

Dear Judge Forrest:

DataTern, Inc. ("DataTern") respectfully requests a conference, pursuant to 1.E and 2.F of the Court's Individual Practices and Local Rule 37.2, to discuss a motion to compel and an extension of the discovery schedule with the following relief: an order requiring (i) SAP AG and SAP America, Inc. ("SAP") to produce immediately and to certify to the Court that SAP has produced all of its financial and related documents requested by not yet produced to DataTern, including permitting DataTern to have access to SAP's ISP and CO-PA financial databases as requested below; (ii) to suspend all damages depositions until seven business days following such certification so that DataTern can have a reasonable amount of time to confirm production; and (iii) to extend the period for completion of such depositions for three weeks thereafter. DataTern does not at this time seek other changes in the Court's scheduling order as it relates to the issues of infringement or validity. This request follows several meetings and telephone conferences with opposing counsel in which DataTern has not been able to resolve the disputes outline below.

The grounds in support of this request are that SAP, in conjunction with Microsoft, have continued their practice of providing large volumes of documents late, just before critical events, or not at all. This case should be decided on its merits, not on the basis of well-rehearsed tactics by Plaintiffs. On July 11, 2012, this Court ordered: "If a late production and/or large volume of documents produced during discovery require depositions to be reopened, the Court will entertain such applications." Given the continuance of such tactics in the face of this Court's order of July 11, 2012 and the unreasonable and costly burden upon DataTern and its counsel of repetitive document searches and depositions, DataTern respectfully requests that the Court grant this relief.

As of June 28, 2012, SAP had not produced any financial documents associated with any of the allegedly infringing Business Objects ("BO") products. On that date, after several meet and confers, SAP began producing limited financial information, consisting of special reports prepared specifically for this litigation, that purportedly had been extracted from an SAP database called CO-PA. The reports contained

ME1 13933960v.1

only revenue for a limited set of products and did not contain other portions of the CO-PA database that showed convoyed sales of products. On July 12, SAP identified by email for the first time certain additional products (either in the form of license "packages" or individual products which allegedly "use or consume" the BO "universe/semantic layer" which is the guts of BO's platform) for which it is now agreeing to provide financial data. SAP later amended this list on July 17, identifying in total 18 products and/or packages. Following July 17, we have received on a periodic basis (the last ones being received on the evening of August 8, 2012) the same form of specially prepared reports in excel format which allegedly extract revenue information from SAP's CO-PA database. (SAP has also produced limited financial information prior to its stock purchase of the company Business Objects completed in January, 2008. The same deficiencies exist with respect to this information). These productions are late, have come on the eve of, or after, critical depositions and remain woefully inadequate for the following reasons:

First, SAP has not produced any financial information concerning the sale of products which are bundled with the 18 products and/or packages that allegedly use or consume the BO platform. SAP still refuses to produce them. Despite repeated admissions in other SAP's documents, and by their witnesses, that the accused products are sold to customers along with other products as a "solution," SAP has failed to produced data concerning the products which are bundled with the infringing products as part of the solution contracts. SAP has refused to produce the contracts, sales order forms, invoices and other documents memorializing the sales.

Second, SAP has produced no financial information concerning the source of at least half its annual revenue – maintenance and support services. Such services are bundled with and sold at the same time as the SAP products at issue.

Third, SAP has produced little to no profitability and cost information with respect to any of the SAP products, including profit and loss statements, standard costs reports or other documents that identify or meaningfully summarize direct material, direct labor, manufacturing overhead, research and development costs, advertising and promotional costs, returns, discount allowances or policies, and net sales for the relevant products and services; and royalties paid by SAP for any comparable licenses.

Fourth, although SAP has produced documents which brag about the significantly increased market penetration it has been able to achieve as a result of its "partnering" arrangements through "indirect" sales by resellers, valued added resellers, systems integrators, OEMs, independent software vendors and other "partners", SAP has failed to produce any documents concerning these "partners," including its contracts with them, its indirect price lists, and financial data concerning revenue, profit and costs associated with such indirect sales.

Fifth, SAP does surveys and various market analyses and studies regarding the use of SAP Products. They have all been requested. At 11:45 p.m. August 1, 2012, the evening before the deposition of Jason Rose, SAP's Rule 30(b)(6) designee for

August 14, 2012
Page 3

market surveys concerning use of SAP's products, SAP emailed copies of two internal surveys conducted in 2008 and 2010, the first documents we have received concerning this topic. During his deposition, Mr. Rose identified five additional surveys or groups of surveys within SAP regarding Business Objects (Gartner, Dresner & Associates, "BI Scorecard," "SAP Listens" and "Enterprise Management Associates"). We were unable to examine Mr. Rose on these surveys as they were not provided. We still have not received them.

On August 9, 2012, DataTern took the deposition of Bob Bush, a financial analyst at SAP designated to testify as a 30(b)(6) witness on revenue. Mr. Bush created the CO-PA spreadsheets that have been produced in this litigation. In his testimony, Mr. Bush stated that the CO-PA reports were prepared at the direction of counsel and do not reflect all information included in the CO-PA database. For instance, the CO-PA database permits a user to access invoice and contract information for each solution sold to SAP customers, yet that information was not included in the reports produced. Mr. Bush also testified that the data in CO-PA comes from SAP's financial database called ISP which includes, inter alia, copies of all contracts, invoices, and profitability information.

Because of the piecemeal, incomplete, and late production by SAP, DataTern has asked for its damages experts, cleared under the Protective Order, to have access to the CO-PA and ISP databases at the expense of SAP. DataTern's access would be much like the similar access to SAP's source code provided to DataTern's technical experts. Because this pattern of conduct has been prejudicial and costly to DataTern in its defense and prosecution of this matter, such access should be provided at the expense of SAP with all SAP business intelligence tools available for examining and mining the data.

For these reasons, we seek a conference pursuant to Rule 37.2 and are prepared to file a motion to compel with respect to the documents at issue and the relief requested.

Respectfully,

*William A. Zucker*
William A. Zucker

WAZ/jrg

cc: Counsel for Microsoft and Counsel for SAP