

INTELLECTUAL PROPERTY LAW
ATLANTA • PHILADELPHIA • SEATTLE

PHILADELPHIA OFFICE
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
215.568.3100
Fax: 215.568.3439

DANIEL J. GOETTLE
215.564.8974
dgoettle@woodcock.com







*Via Hand Delivery*

August 17, 2012

Honorable Katherine B. Forrest
Daniel Patrick Moynihan - U. S. Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

**Re:** ***Microsoft Corp., SAP AG and SAP America, Inc. v. DataTern, Inc.***
**Case Nos. 2011-cv-02648 and cv-02365 (KBF)**

Dear Judge Forrest:

On behalf of Microsoft Corporation, we write in response to DataTern's August 14, 2012 letter relating to Microsoft's alleged discovery deficiencies. Contrary to DataTern's contentions, Microsoft has fully complied with its discovery obligations.

Although DataTern's letter contains a somewhat confusing and conclusory narrative of perceived injustices, its specific complaints appear to break down into the following: (1) Microsoft produced certain information supposedly too late to be used in a deposition on August 10; and (2) Microsoft supposedly has not produced adequate financial information. We address these in turn.

With respect to the extent and timing of production, DataTern acknowledges that Microsoft has already produced substantial document discovery. That production was timely because it was substantially complete before July 9. Between February 2012, when DataTern first requested documents, and July 9, 2012, Microsoft produced more than 1.8 million pages of documents, more than 95% of all documents produced. The remaining 5% were produced in the weeks thereafter. The only "late" production specified in DataTern's letter is a single Federal Express packet of documents sent on August 8 (which contained documents that upon further review did not qualify for Microsoft's privilege log). These documents allegedly could not be used for a deposition on August 10. To the contrary, Microsoft suggested to DataTern's counsel, at the deposition, that they take time to review the documents and then continue questioning the witness about them. After this first suggestion was rejected, Microsoft even offered to make the witness available on Saturday, August 11 for additional questions on those documents, but DataTern declined this offer as well. Further, DataTern fails to identify any additional questions it would have asked the witness about these particular documents had its counsel reviewed them prior to the deposition. We respectfully submit that the most efficient way to deal with this complaint is for DataTern to provide any additional questions in writing that it claims it would have asked the witness about such documents and Microsoft will then respond.






DataTern's broader assertion that Microsoft's production of financial documents has been inadequate should be rejected. Contrary to DataTern's suggestion, Microsoft produced revenue and unit information for each of the software products "sold" (more accurately licensed for a fee) that have been accused of infringement in DataTern's counterclaims and infringement contentions. Those products are "Visual Studio" and versions of "SQL Server" that include "Business Intelligence Development Suite" ("BIDS"). The other so-called "products" -- ADO.NET, Entity Framework, and LINQ to SQL -- are not products at all, but features included or shipped with the accused Visual Studio and/or SQL Server with BIDS products. Microsoft does not maintain separate sales information regarding the features of expressed interest to DataTern (ADO.NET, Entity Framework, and LINQ to SQL) because none are sold separately.

DataTern further complains that Microsoft provided "incomplete" financial information relating to Visual Studio by limiting production to sales through "Distributors" and "Resellers." But that is untrue as DataTern itself acknowledged on the record of the August 15 deposition of Microsoft's financial witness taken the day after DataTern's letter to the Court. Microsoft, in fact, produced complete financial information.

DataTern also claims that Microsoft "omitted" financial documents relating to Windows. DataTern's counterclaim and infringement contentions contain no mention of Windows whatsoever, and for good reason. DataTern's patent claims cannot be stretched to embrace Windows under any interpretation. Nor do DataTern's document requests specifically demand any financial information relating to Windows. In fact, the first time DataTern ever suggested that Microsoft's sale of Windows indirectly infringed its patents, was not until three weeks ago on July 24 during a meet and confer telephone call with Microsoft's counsel. DataTern has never supplemented its pleadings, or sought leave to amend its infringement or damage contentions to accuse Microsoft of direct or indirect infringement by virtue of its Windows sales. The same is true of Azure SQL Server and of SQL Server versions other than those containing BIDS.

DataTern also claims that Microsoft has failed to provide "profits and costs" for each accused product. But as Microsoft's Rule 30(b)(6) financial witness testified on April 15, Microsoft tracks profits and costs by business segment, and not by product, and has produced the segment information relevant to this case.

DataTern demands an order requiring Microsoft to certify to the Court that it has produced "all of its financial related documents to DataTern." Subject to its objections, Microsoft has produced the responsive documents located after a reasonable search and has provided all the confirmations required under the Federal Rules. While it is certainly within the Court's discretion to require both parties to provide further assurances regarding discovery compliance as the Court






wishes, we submit that it is neither appropriate nor necessary to ask the Court to cause "all" financial documents for a massive company to be produced. Such production would be neither reasonable nor manageable. (Incidentally, to the extent that DataTern is requesting some type of detail regarding the reasonableness of document collection efforts, the parties had earlier discussed having each side provide a 30(b)(6) witness to describe the procedure used to collect responsive documents and comply with discovery obligations, but this process was abandoned after DataTern refused to participate).

Stepping back from the particulars, what comes across clearly in DataTern's letter is that it is under-prepared to submit a damages expert report. However, if DataTern indeed feels this way, it is due to its own misjudgments and delays in commencing discovery and engaging its damage expert, not due to lack of fulsomeness in Microsoft's production.

Simply put, DataTern started discovery too late. The discovery window opened on June 28, 2011. But DataTern served no discovery for more than 7-½ months, serving its first document requests in mid-February, 2012. Microsoft began rolling document production in April 2012. DataTern, however, did not serve its second or third sets of document requests until May 25, even though Judge Howell's original scheduling order set a June 9 discovery close. Because it was slow out of the gate, DataTern asked the Court to extend the discovery deadline. On July 11, the Court extended the deadline from July 18 to August 17 but "directed the parties to bring any document discovery disputes to the court immediately." Despite that admonition, DataTern waited until August 14, only four days before the twice-extended discovery deadline, to raise its claim that Microsoft's document production supposedly has been woefully deficient all along. DataTern has had ample opportunity to seek the discovery it now claims to be deficient; therefore, its untimely demands should be denied under Fed. R. Civ. P. 26(b)(2)(C)(ii).

DataTern also deployed its damages expert too late. That expert did not surface for clearance under the protective order until late June, long after DataTern's last document requests were served. Microsoft suspects that DataTern's recently-engaged damage expert's informational "wish list" is untethered to DataTern's counterclaim and infringement contentions, and uncorrelated to DataTern's document requests which were served before the expert was engaged.

Microsoft welcomes a conference if the Court deems it appropriate. The scope of DataTern's discovery demands should be constrained by the scope of its pleadings and by its infringement contentions. And the Court should not entertain motions to compel until DataTern actually reads and assimilates the extensive information Microsoft has already provided.






Respectfully submitted,

Daniel J. Goettle
dgoettle@woodcock.com
Woodcock Washburn LLP
12th Floor Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

Attorneys for Plaintiff Microsoft Corporation

Encl.

cc: Lee Carl Bromberg, Esquire
Matthew I. Menchel, Esquire