IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICROSOFT CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DATATERN, INC., ) | |
| ) | |
| Defendant. ) | CIVIL ACTION NO. 1:11-cv-02365-KBF |
| ) | CIVIL ACTION NO. 1:11-cv-02648-KBF |
| SAP AG and SAP AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DATATERN, INC., ) | |
| ) | |
| Defendant. ) | |

**DATATERN, INC.'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS REQUEST FOR CLARIFICATION**

The most notable aspect of SAP AG and SAP America, Inc.'s (collectively, "SAP") Opposition to DataTern, Inc.'s ("DataTern") Request for Clarification (Docket # 135) is not what it argues, but what it makes no attempt to refute. SAP makes no attempt to refute DataTern's contentions that:

(a) SAP's sole basis for jurisdiction in this case is the customer suits filed by DataTern against SAP's customers *relating solely to their use of BusinessObjects* (and only BusinessObjects);

(b) SAP's motion for partial summary judgment was addressed *solely to its sale of BusinessObjects*;

(c) there have never been any factual findings that SAP's conduct in reselling other company's products, such as allegedly infringing Microsoft products, does not infringe the '402 and the '502 patents; and

(d) DataTern's decision not to serve infringement contentions *against BusinessObjects* under the '402 patent does not justify granting judgment in SAP's favor relating to its conduct in reselling other vendor's (such as Microsoft's) products.

Based on these uncontested facts, DataTern seeks clarification that the Court's June 27, 2012 Order (Docket # 102) is limited to SAP's sale of BusinessObjects, and does not extend to claims that were never litigated on the merits in this case, such as SAP's conduct in selling Microsoft products.[1]

## I. COURTS ROUTINELY CLARIFY THEIR ORDERS TO AVOID THE TIME AND EXPENSE OF ADDITIONAL LITIGATION

Rather than responding to the substantive points raised in DataTern's Request, SAP's Opposition devotes most of its efforts to arguing that DataTern's Request should be denied because it fails to meet the standard for a motion for reconsideration. But DataTern does not seek reconsideration of the Court's June 27, 2012 Order. As such, the standard for granting such a motion is not relevant. Indeed, underlying SAP's entire Opposition is the mistaken notion that motions for clarification are not permissible unless they meet the standard for reconsideration. That is incorrect.

Courts have the inherent power to clarify orders they have previously issued. *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 126 F. Supp. 2d 328, 334 (S.D.N.Y. 2001) ("The Court makes this determination pursuant to its power to clarify orders previously issued by the Court."). *See also Wahl v. Am. Sec. Ins. Co.*, 2010 WL 2867130, at *3 (N.D. Cal. July 20, 2010)

---

[1] Because SAP's Opposition fails to address the bulk of DataTern's arguments in its Request for Clarification, DataTern will not repeat those arguments here, but rather incorporates its earlier arguments herein by reference. This Reply will be limited to the issues raised in SAP's Opposition.

ME1 13991746v.1

("[a] court may clarify its order for any reason."). "Properly understood, a request for clarification does not seek to 'alter or amend the judgment' or require a 'substantive change of mind by the court.' … Instead, such a request 'invite[s] interpretation, which trial courts are often asked to supply, for the guidance of the parties.'" *Id.* (citing *Bordallo v. Reyes*, 763 F.2d 1098, 1102 (9th Cir. 1985) (internal citation and quotation marks omitted)). Because motions for clarification and motions for reconsideration seek to obtain different objectives, they are treated differently and should not be subject to the same standard. *See Royal Sun Alliance Ins., PLC v. TA Operating LLC*, 2011 WL 2416886, at *2 (S.D.N.Y. June 15, 2011) (granting motion for clarification but denying motion for reconsideration). As the court in *Royal Sun Alliance Ins.* went on to note, reconsideration requires a showing of "controlling decisions or data that the court overlooked" whereas clarification may be provided "within the sound discretion of the Court." *Id.* (citations and internal quotation marks omitted).

