

**WOODCOCK WASHBURN**

**INTELLECTUAL PROPERTY LAW**

ATLANTA • PHILADELPHIA • SEATTLE

*Via Hand Delivery*
August 20, 2012





PHILADELPHIA OFFICE
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
215.568.3100
Fax: 215.568.3439

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/20/12
```

Honorable Katherine B. Forrest
Daniel Patrick Moynihan - U. S. Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

Re:   *Microsoft Corp., SAP AG and SAP America, Inc. v. DataTern, Inc.*
      Case Nos. 2011-cv-02648 and 2011-cv-02365 (KBF)

Dear Judge Forrest:

Microsoft writes in response to DataTern's letter of August 15, 2012 requesting a conference regarding a motion to strike Microsoft's laches defense. Microsoft opposes the requested conference for the reasons stated below.

At the outset, DataTern's accusations that Mr. Killough was unprepared and refused to provide testimony on the designated topics is without merit, and the included excerpts of his testimony misleading. Mr. Killough was designated to testify on behalf of Microsoft on 10 topics that largely called for information possessed by Microsoft's outside counsel as a result of its investigation. (Attachment A). For example, topics 3, 37, 38 called for information regarding interactions between Microsoft and Ontos, Firestar or DataTern over the past 15 years. These interactions involved numerous individuals, most of whom are either no longer employed at Microsoft or do not remember details. To ensure that Mr. Killough was properly prepared for the 10 topics, counsel prepared about **18** written pages which in turn cited to an additional **75** documents. At the deposition, DataTern's counsel adjourned off the record so that he could thoroughly review the material. The provided materials were far more informative than had Mr. Killough attempted to recite all the information from memory which simply would have been impossible. As these materials were meant to be more comprehensive than what Mr. Killough could have provided orally, it is hardly surprising that, when questioned about more detail, Mr. Killough was not able to provide further information than what had been previously disclosed.

Turning to the merits, the Court should reject DataTern's request for an informal conference because Mr. Killough's testimony satisfied DataTern's laches-related topics 9 and 65 (Attachment A). At the outset, Microsoft objected to the breadth of these topics. Additionally, Microsoft objected based on *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991), rev'd on other grounds by 765 F.Supp. 611 (N.D. Cal. 1991), which held that contention interrogatories are the most appropriate means for obtaining underlying facts for the defense because a "Rule 30(b)(6) witness… cannot be expected to… accurately articulate all [bases] for their legal positions."

Despite this holding, and in an attempt to avoid a discovery dispute, Microsoft agreed to proffer a witness to "testify, based on Microsoft's investigation to date, regarding underlying facts" of laches and also provided the previously mentioned written information (Attachment B).

Honorable Katherine B. Forrest
August 20, 2012
Page 2

Despite this detailed response, and without objecting to Microsoft's interrogatory response on laches, DataTern now claims prejudice arguing that it lacks sufficient detail regarding several narrow aspects to that defense. Namely, Data claims that to understand Microsoft's laches defense it needs to know in minute detail: what documents Microsoft lost during the period of DataTern's inexcusable and unreasonable delay; how memories were impaired and; how Microsoft could have redesigned the accused features to undisputedly avoid the patents. Yet, DataTern never specifically identified those questions in any interrogatory or its 30(b)(6) notice.

Absent from DataTern's letter is the reality that many of the facts supporting Microsoft's evidentiary prejudice resulting from the over-eight-year delay will necessarily come from DataTern's witnesses – not Microsoft's. This is because the loss of DataTern's records and those of its predecessors, Ontos and Firestar, as well as the fading memories of many of their executives and inventors, are critical to Microsoft's laches defense. Moreover, much of the facts supporting evidentiary prejudice were discovered only *after* Mr. Killough's deposition, when Microsoft had the first opportunity to depose witnesses exclusively within DataTern's control. (*see* Attachment C at pp. 10-12).

As for DataTern's complaint regarding insufficient detail to support a nonfringing alternative, only Microsoft's technical experts have the requisite technical skill to devise and explain such a redesign, the details of which will be laid out during expert discovery (*see* Attachment B at 7).

