# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICROSOFT CORPORATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>DATATERN, INC., )<br><br>Defendant. ) | |
| SAP AG and SAP AMERICA, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>DATATERN, INC., )<br><br>Defendant. ) | CIVIL ACTION NO. 1:11-cv-02365-KBF<br>CIVIL ACTION NO. 1:11-cv-02648-KBF |

## DATATERN, INC.'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO AMEND ITS COUNTERCLAIMS

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................2

DISCUSSION ...............................................................................................................9

CONCLUSION ............................................................................................................14

ME1 14255649v.3

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
    626 F.3d 699 (2d Cir. 2010)................................................................12

*Anderson News, L.L.C. v. American Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)................................................................10

*Finisar Corp. v. Cheetah Omni, LLC*,
    2012 WL 5383123 (E.D. Mich. Nov. 1, 2012).........................................12

*Pacific Scientific Energetic Materials Co. (Arizona) LLC v. Ensign-Bickford Aerospace
    & Defense Co.*,
    281 F.R.D. 358 (D. Ariz. 2012) ..........................................................11

*Phillips v. Kidder, Peabody & Co.*,
    1994 WL 570072 (S.D.N.Y. Oct. 13, 1994)....................................12, 13

*R.G.N. Capital Corp. v. Yamato Transport USA, Inc.*,
    1997 WL 3278 (S.D.N.Y. Jan. 3, 1997) ...............................................12

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
    46 F.3d 230 (2d Cir. 1995)............................................................10, 12

*Rimkus Consulting Group, Inc. v. Cammarata*,
    257 F.R.D. 127 (S.D. Tex. 2009) ........................................................12

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999)........................................1, 2, 11, 14

STATUTES

35 U.S.C. § 271.......................................................................................9

35 U.S.C. § 271................................................................................2, 3, 5

35 U.S.C. § 271(a) ..............................................................................5, 6

35 U.S.C. § 271(b) ..............................................................................3, 4

OTHER AUTHORITIES

6 Fed. Prac. & Proc. Civ. § 1484 (3d ed. 2012)........................................12

6 Fed. Prac. & Proc. Civ. § 1430 (3d ed. 2012)........................................10

3-15 Moore's Federal Practice - Civil § 15.14 [1]............................................................................10

Fed. R. Civ. P. 15(b)(1)...........................................................................................................14

Fed. R. Civ. P. 15(a)(2)...........................................................................................................10

Fed. R. Civ. P. 13(a) ..............................................................................................................10

Fed. R. Civ. P. 13(b) ..............................................................................................................10

ME1 14255649v.3

Defendant DataTern, Inc. ("DataTern") hereby moves for leave to amend its Counterclaims in the above-captioned cases to add claims for direct infringement. DataTern's proposed Second Amended Answer and Counterclaims against both Microsoft Corporation ("Microsoft") and SAP AG, and SAP America, Inc. (collectively "SAP") are attached to this Motion as Exhibits A and B, respectively.

## INTRODUCTION

In Microsoft and SAP's September 7, 2012, letter to the Court, they argue that a "fulsome appellate record" must be developed so that the Federal Circuit can have the opportunity to "consider the full record with all potential grounds for affirmance." *Id.* at 1 and 3. In order to properly position this case for appellate review, various additional housekeeping issues should likewise be addressed, including the addition of claims for direct infringement to DataTern's counterclaims. These claims have always been part of this case, as they are part of Microsoft and SAP's declaratory judgment counts. Indeed, the Federal Circuit has expressed the view that counterclaims of infringement in response to declaratory judgment claims of non-infringement "ordinarily should not be refused entry" as they are essentially mirror image claims and thus there is no sound policy reason to refuse the addition of the claims. *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999).

Accordingly, the Court should permit DataTern to amend its Counterclaims to add claims for direct infringement against Microsoft and SAP for at least the following two reasons:

(1)     such claims have long been part of this case, both as part of Microsoft's and SAP's Complaints as well as their Affirmative Defenses; and

(2)     such claims were previously identified in DataTern's original infringement contentions served on the plaintiffs, and were later discussed in detail in the Expert Witness Report of Neeraj Gupta, Opening Report on Infringement (August 29, 2012) (the "Gupta Report"), which Mr. Gupta was subsequently deposed about.

