# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICROSOFT CORPORATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| DATATERN, INC., | )<br>)   CIVIL ACTION NO. 1:11-cv-02365-KBF |
| Defendant. | )<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DATATERN, INC.'S
MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 56(d)**

TABLE OF CONTENTS

BACKGROUND ..................................................................................................................................1

DISCUSSION .....................................................................................................................................5

I.    THE FACTS BEING SOUGHT AND HOW THOSE FACTS ARE REASONABLY EXPECTED TO CREATE A GENUINE ISSUE OF MATERIAL FACT ..........................8

    A.    DataTern's Pending Letter to the Court Regarding Surveys ...................................8

    B.    Information Sought From Microsoft Witnesses ......................................................9

    C.    Documents and Information Not Produced by Microsoft.....................................13

    D.    Information from Third Parties ..............................................................................13

II.    DATATERN'S EFFORTS TO OBTAIN THE REQUIRED FACTS AND DATATERN'S INABILITY TO OBTAIN THE REQUIRED FACTS ........................................................15

CONCLUSION..................................................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Carter v. AT & T Communications*,
  759 F. Supp. 155 (S.D.N.Y. 1991) ..................................................................................7

*Celotex Corporation v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................5, 6

*Committee for First Amendment v. Campbell*,
  962 F.2d 1517 (10th Cir. 1992) ......................................................................................7

*Continental Airlines, Inc. v. Lelakis*,
  943 F. Supp. 300 (S.D.N.Y. 1996) ..................................................................................7

*Dowling v. Cleveland Clinic Found.*,
  593 F.3d 472 (6th Cir. 2010) ........................................................................................16

*Ingle v. Yelton*,
  439 F.3d 191 (4th Cir. 2006) ..........................................................................................8

*Miller v. Wolpoff & Abramson, L.L.P.*,
  321 F.3d 292 (2d Cir. 2003)........................................................................................6, 7

*Sames v. Gable*,
  732 F.2d 49 (3d Cir. 1984)..............................................................................................8

*Serdarevic v. Advanced Medical Optics, Inc.*,
  532 F.3d 1352 (Fed. Cir. 2008) ......................................................................................6

*Sutera v. Schering Corp.*,
  73 F.3d 13 (2d Cir. 1995)................................................................................................6

*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*,
  865 F.2d 506 (2d Cir. 1989)............................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56...........................................................................................5, 6, 7, 8, 16, 17

Microsoft Corporation's ("Microsoft") motion for summary judgment (Docket # 152) requests judgment on two grounds. First, it seeks a judgment based on DataTern Inc.'s ("DataTern") concession that it cannot prove infringement under the Court's August 24, 2012 claim construction ruling (the "Markman Order") (Docket # 141). Second, in the alternative, it seeks a judgment under DataTern's proposed claims constructions which the Court did not endorse. *See*, *e.g.*, Microsoft's Memorandum of Law in Support of its Motion for Summary Judgment (Docket # 153) ("But Microsoft's entitlement to summary judgment of noninfringement is supported by more than DataTern's post-claim-construction concessions. Under even DataTern's proposed claim constructions, summary judgment is warranted for at least two additional independent reasons: …."). DataTern has asserted that this second ground for summary judgment is not supported by the record and that the Court should not include it in its declaratory judgment. If the Court were to consider deciding Microsoft's "alternative" basis for summary judgment, however, DataTern is entitled to complete the discovery it was actively pursuing at the time the Markman Order was issued. By agreement of the parties, DataTern ceased pursuing this discovery in light of its concession that it could not prove infringement under the Court's Markman Order. Now that Microsoft has reintroduced into this case its "alternative" basis for summary judgment unrelated to DataTern's concession, it would be unfair and inequitable to prevent DataTern from completing the discovery it was actively pursuing, as that discovery is directly relevant to Microsoft's "alternative" grounds for summary judgment.

## BACKGROUND

The Court's Markman Order was issued on August 24, 2012. Although the fact discovery deadline for this case was August 17, 2012 (*see* July 11, 2012 Order (Docket # 103)), the discovery process was far from over as of the date the Markman Order issued. Indeed, both Microsoft and SAP were actively conducting discovery beyond the August 17 deadline. For

1

instance, Microsoft took Ken Lord's deposition on August 20 and Mark Eisner's deposition on August 24.  *See* Avellaneda Decl., ¶ 5.  Likewise, as of August 24 there were numerous outstanding discovery disputes that the parties were attempting to work out.  Some of these disputes were the subject of discovery letters DataTern had submitted to the Court; other disputes were in the process of being teed up for presentation to the Court.  *See id.*  As of August 24, DataTern was also conducting certain third party discovery and was completing certain depositions of SAP witnesses.  *See id.*, ¶ 3.