Here, DataTern does not ask the Court to modify or reverse the holding of its June 27, 2012 Order based on any matters or controlling decisions which it believes the Court overlooked, but rather simply seeks to understand what the Court intended the scope of its June 27 Order to be. In other words, DataTern simply seeks guidance as to whether or not the Court intended for the June 27, 2012 Order to include claims against SAP for its conduct in reselling other company's, such as Microsoft's, products. Because SAP did not move for partial summary judgment on this claim (indeed, it was never clear this claim was ever part of this case), and because the Court's Order is based entirely on DataTern's failure to serve infringement contentions with regards to BusinessObjects and the '402 patent, the scope of the Court's Order is not clear on this point.

This ambiguity derives not from the Court's Order, as the Court merely decided the

motion presented to it by SAP, but from the parties' pleadings. The Court's Order grants SAP's motion for partial summary judgment on its declaratory judgment claim of non-infringement under the '402 patent, and on DataTern's corresponding counterclaim. While the record shows that the parties always assumed SAP's claim and DataTern's counterclaim concerning the '402 patent was limited to BusinessObjects, because the language in the parties' pleadings is broad, the scope of the Court's partial summary judgment could arguably be read to be broader than what anyone reasonably intended (and not surprisingly, SAP is seeking to read the Court's Order as expansively as possible).

For instance, it is beyond dispute that SAP's Complaint focuses on the potential infringement of BusinessObjects. *See*, *e.g.*, Complaint, ¶¶ 2, 3 ("SAP seeks this necessary relief because DataTern … has instituted several multi-defendant litigations against third parties …. In presenting its infringement theories to these third parties, DataTern has referenced various components of SAP's ***BusinessObjects*** software…. DataTern's allegations have thus placed a cloud over SAP and its ***BusinessObjects*** products … and have created a concrete and immediate justiciable controversy between SAP and DataTern.") (emphasis added) (Docket # 1). *See also id.*, ¶ 12 (explaining SAP's acquisition of BusinessObjects); ¶¶ 28, 29, 31 (referencing claims DataTern has allegedly made involving SAP's BusinessObjects software to certain SAP customers). Counts III and IV of SAP's Complaint, however, seek declarations that "***[n]either SAP*** nor its products have infringed, induced others to infringe or contributed to the infringement by others of the" '402 and '502 patents. *Id.*, ¶¶ 44 and 47 (emphasis added). Thus, while all of the factual allegations of the Complaint relate solely to BusinessObjects, the relief SAP seeks is arguably broader (although SAP never identifies the factual basis for seeking any relief beyond its sale of BusinessObjects). By using the term "neither SAP nor its products," SAP could be

4

said to be seeking an expansive judgment that would include significant conduct having nothing to do with its sale of BusinessObjects (which is the reason for DataTern's jurisdictional allegations in its Request, as it is not clear why declaratory judgment jurisdiction would exists as to such claims).

Similarly, DataTern's First Amended Answer and Counterclaim against SAP (Docket #13), accuses SAP of infringing both the '402 and the '502 patents "by manufacturing, using, offering to sell and/or selling within the United States ***certain software programs and programming tools*** and instructing others how to use them, including, ***inter alia***, BusinessObjects, or specific components, tools, or programs within BusinessObjects (*i.e.*, the Accused Products). *Id.*, ¶¶ 12, 17 (emphasis added). While DataTern only specifically identifies BusinessObjects, the terms "certain software" and "*inter alia*" again muddle the issue of whether the Court's June 27, 2012 Order applies just to BusinessObjects, or to SAP's sale of other software, such as Microsoft software, although DataTern always approached this case as if, with regards to SAP, the only accused product was BusinessObjects.

Because it would be beneficial to both parties to understand what scope the Court intended its June 27, 2012 Order to have, DataTern respectfully submits that the Court should exercise its discretion and provide the clarification DataTern seeks. *See Ferguson v. Lion Holding, Inc.*, 2007 WL 2265579, at *3 (S.D.N.Y. August 6, 2007) ("the standard for clarification depends on the Court's subjective assessment as to whether or not its own intention was reflected accurately in the record, the Court will only apply Rule 60(a) where it deems necessary.").