The Court should also deny DataTern's request for an informal conference because it has failed to demonstrate facts supporting any sanction, much less the extreme sanction of striking a defense. In support of its request, DataTern cites a single case, *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997). Even assuming that Microsoft's conduct was a discovery abuse (which as demonstrated above it was not), *Bank of New York* does not support DataTern's demand for any sanction much less one that would completely eviscerate a key defense. In *Bank of New York*, the magistrate court found that the 30(b)(6) witness was "utterly unprepared to discuss [the issue] during his deposition," could recount only a few facts in response to questions, and "was unable to provide a substantive response to virtually every other question posed to him." Yet the court refused to impose *any* sanction including the requested sanction of limiting proof to only the 30(b)(6) testimony. 171 F.R.D. at 150. The court concluded, "because sanctions that prohibit a party from introducing evidence are ***typically reserved for only flagrant discovery abuses***, BNY is not entitled to an order declaring [the] deposition testimony to be the sole proof [on the issue] or to an order precluding" other evidence. *Id.* at 151-2 (emphasis added). "In order for the Court to impose sanctions, the inadequacies in a deponent's testimony ***must be egregious and not merely lacking in desired specificity in discrete areas***'" (*Id.* at 151) (quoting *Zappia Middle East Construction Co. v. Abu Dhabi*, 1995 U.S. Dist. LEXIS 17187, No. 94 Civ. 1942, 1995 WL 686715, at *8 (S.D.N.Y. Nov. 17, 1995) (emphasis added).

As Attachment B shows, the information provided to DataTern during the deposition of Mr. Killough was more than responsive to DataTern's topics regarding Microsoft's laches defense. At most, portions of Mr. Killough's testimony arise only to "lacking in desired specificity in

Honorable Katherine B. Forrest
August 20, 2012
Page 3

discrete areas." *Id.* And as explained above, the lack of specificity largely stems from (i) facts not known at the time of Mr. Killough's deposition; (ii) the need for expert discovery; and (iii) DataTern's failure to specify information it now says is vital to understanding Microsoft's position (DataTern ltr at p. 2-3).

Lastly, as case law makes clear discovery of facts underlying affirmative defenses such as laches, particularly in complicated patent cases, is best pursued by written response (*e.g.*, by interrogatory), and not by 30(b)(6) testimony. *McCormick-Morgan*, 134 F.R.D. at 286; *see also TV Interactive Data Corp. v. Sony Corp.*, 2012 U.S. Dist. LEXIS 56861, **8-12 (N.D.Cal. April 23, 2012); *Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255, 261-3 (M.D.N.C. 2010); *but see EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 435 (D. Nev. 2006); *AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808, 831 (M.D. Pa. 1994). In fact it was precisely for this reason that Microsoft painstakingly prepared written responses as an aid to the 30(b)(6) deposition at issue here.

The *TV Interactive* court, addressing whether to order 30(b)(6) testimony on laches in a patent case, explained the preference for interrogatory response over 30(b)(6) testimony:

> [D]etermining the bases for contentions in a patent case, *even if the contentions are mainly related to the factual predicate for affirmative defenses,* may involve complex judgments about evidence, claims, and principles of intellectual property law.... Considering the *technical nature of the patent claims* at issue here, and the *vagueness with which Topic 52 was originally drafted*, TVI has not persuaded the Court that a 30(b)(6) deposition is warranted.... TVI is *able to learn the same information it seeks through this deposition from appropriately framed contention interrogatories, which TVI has already propounded.* Accordingly, the Court DENIES TVI's request to compel Funai to produce a 30(b)(6) witness on Topic 52.

*TV Interactive* at *12 (internal citations omitted & emphasis added).

As in *TV Interactive*, because DataTern has propounded a laches interrogatory, and because Microsoft long-ago responded to that interrogatory and further supplemented its response with facts elicited at recent depositions (Attachment C), Microsoft has provided DataTern with a complete description of the bases for its laches defense through this superior discovery tool.

For the foregoing reasons, Microsoft respectfully submits that DataTern's request for an informal conference to discuss a motion to strike Microsoft's laches defense should be denied.

Respectfully submitted,

Daniel J. Goettle