1

Under these circumstances, there is no undue prejudice in allowing DataTern's proposed amendment.

## BACKGROUND

Microsoft commenced its declaratory judgment action against DataTern on April 7, 2011. In Microsoft's Complaint for Declaratory Judgment (Docket No. 1), it "seeks a declaratory judgment that [the '402 and the '502 patents] are invalid ***and that neither Microsoft nor its products have infringed, induced others to infringe, or contributed to the infringement by others of the '402 or '502 patents***." *Id.*, ¶ 1 (emphasis added). In Microsoft's Third Claim for Relief, Microsoft alleges that "[n]either Microsoft nor its products have infringed, induced others to infringe or contributed to the infringement by others of the '402 patent," and Microsoft asks for a declaration that "***neither it nor its products infringe or have infringed*** under 35 U.S.C. § 271 (or any sub-section thereof) any claim of the '402 patent." *Id.*, ¶¶ 39-40 (emphasis added). Microsoft then makes identical allegations, and asks for a similar declaration, with regard to the '502 patent. *Id.*, ¶¶ 42-43. This broad request for relief, if granted, would cover claims for both direct and indirect infringement.

SAP commenced its action on April 18, 2011. In SAP's Complaint, SAP states that it brought the action "seeking a declaratory judgment … that SAP's BusinessObjects enterprise software …does not infringe the '402 or '502 patent, ***nor has SAP infringed, induced others to infringe, or contributed to the infringement by others of the '402 or '502 patents***." *Id.*, ¶ 1 (emphasis added). In its Third and Fourth Claims for Relief, SAP asserts that "[n]either SAP nor its products have infringed, induced others to infringe or contributed to the infringement by others of the" '402 or the '502 patents. *Id.*, ¶¶ 44, 47. SAP then asks for a declaration that "neither it nor its products infringe or have infringed under 35 U.S.C. § 271 (or any sub-section

ME1 14255649v.3

thereof) any claim of the" '402 or the '502 patents.  *Id.*, ¶¶ 45, 48.  Again, this broad request for relief, if granted, would cover claims for both direct and indirect infringement.

DataTern filed its Answer to the Microsoft Complaint on June 3, 2011 (Docket No. 28). This Answer did not contain any counterclaims.  Likewise, DataTern filed its Answer to the SAP Complaint on June 10, 2011 (Docket No. 10), and this Answer also did not include any counterclaims.  DataTern subsequently filed its First Amended Answer and Counterclaims in the Microsoft case on June 24, 2011 (Docket No. 30).  In this pleading, DataTern denies the pertinent provisions of paragraphs 1, 39-40, and 42-43 of Microsoft's Complaint and DataTern asserts conditional counterclaims, subject to the Court's rulings on DataTern's motions to dismiss and to stay.  This counterclaim contain two counts, one for indirect infringement of the '402 patent and one for indirect infringement of the '502 patent.  In particular, DataTern alleges that "[i]n violation of at least 35 U.S.C. § 271(b) and/or (c), Microsoft has been and still is contributing to and/or actively inducing infringement of the '402 [and '502] patent by manufacturing, using, offering to sell and/or selling … certain software programs and programming tools and instructing others how to use them …."  *Id.*, ¶¶ 12, 17.

DataTern filed a similar pleading in the SAP case on July 1, 2011 denying the pertinent provisions of paragraphs 1, 44, 45, 47, and 48 of SAP's Complaint, and also containing conditional counterclaims.  *See* First Amended Answer and Counterclaims (Docket No. 13). These Counterclaims assert two counts: (1) indirect infringement of the '402 patent; and (2) indirect infringement of the '502 patent.  *Id.*  Specifically, DataTern alleges that "[i]n violation of at least 35 U.S.C. § 271(b) and/or (c), SAP has been and still is contributing to and/or actively inducing infringement of the '402 [and '502] patent by manufacturing, using, offering to sell

ME1 14255649v.3

and/or selling … certain software programs and programming tools and instructing others how to use them …." *Id.*, ¶¶ 12, 17.