After the Court issued its Markman Order, DataTern determined that it could not prove infringement based on the Court's claim construction.  *Id.*, ¶ 6.  On August 29, 2012, DataTern submitted a letter to the Court stating that "based on the Court's [Markman] Order" DataTern "concedes that it cannot prove infringement …."  *Id.* (Avellaneda Decl., Exhibit A).  DataTern further stated in this letter that "all parties request that the Court vacate today's deadline for the parties to submit expert reports related to invalidity and damages as those issues should be deemed moot in view of DataTern's non-infringement concession.  Based on the mooting of those issues, ***the parties also ask the Court to deem the pending discovery conference and scheduling requests*** [D.I. 138, 139, 140, 141, 142, 143, 144, 145, 147, and 148 in 11-cv-2648-KBF] ***withdrawn as moot***."  *Id.* (emphasis added).  In addition, in light of DataTern's concession, the parties further agreed amongst themselves to cease all other ongoing discovery, including addressing pending discovery disputes, etc.  *See* Avellaneda Decl., ¶ 6 and Exhibit C.  At the time DataTern agreed to this, it was not aware that Microsoft would seek to move for summary judgment under DataTern's proposed claim constructions.  *See id.*, ¶ 7.  DataTern would not have agreed to withdraw all pending discovery disputes and to halt its ongoing

discovery efforts if it had known that Microsoft intended to move for summary judgment on issues that were still in dispute in the litigation. *See id.*, ¶ 8.

On August 30, 2012, the Court issued an Order essentially endorsing the requests in DataTern's August 29 letter. *Id.* (Docket # 142) (Avellaneda Decl., Exhibit B). In particular, the Court's Order holds that "the discovery dispute letters at 11 Civ. 2648, Docket Numbers 138, 139, 140, 141, 142, 143, 144, 145, 147, and 148, are deemed withdrawn as moot." *Id.* The Court further ordered the parties to provide the Court their respective views on how best to proceed by September 7, 2012. *Id.*

The parties were unable to come to agreement as to how best to proceed in light of DataTern's concession, as Plaintiffs insisted on filing summary judgment motions. On September 7, 2012, DataTern filed a Request for Entry of Declaratory Judgment of Non-Infringement and For Dismissal Without Prejudice of Plaintiffs' Invalidity Claims (Docket #143). In this request, DataTern requested entry of judgment against it in light of the Court's Markman Order. Plaintiffs, in contrast, submitted a letter to the Court asking for leave to develop a more "fulsome appellate record" prior to entering judgment against DataTern. *See* Plaintiffs' September 7, 2012 Letter to the Court (Avellaneda Decl., Exhibit L). Plaintiffs further stated in their letter that, "[b]ecause fact discovery is closed, such an appellate record should include Plaintiffs' summary judgment motions of non-infringement based on DataTern's failures of proof as well as based on this Court's claim construction ruling." *Id.* at 1. Through this letter, Plaintiffs further sought leave to take the deposition of DataTern's expert, Neeraj Gupta. *Id.*

While this letter was correct in that fact discovery had technically closed on August 17, 2012 (*see* July 11, 2012 Order (Docket # 103)) (even though all parties continued to do discovery beyond that deadline), the letter failed to mention that there were numerous discovery

3

disputes and open issues that were pending as of the date the parties agreed to cease all discovery activities, and that the resolution of many of those issues in DataTern's favor would provide DataTern with evidence to rebut Microsoft's summary judgment motion.  In its September 10, 2012, letter to the Court, DataTern specifically informed the Court of its need to conduct further discovery if Microsoft moved for summary judgment on its "alternative grounds" (Avellaneda Decl., Exhibit M).  In the September 10, 2012, letter, DataTern states:

> In any of their communications with DataTern, Plaintiffs have never identified the "additional reasons" or grounds on which they will apparently seek summary judgment.  Moreover, DataTern's agreement to withdraw "as moot" its pending requests on what it believes to be serious deficiencies in Plaintiff's Rule 30(b)(6) designations and document product[ions] was based on Plaintiffs' suggestion and the understanding that the sole basis for requesting final judgment was to allow review of the Markman Order….  Moreover, at the time of the Markman Order, DataTern and Microsoft were in the midst of discovery conferences pursuant to Rule 2.F. of this Court's Individual Practices concerning additional deficiencies in Microsoft's document production and Rule 30(b)(6) designations (including Microsoft's tactics of switching designations at the last minute and its failure to produce a Rule 30(b)(6) witness on the functionality and characteristics of certain accused products).