5

## II.     THE COURT'S JUNE 27, 2012 ORDER IS NOT A FINAL ORDER

Clarification is further appropriate because the June 27, 2012 Order did not dispose of all claims against SAP, and thus is interlocutory and subject to revision at any time up until a final judgment enters. *See Saint Annes Development Co., Inc. v. Trabich*, 2011 WL 3608454, at *3 (4th Cir. 2011) ("the district court's summary judgment order, which did not resolve all claims against all parties, was interlocutory and thus subject to revision at any time.") (citing Fed. R. Civ. P. 54(b)); *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 217 F. Supp. 2d 423, 428 (S.D.N.Y. 2002) ("a court has inherent power to correct an interlocutory ruling at any time prior to the entry of final judgment."); *American Canoe Assoc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted."); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir. 1991) (interlocutory orders "are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires") (quoting 7 Moore's Federal Practice ¶ 60.20)). *See also* Fed. R. Civ. P. 54(b) (unless certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

As the court went on to explain in *American Canoe*, the power to reconsider or modify interlocutory rulings "is committed to the discretion of the district court," and that discretion is not cabined by the "heightened standards for reconsideration" governing final orders. *Id.* at 514-15. Nevertheless, clarification is appropriate here in order to avoid a manifest injustice. SAP

6

should not receive a windfall judgment finding that its conduct in reselling other's infringing products is not actionable merely because DataTern elected not to serve infringement contentions relating to BusinessObjects and the '402 patent.  After all, this claim was never litigated on the merits and DataTern was never able to be heard on this claim.  Under the circumstances, clarification is necessary to prevent DataTern from losing valuable claims without any due process on those claims whatsoever.

### III.  CLARIFYING AN EXISTING ORDER IS NOT TANTAMOUNT TO ISSUING AN ADVISORY OPINION

Lastly, SAP argues that clarifying the June 27, 2012 Order would be tantamount to issuing an advisory opinion.  This argument makes little sense.  DataTern is not asking for the Court to weigh in on the potential future preclusive effects of its June 27, 2012 Order.  Rather, DataTern is simply asking for the Court to clarify what it intended through this Order so that the parties will understand what claims have already been resolved.  As the Supreme Court has noted, courts are empowered to clarify their orders in their discretion.  *See Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945) ("While such relief would be in the sound discretion of the court, we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties … in the dark as to their duty toward the court.").  *See also Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) ("It is undoubtedly proper for a district court to issue an order clarifying the scope of an injunction in order to facilitate compliance with the order ….").

Moreover, advisory opinions involve cases where a court is asked to resolve an issue that was not properly before it.  Here, the issue of the scope of SAP's Motion was raised in DataTern's Opposition to SAP's Motion for Partial Summary Judgment (Docket # 87).  In that Opposition, DataTern argued that even if the Court granted SAP's Motion, judgment should only

7

enter with regard to the claims raised in SAP's declaratory judgment action, namely, its claims of noninfringement concerning its BusinessObjects platform. DataTern stated, "notwithstanding the breadth of SAP's request for partial summary judgment, even if the Court were otherwise inclined to enter judgment, its authority is limited to claims of infringement involving SAP's BusinessObjects products." *Id.* at 19 (Argument, Part III). It is therefore not correct to argue that this issue was not properly before the Court such that providing the clarification DataTern requests would be the equivalent to issuing an advisory opinion.

## CONCLUSION

For all of the foregoing reasons, DataTern respectfully requests that the Court grant DataTern's Request for Clarification and clarify that the Court's June 27, 2012 Order does not apply to SAP's sale of third parties' products.

Dated: August 20, 2012

McCARTER & ENGLISH, LLP

/s/ David Himelfarb
Lee Carl Bromberg, Esq.
Erik Paul Belt, Esq.
William A. Zucker, Esq.
Daniel J. Kelly, Esq.
David Himelfarb, Esq.
Kara Lynch, Esq.
McCarter & English, LLP
265 Franklin Street
Boston, MA  02110
(617) 449-6500
lbromberg@mccarter.com
Erik Paul Belt, Esq.
William A. Zucker, Esq.

and

245 Park Avenue
New York, New York  10167
(212) 609-6800

*Attorneys for Defendant*
*DataTern, Inc.*

## CERTIFICATE OF SERVICE

    I certify that, on this 20th day of August, 2012, I served copies of DataTern, Inc.'s Memorandum of Law in Support of its Request for Clarification Regarding the Court's June 27, 2012, Order, upon counsel of record for the other parties in the above-referenced consolidated matters via ECF.

                        /s/ David Himelfarb
                        David Himelfarb

ME1 13991746v.1