Microsoft and SAP each filed an Answer to Counterclaims on July 15, 2011 (Docket No. 32 and Docket No. 19, respectively).  After obtaining DataTern's consent, SAP subsequently filed an Amended Answer on June 26, 2012 (Docket No. 101)  In that Amended Answer, SAP took the position that DataTern's counterclaims ceased being conditional upon the Court's denial of DataTern's motion to stay or dismiss (*see* February 15, 2012 Order (Docket No. 43)) or upon the denial of DataTern's motion for reconsideration of that motion (*see* April 23, 2012 Order).

Microsoft's Answer contains the following Affirmative Defenses:

First Affirmative Defense – ***Microsoft has not infringed, and does not infringe (<u>directly</u> or indirectly) any claim of the '402 patent***, either literally or under the doctrine of equivalents.

Fourth Affirmative Defense - ***Microsoft has not infringed, and does not infringe (<u>directly</u> or indirectly) any claim of the '502 patent***, either literally or under the doctrine of equivalents.

*Id.* (emphasis added).  Similarly, SAP's Amended Answer contains the following Affirmative Defenses:

First Affirmative Defense – ***SAP has not infringed, and does not infringe, <u>directly</u> or indirectly, any claim of the '402 patent***, either literally or under the doctrine of equivalents.

Fourth Affirmative Defense – ***SAP has not infringed, and does not infringe, <u>directly</u> or indirectly, any claim of the '502 patent***, either literally or under the doctrine of equivalents.

*Id.* (emphasis added).

Thus, although DataTern's counterclaims only assert claims for indirect infringement against both Microsoft and SAP under 35 U.S.C. § 271(b) and/or (c) (inducement and contributory infringement), claims of direct infringement have always been part of this case

through Microsoft's and SAP's own declaratory judgment Complaints, as well as their Affirmative Defenses.

DataTern then served its Disclosure of Asserted Claims and Infringement Contentions on Microsoft and SAP on March 23, 2012 (the "Infringement Contentions") (attached to the Gupta Expert Report).  These contentions expressly assert claims against Microsoft and SAP for both direct *and* indirect infringement, making clear that DataTern's allegations of direct infringement arise out of both Microsoft and SAP's internal use of the accused products.  For instance, in response to the requirement that DataTern identify "the applicable statutory subsections of 35 U.S.C. § 271 asserted" (*see* Judge Forrest's [Revised] Procedures for Patent Cases, 1.), DataTern states: "DataTern alleges that Microsoft and SAP, respectively, infringe at least the following claims of U.S. Patent No. 5,937,402 (the ''402 patent') and U.S. Patent No. 6,101,502 (the ''502 patent') pursuant to ***35 U.S.C. § 271(a)***, (b), and (c) ...."  Infringement Contentions at 2 (emphasis added).  Thus, in addition to identifying claims of inducement and contributory infringement, as is the case in its Counterclaims, DataTern also identifies that it is pursuing a claim for direct infringement under 35 U.S.C. § 271(a)[1] in its Infringement Contentions.

This fact is further reinforced in the Claim Charts attached to DataTern's Infringement Contentions, where DataTern repeatedly states that it is asserting claims of direct infringement against both Microsoft and SAP based on Microsoft's and SAP's internal use of the accused products. *See* Appendix A at 1 ("ADO.NET comprises a method for enabling an object-oriented user application to access a relational database having one or more physical tables segmented into rows and columns. ***On information and belief, Microsoft infringes this claim under***

---

[1]     35 U.S.C. § 271(a) states: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." *Id.*

*subsection (a) of 35 U.S.C. § 271, inter alia, by using ADO.NET internally*.") (emphasis added);[2] *id.*, Appendix G ("On information and belief, SAP infringes claim 1 of the '502 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell its BusinessObjects BI applications that integrate and/or use the BusinessObjects platform (including versions 5 and above)."); *id.* at 26, 31, 33 38, 39, 40, 42, 43, and 44.