*Id.*  DataTern further noted that, "proceeding on [Plaintiffs' suggested] basis would prejudice DataTern because it had agreed, based on Plaintiffs' suggestion of mootness, to suspend its efforts to conclude discovery in this matter or to file post discovery motions to true up the claims to discovery admissions."  *Id.*

Plaintiffs responded to DataTern's September 10, 2012, letter with their own letter, dated September 11, 2012 (Avellaneda Decl., Exhibit N).  In that letter, Plaintiffs acknowledge that the agreement to deem as moot all pending discovery disputes was based on DataTern's concession relating to the Court's Markman Order.  Plaintiffs then incorrectly argue that all pending discovery disputes "related almost exclusively to damages and not to non-infringement," and they further represent to the Court that the Court should nevertheless adopt their proposed

4

framework for filing summary judgment motions because DataTern would always have the option to show a need for additional discovery under Fed. R. Civ. P. 56(d). *See id.* ("If the Court adopts Plaintiffs' approach … DataTern would of course have the opportunity to rely on a need for discovery under FRCP 56(f) [*sic*] in response.  It is hard to conceive how a valid request could be made by DataTern under that provision, but the salient point for present purposes is that Rule 56(f) [*sic*] **provides a procedural safeguard to DataTern that addresses all the procedural concerns expressed in its September 10, 2012 letter regarding its claimed need for additional infringement discovery**.") (emphasis added).[1]

On September 17, 2012, the Court endorsed Plaintiffs' proposed suggestion for moving forward with this case by having the Plaintiffs file summary judgment motions.  *See* Docket # 147.  Inherent in this framework, therefore, is, as Plaintiffs readily concede, DataTern's "procedural safeguard" whereby, if it can satisfy the requirements of Rule 56(d), the Court should either defer consideration of Microsoft's "alternative" basis for its summary judgment motion and allow DataTern time to complete the unfinished discovery, or the Court should deny this part of Microsoft's motion outright.  *See* Fed. R. Civ. P. 56(d), thus meriting the relief DataTern is requesting.

## DISCUSSION

Before a court may proceed with summary judgment, the nonmoving party against whom summary judgment is sought must have an opportunity to conduct discovery in order to establish the facts needed to mount a defense.  In *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986), the Supreme Court acknowledged this principle by noting, "[i]n our view, the plain language of Rule

---

[1]   Fed. R. Civ. P. 56 was amended on December 1, 2010.  Among other things, this amendment renumbered Rule 56(f) as 56(d).  *See* Fed. R. Civ. P., Advisory Committee Notes, 2010 Amendments, Subdivision (d) ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).")

56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322 (emphasis added).  In accordance with the Supreme Court's decision, it is well established that "the nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Sutera v. Schering Corp.*, 73 F.3d 13, 15 (2d Cir. 1995) (citation omitted).[2]

Federal Rule of Civil Procedure 56(d) specifically states, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  *Id.*  As the Second Circuit has noted, "when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts necessary to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citation and internal quotation marks omitted).  "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id.* at 303-04 (citation and internal quotation marks omitted). *See also Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("Under Rule 56(f), summary judgment may be inappropriate where the party opposing it shows

---

[2]  Second Circuit law governs this dispute.  *See Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352, 1363 (Fed. Cir. 2008) ("We look to regional circuit procedural law for precedential guidance concerning practice under Rule 56([d]).") (citations and internal quotation marks omitted).

... that he cannot at the time present facts essential to justify his opposition. The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.") (internal quotations and citations omitted). Courts generally note that Rule 56(d) should be applied with "'a spirit of liberality' as a safeguard against an improvident or premature grant of summary judgment." *Carter v. AT & T Communications*, 759 F. Supp. 155, 160 (S.D.N.Y. 1991) (citing 10A Wright, Miller & Kane, Federal Practice & Procedure § 2740 at 532 (1983)).