Moreover, because claims of direct infringement were introduced into the case through Microsoft's and SAP's claims and defenses, the parties conducted discovery on these claims. *See*, *e.g.*, Microsoft's Responses to DataTern, Inc.'s Second Set of Interrogatories Nos. 13-25, Response No. 14 ("Subject to these objections and its General Objections, and without waiving the same, Microsoft has not and does not directly infringe the asserted patents at least because its accused features do not satisfy the claim limitations listed below. Nor has DataTern shown that Microsoft itself makes, uses, imports, offers to sell, or sells the alleged patented inventions, or imports into the United States any patented invention.") (Himelfarb Decl., Exhibit A); SAP's Responses to DataTern's Second Set of Interrogatories (Nos. 13-22), Response No. 14 ("SAP, its

---

[2] *See also id.* at 25, 27, and 32. *See also id.*, Appendix B ("Entity Framework comprises a method for enabling an object-oriented user application to access a relational database having one or more physical tables segmented into rows and columns. On information and belief, *Microsoft infringes this claim under subsection (a) of 35 U.S.C. § 271, inter alia, by using Entity Framework internally*.") (emphasis added); *id.* at 29, 30, and 38; *id.* at Appendix C ("On information and belief, *Microsoft infringes this claim under subsection (a) of 35 U.S.C. § 271, inter alia, by using Entity Framework internally*.") (emphasis added); *id.* at 36 and 38; *id.*, Appendix D ("On information and belief, Microsoft infringes this claim under subsection (a) of 35 U.S.C. § 271, inter alia, *by using LINQ to SQL internally*.") (emphasis added); *id.* at 10; *id.*, Appendix E at 1 ("On information and belief, *Microsoft infringes claims of U.S. Patent No. 5,937,402 (the '402 Patent) under subsection (a) of 35 U.S.C. § 271, inter alia, by using Visual Studio internally*.") (emphasis added); *id.*, Appendix F at 1 ("On information and belief, *Microsoft infringes claims of U.S. Patent No. 5,937,402 (the '402 Patent) under subsection (a) of 35 U.S.C. § 271, inter alia, by using Visual Studio internally*.") (emphasis added); Appendix G at 1 ("On information and belief, M*icrosoft infringes claims of U.S. Patent No. 5,937,402 (the '402 Patent) under subsection (a) of 35 U.S.C. § 271, inter alia, by using BIDS internally*.") (emphasis added).

predecessor company BusinessObjects, and the BusinessObjects platform do not and have not directly infringed these asserted claims because the BusinessObjects platform lacks the required 'object model.'") (Himelfarb Decl., Exhibit B).

Most recently, DataTern served the Gupta Report on the plaintiffs.  This report carefully sets out and explains DataTern's claims for direct infringement in this case in great detail.  *See id.*, ¶¶ 527-528; 531-532; 535.  For instance, paragraph 528 of the Gupta Report begins:

> Microsoft ***directly infringes*** Claims 1, 2, 3, 21, 22, and 23 of the 402 Patent in the regular course of its business operations by using its own products which in turn utilize the accused instrumentalities of ADO.net and Entity Framework to access information in relational databases and practice the methods of the above claims. Microsoft uses its own products to directly infringe in two distinct ways: 1) it employs these products internally for the purposes for which they were designed; and 2) its employees utilize them to provide training and certifications to its customers….

*Id.* (emphasis added).   This paragraph then continues for a full page explaining in detail DataTern's claim against Microsoft for direct infringement.  For instance, DataTern explains that this claim arises from Microsoft's conduct in, *inter alia*, deploying and hosting object oriented applications on its servers; engaging in "dog fooding" (using its own products internally); and engaging in trainings, seminars, and product exhibitions.  *Id.*  Paragraph 531 further states that "Microsoft ***directly infringes*** apparatus claims 10, 11, and 16 of the '502 patent" and then provides over a page of examples detailing the directly infringing conduct.  *Id.* (emphasis added). *See also id.*, ¶ 532 (discussing direct infringement by Microsoft of method claims 1, 2, and 7 of the '502 patent, including a full page of examples).