In order to satisfy the requirements of Rule 56(d), DataTern must submit a declaration showing: "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller*, 321 F.3d at 303 (internal quotations and citations omitted). The declaration need not supply the missing facts; rather, it must simply explain why facts precluding summary judgment cannot be presented. *See Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) ("Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented.") (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2740 at 530 (1983)). *Cf. Continental Airlines, Inc. v. Lelakis*, 943 F. Supp. 300, 310 (S.D.N.Y. 1996) ("Defendant's Rule 56(f) affidavit must establish a reasonable expectation that the proposed discovery will provide evidence to support the insufficient elements of his affirmative defenses.").

Here, as set forth in further detail below, the Declaration of M. Carolina Avellaneda satisfies the requirements of Fed. R. Civ. P. 56(d), thereby entitling DataTern to relief.

7

I.      THE FACTS BEING SOUGHT AND HOW THOSE FACTS ARE REASONABLY EXPECTED TO CREATE A GENUINE ISSUE OF MATERIAL FACT

In this case, a significant amount of the evidence DataTern needs to properly respond to Microsoft's motion for summary judgment was sought by DataTern in discovery, but was not produced by Microsoft, and thus was the subject of a letter request to the Court (or was the subject of the parties' meet and confer discussions prior to submitting such a letter request to the Court). Because DataTern sought, but did not receive, this discovery, its Rule 56(d) request is particularly appropriate. *See Ingle v. Yelton*, 439 F.3d 191, 196 (4th Cir. 2006) ("denial of a Rule 56(f) motion is particularly inappropriate when, as here, 'the materials sought are the object of outstanding discovery.'") (citation omitted); *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984) ("This court has criticized the practice of granting summary judgment motions at a time when pertinent discovery requests remain unanswered by the moving party ….").

Also pertinent to DataTern's request is the fact that much of the discovery being sought by DataTern is solely in the possession of Microsoft. *See Ingle*, 439 F.3d at 196-197 ("courts should hesitate before denying Rule 56(f) motions when the party opposing summary judgment is attempting to obtain necessary discovery of information possessed only by her opponent."). The specific discovery DataTern requires before it can properly respond to Microsoft's motion for summary judgment is described below.

A.      **DataTern's Pending Letter to the Court Regarding Surveys**

On August 14, 2012, DataTern filed a letter with the Court to discuss bringing a motion to compel the production of (among other things) certain Microsoft surveys of Microsoft products which show how the products are used, and what percentage of users access relational databases with the Microsoft products, and therefore would be expected to use the accused

8

products.  *See* William A. Zucker's August 14, 2012 letter to the Court (Avellaneda Decl., Exhibit D) (11-Civ. 2648, Docket #139).  The letter states, in pertinent part:

> Microsoft has produced a worksheet which shows that Microsoft conducts systematic surveys of its products, their usage, percentage of the market, importance, etc., including the very products involved in this case.  Yet is has not produced any survey that shows (i) what percentage of Window[s] users are business users and what percentage use Windows to access relational databases and therefore employ ADO.Net and Entity Frameworks or (ii) what portion of Microsoft's installed software is for relational databases, the size of those clients and whether they utilize the Windows platform as well.  These critical categories of information have not yet been produced and are prejudicing DataTern's defense and prosecution of this matter.

*Id.* at 3.  This evidence would be directly relevant to establish customer use of accused products which access relational databases and thus is probative of DataTern's contributory and indirect infringement claims against Microsoft.  *See* Avellaneda Decl., ¶ 10.  This is one of the letters the Court found withdrawn as moot in its August 30, 2012, Order.  *See id.*, Exhibit B.

Before ruling on Microsoft's motion for summary judgment addressed to DataTern's alleged lack of proof of contributory and indirect infringement, the Court should compel Microsoft to produce this relevant evidence and give DataTern a meaningful opportunity to digest it.

      **B.**    **Information Sought From Microsoft Witnesses**

On August 23, 2012, DataTern had the last of several meet and confer conversations with Microsoft's counsel.  *See* Avellaneda Decl., ¶ 11.  However, because DataTern and Microsoft were not able to resolve all outstanding discovery issues by agreement (*see* email chain between DataTern and Plaintiff's counsel dated August 23, 2012, a copy of which is attached to the Avellaneda Decl. as Exhibit E), DataTern was preparing a letter to file with the Court asking the Court to compel Microsoft to produce additional documents and to produce additional witnesses for deposition.  *See id.*, ¶ 11.