Similarly, Paragraph 535 of this Report states:

> SAP ***directly infringes*** method claims 1, 2, 7, 19, and 25 of the '502 patent when among other acts SAP:

      i.     utilizes the accused instrumentalities of the BusinessObjects Platform to access information in a relational database in the normal course of its business operations….

      ii.    internally uses applications which employ the accused instrumentalities of the BusinessObjects Platform to access information in a relational database….

      iii.   develops, tests, maintains, and/or otherwise employs sample code for utilizing the accused instrumentalities of the BusinessObejcts Platform to access information in a relational database, e.g. for development, testing, training and/or demonstration purposes….

      iv.   provides and administers seminars on the BusinessObjects Platform during which the accused instrumentalities of the BusinessObjects Platform are utilized to access information in a relational database….

*Id.* (emphasis added).  Microsoft and SAP were then afforded a full opportunity to depose Mr. Gupta concerning the contents of his expert report, which they did on September 28, 2012.

In SAP's Memorandum of Law in support of its recently filed summary judgment motion, it makes clear that it is seeking a declaration of non-infringement for both indirect *and* direct infringement.  *See id.* at 21 ("For the foregoing reasons, the Court should enter judgment in favor of SAP on its declaratory judgment that **neither SAP nor its products directly infringe any claim of the '502 Patent**, nor has SAP contributed to or induced infringement by third parties—including its customers—and against DataTern on its infringement counterclaims based on that patent.") (emphasis added).  SAP therefore readily acknowledges that direct infringement is a part of this case.

In Microsoft's summary judgment motion, it takes a different tack.  Microsoft expressly concedes that DataTern's infringement contentions contain allegations of direct infringement, but then it seeks to find those claims waived because they were not alleged in DataTern's counterclaims.  *See id.* at 3 ("DataTern's [infringement] contentions continued to assert indirect infringement **but also asserted, for the first time, that Microsoft's own use of its software tools**

8

*directly infringed*.  But DataTern never amended its counterclaim to add a direct infringement claim to the case.") (emphasis added).  *See also id.* at 24 ("Although DataTern alleged direct infringement in its subsequent infringement contentions, it never sought leave to amend its pleading to add this compulsory counterclaim.").  Microsoft thus concludes, "[t]herefore, should DataTern oppose this motion and attempt to assert direct infringement, the Court should not adjudicate it because it was never pled."  *Id.* at 25.  This statement is highly disingenuous, however, because, as shown above, this claim *was* pled *by Microsoft* and was actively litigated in the case.  In fact, Microsoft expressly asks for a declaration that it does not directly infringe the '402 and '502 Patents.  *See id.* ("the Court should … declare that neither Microsoft nor its products infringe or have infringed under 35 U.S.C. § 271 (or any sub section thereof) any claim of the '402 patent or of the '502 patent.").[3]  Microsoft cannot have it both ways.  It cannot ask for the Court to refuse to adjudicate DataTern's allegation of direct infringement and at the same time ask for the Court to adjudicate its mirror image claim of no direct infringement.

Through this Motion, DataTern seeks leave to amend its counterclaims to expressly add the claims for direct infringement that the parties have already litigated, given that the plaintiffs are now pressing for the Court to adjudicate those claims.  Otherwise, the Federal Circuit will needlessly have to grapple with the issues of whether these claims: (a) are compulsory counterclaims; and (b) if so, were they waived even if the parties all acknowledge that they were asserted by the plaintiffs and litigated by the parties.

## DISCUSSION

Federal Rule of Civil Procedure 15(a)(2) permits a party to move for leave of Court to amend its pleadings, and provides that "[t]he court should freely give leave when justice so requires."  *Id.*  "When a party requests leave to amend its complaint, permission generally should

---

[3]      *See* note 1 and accompanying text.

be freely granted." *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) and Fed. R. Civ. P. 15(a)(2)). *See also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'") (citing *Foman*, 371 U.S. at 182); 3-15 Moore's Federal Practice - Civil § 15.14 [1] ("Denial of leave to amend is disfavored; and a district judge should grant leave absent a substantial reason to deny. A liberal, pro- amendment ethos dominates the intent and judicial construction of Rule 15(a)(2).") (footnote omitted).

The rule favoring liberal amendment is even more compelling when compulsory counterclaims are involved, as the failure to assert such a counterclaim can result in losing the ability to pursue that counterclaim in the future. *See* 6 Fed. Prac. & Proc. Civ. § 1430 (3d ed. 2012) ("When the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases (at least in the federal courts) and the pleader will lose the opportunity to have the claim adjudicated.  Accordingly, the court normally will be more willing to grant leave to amend when a Rule 13(a) counterclaim is involved than when a Rule 13(b) counterclaim is at stake.") (footnotes omitted).