Among other relief DataTern was planning on seeking from the Court was the ability to continue the depositions of Microsoft witnesses designated to testify about technical topics, including, without limitation, the "conception, research, design, development, reduction to practice, testing, governmental approval, internal approval, prototyping, manufacture, technical specifications, operating parameters, performance capabilities, construction, components and/or physical make up" of Microsoft products including, but not limited to, SQL Server with Business Intelligence Development, Microsoft Business Intelligence, SSRS, Windows XP, Windows 7 and Vista (30(b)(6) Topic 1); whether Microsoft products embody each element of claim 1, 2, 7, 10, 11 and 16 of the '502 patent (Topic 18); Microsoft's investigation and research concerning the '502 patent (Topic 40); Microsoft's technical support of ADO.NET (Topic 54); and Microsoft's knowledge of how Independent Software Vendors ("ISVs") use Microsoft Products (Topic 74). *See* Avellaneda Decl., ¶ 12.

Originally, Microsoft designated Michael Pizzo as its main witnesses to testify on these topics, but Microsoft limited his testimony to the accused products.  Moreover, Microsoft refused to produce Mr. Pizzo for more than seven (7) hours despite the facts that: 1) Mr. Pizzo was Microsoft's key witness on almost all technical issues, 2) he was designated to testify on 19 topics, and 3) many of those topics were added to Mr. Pizzo's designation at the last minute by Microsoft.  *See* Avellaneda Decl., ¶ 13.  Not surprisingly, DataTern was not able to complete the topics for Mr. Pizzo within the seven allotted hours and suspended the deposition and sought to depose Mr. Pizzo for an additional day.  Despite several meet and confer discussions on the topic, Microsoft refused to produce Mr. Pizzo for a second day of deposition.  *See id.*  Mr. Pizzo would have provided testimony on the topics Microsoft now asserts DataTern has not sufficiently proved.

On August 14, 2012, DataTern filed a letter pursuant to Rule 1.E. of the Court's Individual Practices raising with the Court Microsoft's continued refusal, as of the date of the letter, to produce Mr. Pizzo for a second day of deposition. *See* William A. Zucker's August 14, 2012 letter to the Court (Avellaneda Decl., Exhibit F). DataTern continued to address this issue with Microsoft to no avail. *See* August 21, 2012 email from Daniel Goettle to Carolina Avellaneda (Avellaneda Decl., Exhibit E).

Had DataTern not agreed to cease discovery after the Court's Markman Order, it would have moved to compel a second day of Mr. Pizzo's deposition, and through his testimony would have established more definitely that each of the accused products practices the methods of the '402 and '502 patents, that Microsoft's customers used the products in an infringing fashion, including to create applications that access relational databases, that Microsoft provides guides, tutorials, and technical support to assist its customers in their infringement of the '402 and '502 patents, and that the functionality in the accused products has no substantial non-infringing uses. *See id.*, ¶ 15. Additional testimony from Mr. Pizzo would further establish that Microsoft uses the "Microsoft ecosystem" to induce developers to use the accused products to create applications to access relational databases. All of this evidence would have created a genuine issue of material fact regarding the facts raised by Microsoft in support of its Motion for Summary Judgment. Indeed, it strains logic to suggest that a motion for summary judgment based on the nonmovant's alleged lack of evidence is ripe for adjudication when the nonmovant can credibly show that it was not afforded a full and fair opportunity to complete a Fed. R. Civ. P. 30(b)(6) deposition of a witness designated to testify on the very issues that are the subject of the pending motion.

11

DataTern also would have moved to compel day two (2) of the deposition of Matthew Warren, which Microsoft refused to agree to during the deposition.  *See* Avellaneda Decl., ¶ 16. Microsoft produced Mr. Warren to testify on limited technical issues, specifically with reference to Visual Studios with LINQ to SQL, but he was not prepared to testify on some of those issues. DataTern also expected that Mr. Warren would be able to testify about how customers use Microsoft's products to infringe the '402 and '502 patents, and the lack of substantial non-infringing uses for functionality within the accused products (two key issues implicated in Microsoft's pending motion).  *Id.*  It is unfair for Microsoft to move for summary judgment based on DataTern's alleged lack of evidence when DataTern was not afforded a full and fair opportunity to discover this information from Microsoft's witnesses.