Consistent with the above law, the Federal Circuit has affirmatively held that when a defendant seeks to add a counterclaim for patent infringement that mirrors an existing declaratory judgment claim of non-infringement, such a counterclaim should almost always be permitted. *See Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999) ("it is generally recognized that when the same patent is at issue in an action

for declaration of non-infringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived. ***Such a counterclaim ordinarily should not be refused entry.***") (emphasis added).[4]   In fact, the *Vivid* court expressly noted that in such cases, the traditional reasons for denying a request for leave to amend – such as unnecessary delay and expense – simply do not exist.  *See id.* ("While the court also stated that entry of the counterclaim would cause unnecessary delay and expense, it is not apparent how this might occur, for the counterclaim raised no additional issues, the same patent was the subject of claim and counterclaim, and the parties bore the same evidentiary burdens whether or not the counterclaim was permitted.") (citation omitted).  The court went on to hold that, "[t]he refusal to accept the counterclaim for infringement, while proceeding to decide the merits of the claim of non-infringement of the same patent, exceeded the district court's discretionary authority.   On remand, entry of the counterclaim shall be permitted." *Id.* at 803.

Following *Vivid Techs.*, courts which have had occasion to address the narrow issue of a defendants' right to add a counterclaim for infringement that mirrors an existing declaratory judgment claim of non-infringement have nearly uniformly found that no just reason exists to deny the amendment.  *See*, *e.g.*, *Pacific Scientific Energetic Materials Co. (Arizona) LLC v. Ensign-Bickford Aerospace & Defense Co.*,  281 F.R.D. 358, 363 (D. Ariz. 2012) ("In particular, the plaintiffs are not prejudiced because the counterclaim raises issues identical to those in the plaintiffs' claims. Both the claims and the counterclaims require the court to determine whether the plaintiffs' products infringe three of the defendant's patents. The counterclaims do not expand the scope of the suit."); *Finisar Corp. v. Cheetah Omni, LLC*, 2012 WL 5383123, at *4

---

[4]      "The right to file a counterclaim for patent infringement in response to a declaratory action for patent non-infringement is unique to patent law and warrants a uniform national rule." *Vivid Technologies, Inc.*, 200 F.3d at 802.

11

(E.D. Mich. Nov. 1, 2012) ("The central issue in the controversy remains the same, that is, whether Plaintiff has infringed on the '479 or '611 patents. The addition of Defendant's counterclaim will not require Plaintiff to expend any additional resources during discovery, and it will not delay the resolution of the dispute."). *Cf. Phillips v. Kidder, Peabody & Co.*, 1994 WL 570072, at *4 (S.D.N.Y. Oct. 13, 1994) (when the proposed amendment "is closely related to the original claim, and is based on a similar set of operative facts," it is unlikely that any prejudice can be shown."); *Rimkus Consulting Group, Inc. v. Cammarata*, 257 F.R.D. 127, 135-136 (S.D. Tex. 2009) (allowing leave to add counterclaim because, among other things, "Rimkus has been aware of and has been defending against an identical counterclaim in the case.").

These rulings are further consistent with the general rule that leave to amend should be granted absent evidence of undue prejudice or bad faith. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) ("The rule in our circuit is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith.") (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *See* 6 Fed. Prac. & Proc. Civ. § 1484 (3d ed. 2012) ("If no prejudice is found, then leave normally will be granted."). Delay alone is typically not a sufficient justification to deny the amendment. *See Rachman Bag Co.*, 46 F.3d at 234-235 ("Delay alone unaccompanied by such a 'declared reason' does not usually warrant denial of leave to amend."); *R.G.N. Capital Corp. v. Yamato Transport USA, Inc.*, 1997 WL 3278, at *1 (S.D.N.Y. Jan. 3, 1997) ("Plaintiff says that defendant could have moved to amend at an earlier time. Perhaps that is so; but it is well settled that delay is not enough standing alone to defeat a motion to amend. The party opposing the relief must demonstrate prejudice resulting from delay. Plaintiff at bar does not do so."). "Furthermore, amendment is