Lastly, but for its agreement to cease discovery, DataTern was planning on moving to compel the production of witnesses on topics identified in DataTern's Second Amended 30(b)(6) Notice for which Microsoft refused to designate or produce witnesses, including:  Topic 1, for which Microsoft objected to producing witnesses relating to certain accused products (e.g. Visual Studios without LINQ to SQL) and all non-accused products; the validity and enforceability of the patents-in-suit (Topic 7); and Microsoft's assessment of any acceptable non-infringing alternatives to the patents-in-suit (Topic 75).  *See* Avellaneda Decl., ¶ 17.

DataTern expects that witnesses designated to testify regarding the topics outlined above will provide evidence that there were no substantial non-infringing uses for functionalities within the accused products; that Microsoft uses the accused products internally; and that Microsoft's customers used Microsoft products to infringe the '402 and '502 patents.  *See id.*  Such evidence creates a genuine issue of material fact with regard to the issues of contributory and induced infringement.

### C.     Documents and Information Not Produced by Microsoft

Microsoft objected to the production of documents or responses to interrogatories regarding products that were not accused in DataTern's infringement contentions. DataTern disagrees with this limitation and raised the issue with Microsoft. See July 26, 2012 email from Carolina Avellaneda to Microsoft's counsel (Avellaneda Decl., Exhibit J).

DataTern intended to compel production of these documents from Microsoft and expected these documents to demonstrate the breadth of its customer's direct use of Microsoft products which embed the accused products, and the lack of substantial non-infringing uses for these accused products, two issues directly implicated in Microsoft's pending motion.

### D.     Information from Third Parties

DataTern served nine (9) third party subpoenas on Microsoft's ISVs seeking documents and noticing depositions for August 17, 2012. DataTern asked for each of these companies to designate witnesses to testify regarding their use of the accused Microsoft products to access relational databases, and to produce documents regarding these same categories. *See* Avellaneda Decl., ¶ 21. DataTern contacted each of the nine ISVs and discussed the content of the subpoenas and the categories of documents and records that DataTern was seeking. Based on these discussions, and in order to limit the amount and scope of third party discovery in this case, DataTern determined that all but four of the ISVs could be released from their subpoenas. The four ISVs which DataTern intended to depose and seek documents from were BioClinica, Inc., Dinerware, Inc., Stone Bond Technologies, Inc. and Ektron. *See id.*, ¶ 22. DataTern informed Microsoft's counsel on August 13 that the ISV depositions would not go forward on August 17 and that BioClinica, Inc. and Stone Bond Technologies, Inc. had served written objections to DataTern's subpoenas, effectively postponing their respective depositions. *See* August 13, 2012 email from Carolina Avellaneda to Jeffrey Lesovitz (Avellaneda Decl., Exhibit I). Despite

13

serving written objections, counsel for both BioClinica and Stone Bond Technologies expressed their willingness to assist DataTern in obtaining certain records responsive to the subpoenas if DataTern could narrow the scope of its document requests. *See id.*, ¶ 24. DataTern was in the process of determining what type of records and information were in the possession of these two companies when the Court issued its Markman Decision on August 24. *See id.*

DataTern also pursued its deposition of Ektron and Dinerware, an ISV located in Seattle, Washington. During DataTern's discussions with Dinerware's counsel, it was determined that the Dinerware employee best suited to appear for deposition on Dinerware's behalf was located in Portland, Oregon. However, this employee was travelling and unavailable for deposition on August 17. Counsel for both parties discussed the possibility of either a video deposition or simply rescheduling the deposition for a later date. DataTern subsequently informed Dinerware's counsel that it intended to reschedule the deposition for a date after August 17, 2012, but the deposition was never rescheduled once the Court issued its Markman Decision on August 24. *See* Avellaneda Decl., ¶ 25.

Ektron contacted DataTern's counsel to discuss the subpoena and ultimately agreed to make an Ektron employee available for a conference call to discuss whether Ektron had relevant information. DataTern agreed to reschedule the August 17 deposition until after the conference call. DataTern notified Microsoft that it intended to reschedule the Ektron deposition. DataTern did not follow up with Ektron to schedule the proposed call with its employee due to the Markman Order. *See id.*, ¶ 26.