12

favored where it would allow the merits of a claim to be fully adjudicated." *Phillips v. Kidder, Peabody & Co.*, 1994 WL 570072, at *4 (S.D.N.Y. October 13, 1994).[5]

DataTern seeks to expressly add claims for direct infringement in order to have a full record for the appeal of this case. While DataTern's counterclaims do not expressly contain such claims, DataTern has long disclosed that it is asserting such claims, as early as in its Infringement Contentions, and later in the Gupta Report (as well as in its discovery requests). Furthermore, as the above-cited decisions have noted, adding counterclaims for infringement of the same patents as the ones asserted in a declaratory judgment action seeking a declaration of non-infringement does not alter the landscape of the case, require further discovery, or otherwise cause any party prejudice because the claims are mirror images with the same evidentiary standards and burdens of proof. In other words, by denying SAP's and Microsoft's averments of no direct infringement in their Complaints, the issue of direct infringement became fully joined and DataTern became obligated to refute the claim. As such, affirmatively adding a count of direct infringement will not change the issues the Court must resolve in this case. In fact, the only portion of this case that may be impacted by DataTern's proposed amendments is in the damages phase, to be addressed by the parties' respective damages experts, but the parties have agreed to postpone that phase of the case until after the Court rules on the pending summary judgment motions and potentially after any appeals thereof. That stage of the case, therefore, is potentially a long ways off (if it is in fact ever reached).[6]

---

[5]     The Court did not appear to set a deadline for amending the pleadings in this case.

[6]     Moreover, claims of direct infringement, by definition, should not require any additional discovery because Microsoft and SAP already have full access to the information pertinent to these claims – *i.e.*, they are in the best position to know how they each use the accused products internally in their own operations. Indeed, information about their internal use of the accused products is not information they would be able to obtain in discovery from DataTern as this information is solely in their own possession.

Lastly, the facts recounted above – particularly the fact that DataTern included allegations of direct infringement in its Infringement Contentions - demonstrate that DataTern's request is neither dilatory nor made in bad faith.  At most, DataTern's request is simply an effort to conform the pleadings to the evidence adduced during the case.  *Cf.* Fed. R. Civ. P. 15(b)(1) (permitting pleadings to be amended at or after trial in order to conform to the evidence).

Claims for direct infringement have always been a part of this case through Microsoft's and SAP's complaints and affirmative defenses, the parties conducted discovery concerning these claims, and DataTern disclosed these claims in both its Infringement Contentions and in the Gupta Report (and Microsoft and SAP were afforded the opportunity to depose Mr. Gupta concerning this report during his September 28, 2012, deposition).  Under these circumstances, the proposed amendments do not change the landscape of this case in any appreciable way and thus DataTern's proposed amendments should be allowed consistent with the Federal Circuit's holding in *Vivid Technologies*.

## **CONCLUSION**

For all of the foregoing reasons, DataTern respectfully requests that the Court grant it leave to amend its Counterclaims in these cases.

ME1 14255649v.3

Dated: November 28, 2012                 McCARTER & ENGLISH, LLP

                                         /s/ David Himelfarb
                                         William A. Zucker, Esq.
                                         Lee Carl Bromberg, Esq.
                                         Erik Paul Belt, Esq.
                                         Daniel J. Kelly, Esq.
                                         M. Carolina Avellaneda, Esq.
                                         McCarter & English, LLP
                                         265 Franklin Street
                                         Boston, MA  02110
                                         (617) 449-6500
                                         lbromberg@mccarter.com

                                         and

                                         245 Park Avenue
                                         New York, New York  10167
                                         (212) 609-6800

                                         *Attorneys for Defendant*
                                         *DataTern, Inc.*

## CERTIFICATE OF SERVICE

I certify that, on this 28th day of November, 2012, I served copies of DataTern, Inc.'s Memorandum of Law in Support of its Motion to Amend upon counsel of record for the other parties in the above-referenced consolidated matters via ECF.

                                         /s/ David Himelfarb
                                         David Himelfarb

15