Because Microsoft was not amenable to rescheduling these depositions by agreement, DataTern was preparing to move the Court for an order allowing these depositions to go forward when it received the Markman Order. *See id.*, ¶ 28. DataTern believes that each of the ISVs are

using Microsoft products to directly infringe the methods claimed in the '402 and '502 patents, which would directly rebut Microsoft's contention that indirect infringement is not available because there is no evidence of direct infringement. DataTern also believes that the information obtained from ISVs who are actually using Microsoft's tools in an infringing manner would show that Microsoft is actively engaging with these ISVs to provide support, training and services that contribute to and further the ISV's direct infringement of the patents-in-suit. DataTern expected to obtain information from these witnesses relative to their direct infringement of the '402 and '502 patents, Microsoft's knowledge of their infringement, Microsoft's encouragement of their infringement through guides, tutorials, and support, and the lack of any substantial non-infringing uses for functionalities of the accused products. This discovery would have presented a genuine issue of material fact prohibiting summary judgment against DataTern on its claim for contributory and induced infringement. *Id.*, ¶ 29.

As such, before the Court rules on Microsoft's pending motion for summary judgment, DataTern should be permitted to complete this third-party discovery from these four ISVs, including obtaining their documents and taking their depositions.

## II. DATATERN'S EFFORTS TO OBTAIN THE REQUIRED FACTS AND DATATERN'S INABILITY TO OBTAIN THE REQUIRED FACTS

DataTern's inability to obtain the facts necessary to properly rebut Microsoft's "alternative" motion for summary judgment arises from the unique procedural posture of this case. As of August 24, 2012, DataTern was actively seeking to obtain this material evidence, and in compliance with the Court's Individual Practices in Civil Cases, Rule 2.F., had submitted several discovery disputes concerning this evidence to the Court for further consideration. As to the remaining discovery, it was working with Microsoft to attempt to come to an agreement as to how to obtain the required information. Of course, much of this discovery would have been

15

timely obtained in the first place but for Microsoft's lack of cooperation and refusal to permit broad categories of discovery to go forward.

When the Court issued its Markman Order, DataTern conceded that it could not prove infringement based on the Court's constructions. As such, it did not believe it would be appropriate to conduct further discovery when it was willing to concede non-infringement – a proposition with which both Microsoft and SAP agreed. All parties, including Microsoft and SAP, agreed to suspend pending discovery. DataTern offered to consent to the entry of a judgment against it so that the Court's claim construction could be appealed to the Federal Circuit. Importantly, at the time DataTern agreed to cease pursuing all pending discovery, it was not informed by Microsoft that Microsoft would seek to obtain summary judgment not just based on DataTern's concession, but on DataTern's proposed claim construction as well. Had Microsoft disclosed this, DataTern would not have agreed to stay all discovery or to treat the pending discovery disputes as moot. Indeed, shortly after Microsoft revealed its true intentions, DataTern objected to Microsoft's proposed approach on the grounds that several important discovery disputes were still outstanding. Microsoft responded that DataTern's concerns could be addressed in a Rule 56(d) request. But Microsoft never articulated the grounds for its motion so that DataTern could determine in fact whether any additional discovery was still necessary prior to the actual filing of the motion for summary judgment.

Under these circumstances, DataTern acted reasonably and diligently, further highlighting the propriety of granting its Rule 56(d) request. *See Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010) ("[t]he overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery.").

## CONCLUSION

For the foregoing reasons, DataTern respectfully requests that the Court grant its request, pursuant to Fed. R. Civ. P. 56(d), to either conduct the outstanding discovery discussed above prior to ruling on Microsoft's "alternative" summary judgment grounds, or that Microsoft's motion based on its "alternative" grounds be denied as premature.

Dated: November 28, 2012	McCARTER & ENGLISH, LLP

/s/ David Himelfarb
William A. Zucker, Esq.
Lee Carl Bromberg, Esq.
Erik Paul Belt, Esq.
Daniel J. Kelly, Esq.
M. Carolina Avellaneda, Esq.
McCarter & English, LLP
265 Franklin Street
Boston, MA  02110
(617) 449-6500
lbromberg@mccarter.com

and

245 Park Avenue
New York, New York  10167
(212) 609-6800

*Attorneys for Defendant*
*DataTern, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of this Memorandum in Support of DataTern's Motion for Additional Time to Obtain Evidence and Take Discovery Pursuant to Fed. R. Civ. P. 56(d) was served on this 28th day of November, 2012 upon counsel of record for Microsoft Corp., SAP AG and SAP America, Inc. via *ECF*.

/s/ David Himelfarb
David Himelfarb

17