## UNITED STATES DISTRICT COURT FOR
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAP AG AND SAP AMERICA, INC.,<br><br>       Plaintiffs,<br><br>v.<br><br>DATATERN, INC.,<br><br>       Defendant. | Civil Action No. 1:11-cv-02648-KBF<br><br>**MEMORANDUM OF LAW IN SUPPORT OF SAP AG AND SAP AMERICA, INC.'S MOTION TO ENJOIN DATATERN'S ASSERTION OF INFRINGEMENT OF U.S. PATENT NOS. 5,937,402 AND 6,101,502 BASED ON THE USE OF SAP'S BUSINESSOBJECTS PRODUCTS**<br><br>ECF Case |

## TABLE OF CONTENTS

                                                                                          **Page**

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL BACKGROUND ....................................................................3

    A.      DataTern Files Numerous Lawsuits Alleging Infringement Against Users Of
        SAP's BusinessObjects Products ...............................................................3

    B.      DataTern's Cynical Campaign To Extract Settlements From SAP's
        Customers At Well Below Their Cost Of Defense .................................5

    C.      The Texas Court Stays The Customer Suits In Favor Of This Action To
        Promote "Considerations of Efficiency" ...............................................5

    D.      This Court Denies DataTern's Request To Stay Or Dismiss This Action .......7

    E.      DataTern Concedes That SAP Is Entitled To Summary Judgment Of Non-
        Infringement In Light Of The Court's Claim Construction Order .................8

    F.      DataTern Argues "It Makes No Sense To Proceed" In Its Infringement
        Actions On The Patents-in-Suit In The District of Massachusetts ..................9

    G.      DataTern Opposes Renewed Stay In Texas But Admits It Cannot Prove
        Infringement Based Upon The Use Of SAP's BusinessObjects Products ......10

    H.      DataTern Pursues Its Infringement Allegations Against SAP's Customers,
        Continuing Its Cynical Litigation Campaign ...........................................12

III.    ARGUMENT .................................................................................................14

    A.      Choice of Law And Legal Standard .........................................................14

        1.      Applicable Law ...........................................................................15

        2.      *Katz* Governs SAP's Request For An Injunction Against DataTern ..15

    B.      An Injunction Is Particularly Appropriate In Light Of This Court's Claim
        Construction Order And DataTern's Concessions Of Noninfringement .......16

        1.      Enjoining DataTern Will Prevent "Duplicative, Wasteful, and
            Burdensome" Litigation ...............................................................17

        2.      The Customer Suits Are An Inappropriate And Inequitable Vehicle
            To Relitigate Claim Construction And Liability Issues .....................19

        3.      Other Equitable Considerations Support Issuance Of An Injunction 20

        4.      DataTern's Objections To The Scope And Duration of SAP's
            Proposed Injunction Are Meritless ...............................................22

            a.      The Litigation Against SAP's Customers Should Not Proceed
                Until The Federal Circuit Rules In This Case ...............................22

            b.      An Injunction Would Prohibit Any Assertion Of Infringement
                Based On The Use Of SAP's BusinessObjects Products ...............23

IV.     CONCLUSION ...............................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.*,
    2004 WL 1554382 (D. Del. May 13, 2004) ........................................................................ 19

*DataTern, Inc. v. Abbott Laboratories et al.*,
    2:11-cv-00203-MHS-CMC (E.D. Tex.) ("*Abbott Labs*") ................................................. passim

*DataTern, Inc. v. The Allstate Corporation et al.*,
    2:09-cv-00178-TJW (E.D. Tex.) ("*Allstate*") ................................................................. 3, 4

*DataTern, Inc. v. Eli Lilly and Company, et al.*,
    2:10-cv-00413-MHS-CMC (E.D. Tex.) ("*Eli Lilly*") ...................................................... passim

*DataTern, Inc. v. MicroStrategy, Inc.*,
    1:11-cv-12220-FDS (D. Mass., Boston Division) ("*MicroStrategy*") ............................. 9, 17

*DataTern, Inc. v. Staples, Inc., et al.*,
    2:10-cv-00133-MHS-CMC (E.D. Tex.) ("*Staples*") ....................................................... passim

*DataTreasury Corp. v. First Data Corp.*,
    243 F. Supp. 2d 591 (N.D. Tex. 2003) ......................................................................... 20, 22

*Delphi Corp. v. Automotive Tech. Int'l, Inc.*,
    No. 08-11048, 2008 WL 2941116 (E.D. Mich. Jul. 25, 2008) .......................................... 19

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388(2006) ........................................................................................................ 16

*Kahn v. General Motors, Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) .................................................................................... 19

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................................................... passim

*Kessler v. Eldred*,
    206 U.S. 285 (1907) ............................................................................................. 14, 17, 20

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004) .................................................................................... 15

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ...................................................................................................... 22

*MGA, Inc. v. Gen. Motors Corp.*,
    827 F.2d 729 (Fed. Cir. 1987) ...................................................................... 14, 20

*Microsoft Corp. v. DataTern, Inc.*,
    No. 11-2365 (S.D.N.Y. Apr. 7, 2011) ................................................................ 4

*ProBatter Sports, LLC v. Joyner Technologies, Inc.*,
    463 F. Supp. 2d 949 (N.D. Iowa 2006) ............................................................ 18

*Ricoh Co. Ltd. v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003) ................................................................. 19

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) ....................................................................... 16

*Unisys Corp. v. Amperif Corp.*,
    1994 WL 116105 (E. D. Penn., March 15, 1994) ............................................ 18

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*,
    505 F. Supp. 2d 561 (E.D. Wisc. 2007) ........................................................... 19

Plaintiffs SAP AG and SAP America, Inc. ("SAP") respectfully submit this memorandum of law in support of their motion to enjoin Defendant DataTern, Inc. ("DataTern") from asserting infringement of U.S. Patent No. 5,937,402 (the "'402 Patent") and U.S. Patent No. 6,101,502 (the "'502 Patent") (together, the "Patents-in-Suit") based on the use of SAP's BusinessObjects products.

## I.    INTRODUCTION

This injunction motion is necessary because DataTern is insisting that the Texas cases involving SAP customers and products move forward even though this Court's claim construction has established that SAP's products do ***not*** infringe the Patents-in-Suit. Indeed, DataTern has repeatedly acknowledged that this Court's ruling is binding on it and that SAP's customers will have no liability if the Federal Circuit confirms this Court's ruling. DataTern's renewed pursuit of its Texas claims improperly allows it to perpetuate the specter of litigation cost and liability over SAP's customers so that it can continue its cynical campaign to extract below-cost-of-defense settlements.

The cause of the problem is that DataTern successfully argued for the reopening of its customer actions in Texas, primarily based on arguments specific to separate Microsoft technology. But based on these Microsoft-specific arguments, the Texas customer cases have recently been reopened against SAP customers for their activity related to the SAP products. In response to the lifting of the stays, and just a few days ago, an SAP BusinessObjects customer sought payment from SAP for a proposed settlement with DataTern because the settlement is significantly less than it would cost to litigate (even in the short term) as the Texas actions resume. Moreover, a number of other SAP customers remain active defendants in Texas and can be expected to face the same settlement calculus as a result of continued litigation by DataTern in Texas.

In the wake of this turn of events, SAP approached DataTern and asked it to agree not to pursue its infringement allegations against SAP customers for their use of SAP products. DataTern essentially acknowledged it should not be pursuing such claims, but it included two intolerable caveats that made this motion necessary.

First, DataTern insists that it should be allowed to pursue a different claim construction in the customer cases in Texas and, if those constructions were to be different from this Court's construction, resume litigating against the SAP customers with the use of that different construction. But that outcome violates the impending judgment in this case, which entitles SAP and its customers to be free from such claims of infringement. In addition, and more immediately, it gives DataTern a basis to threaten additional litigation costs against SAP customers to improperly pressure settlements now. This is already happening and causes irreparable harm to SAP. Furthermore, none of this makes sense because DataTern has conceded that it is inefficient, wasteful and nonsensical to pursue its infringement claims before the Federal Circuit reviews this Court's rulings.

Second, DataTern attempts to keep its ability to threaten SAP customers alive by arguing that there might be changes the customers are making to SAP's products that cause them to infringe. Of course, because DataTern acknowledges that SAP products do not infringe on four independent grounds under this Court's construction, this is wishful thinking. Moreover, because DataTern has **no** evidence that the SAP customers DataTern sued in Texas are somehow altering the BusinessObjects software to cause infringement, it has attempted to have SAP guarantee that no customers are modifying its software product this way. This improperly flips the burden. If DataTern has evidence of such uses, it should have come forward with it long ago.

In sum, this Court should enter an injunction against DataTern to prevent it from continuing its litigation against SAP customers or threatening them with infringement liability based on the Patents-in-Suit until the Federal Circuit issues a ruling in this case.

## II.     PROCEDURAL BACKGROUND

The root of this motion is DataTern's attempt for a second bite at the apple so it can pursue improper payments from SAP's customers.   Accordingly, this section lays out the procedural history of DataTern's litigation campaign against SAP's customers.  It also describes DataTern's continued attempts to pursue its claims against SAP customers—and extract settlements from them—after the Texas court recently lifted a stay that was originally granted based on the pendency of this action.

### A.     DataTern Files Numerous Lawsuits Alleging Infringement Against Users Of SAP's BusinessObjects Products

Nearly three years ago, DataTern began its litigation campaign against SAP customers in the Eastern District of Texas, (the "Texas Court") alleging infringement of the Patents-in-Suit. *See DataTern, Inc. v. The Allstate Corporation et al.*, 2:09-cv-00178-TJW (E.D. Tex.) ("*Allstate*")[1];   *DataTern, Inc. v. Staples, Inc., et al.*, 2:10-cv-00133-MHS-CMC (E.D. Tex.) ("*Staples*");   *DataTern, Inc. v. Eli Lilly and Company, et al.*, 2:10-cv-00413-MHS-CMC (E.D. Tex.) ("*Eli Lilly*").   DataTern also filed an action in the Texas Court alleging infringement of only the '402 Patent.  *See DataTern, Inc. v. Abbott Laboratories et al.*, 2:11-cv-00203-MHS-CMC (E.D. Tex.) ("*Abbott Labs*") (together with *Staples* and *Eli Lilly*, the "Customer Suits").  A number of BusinessObjects users are still involved in the Customer Suits, including at least the

---

[1] All claims in *Allstate* have been dismissed; the action is now closed.  *See* Order of Dismissal, *Allstate* (Ex. C).  Exhibit references throughout the brief refer to exhibits attached to the Declaration of Edward R. Reines, except as otherwise noted.

following: in *Staples*, Staples and Sears; in *Eli Lilly*, Volkswagen, Aflac, AT&T, Iron Mountain, and Walgreen (collectively, the "Customer Defendants").

The complaints in the Customer Suits do not specify particular accused products. But DataTern served "informal infringement contentions," "generic infringement charts," "illustrative claim charts," or the like, on the Customer Defendants alleging infringement based on (1) their use of SAP's BusinessObjects software, and, for some defendants, on (2) their use of Microsoft software. *See, e.g.*, Exhs. C, D, E & I to Buccino Decl. [D.I. 25]. Of the 72 defendants at one time involved in the Customer Suits (along with the *Allstate* action), at least 15 are SAP's customers and/or users of SAP's BusinessObjects software against whom DataTern asserted infringement based on their use of BusinessObjects. In response to DataTern's allegations regarding BusinessObjects, some of the Customer Defendants sought indemnification from SAP. *See, e.g.*, Exhs. E, G, H, I to Buccino Decl. [D.I. 25].

DataTern's allegations placed a cloud over SAP and its BusinessObjects products, and injured and continue to injure SAP's business and business relationships. SAP Complaint [D.I. 1] ¶¶ 3, 34. For that reason, SAP filed this action against DataTern on April 18, 2011, seeking a declaratory judgment that the '402 and '502 Patents are invalid; that neither SAP nor any of its products infringe those patents; and that SAP has neither contributed to nor induced the infringement of those patents by others. *Id.* at ¶¶ 32-48. DataTern responded by alleging, in "conditional" counterclaims,[2] that SAP infringes both Patents-in-Suit by, among other things, inducing its customers to infringe. Microsoft also filed a parallel declaratory judgment action in this Court. *See Microsoft Corp. v. DataTern, Inc.,* No. 11-2365 (S.D.N.Y. Apr. 7, 2011) (the "*Microsoft*" action and, collectively with this action, the "Manufacturer Suits").

---

[2] All such "conditions" were soon met, and DataTern agrees that its counterclaims have long since become unconditional. DataTern's Responses to SAP's Rule 56.1 Statement [D.I. 188] at ¶ 13.

B.     **DataTern's Cynical Campaign To Extract Settlements From SAP's Customers At Well Below Their Cost Of Defense**

Since filing the Customer Suits, DataTern has aggressively pursued, and in some cases obtained, settlements with SAP's BusinessObjects customers and users.  Based on the settlement amounts and number of defendants sued, this litigation campaign appears intended to garner quick, below-cost-of-defense settlements against SAP's customers unrelated to the merits of the cause of action.  *See* Settlement Agreements for SAP Customers, Perito Decl. ISO SAP Mot. Summ. J. [D.I 169] Exs. A-I (Settlements between DataTern and each of Allstate, BP, Buy.com, BNY Mellon, Regions Financial, Eli Lilly, Newell Rubbermaid, Abbott Laboratories).   As explained below, the Texas Court eventually stayed the Customer Suits.  *See infra* Section II.C. Recently, DataTern was able to convince the Texas Court not to renew these stays, *see infra* Section II.G, and has resumed its campaign for settlements far below cost of defense, *see infra* Section II.H.

C.     **The Texas Court Stays The Customer Suits In Favor Of This Action To Promote "Considerations of Efficiency"**

Shortly after the filing of this action, defendants in all three of the Customer Suits moved to stay those cases in favor of this case.  *See* Defendants' Mtns. to Stay, *Staples* (Ex. D); *Eli Lilly* (Ex. E); *Abbott Labs* (Ex. F).  Motions for stay were initially denied by Magistrate Judge Craven in *Staples*, Ex. G, and *Eli Lilly*, Ex. H.[3]  Magistrate Judge Craven would later state that she "was not convinced Microsoft and SAP were the 'true defendants' in [*Eli Lilly*] and was 'hesitant' to apply the customer-suit exception without [DataTern's] infringement contentions or an otherwise clear indication of the accused instrumentalities.  March 12, 2012 Order, *Eli Lilly* (Ex. I) at 2. The motion for stay in *Abbott Labs* was denied as moot, because the matter had been dismissed entirely as to the party that filed that motion.  January 12, 2012 Order, *Abbott Labs* (Ex. J).  In

---

[3] The Customer Suits had been referred to Magistrate Judge Craven for all pretrial purposes.

March 2012, on reconsideration to Magistrate Judge Craven, stays were granted in both *Staples*,

Ex. I, and *Eli Lilly*, Ex. I, and a subsequent unopposed motion for stay in *Abbott Labs* was also

granted, Ex. K, pending resolution of the Manufacturer Suits.   Magistrate Judge Craven

considered "the additional information now provided" and that, "while a claim construction

hearing is scheduled March 28, 2012 in [*Staples*], Defendants in that case have now agreed to be

bound by the claim construction order in the New York action."   March 12, 2012 Order, *Eli*

*Lilly* (Ex. I) at 6.

   The Texas Court specifically noted that the SAP Customers on reconsideration **had**

shown that DataTern's infringement contentions demonstrated its infringement claims were

based on their "ordinary use" of SAP's products:

> [T]he Court was not convinced that Microsoft and SAP are the true
> defendants in these case as urged by Defendants. Since that time,
> Plaintiff has filed its infringement contentions in [*Eli Lily*]. The
> infringement contentions are based on Defendant's use of SAP
> BusinessObjects and Microsoft ADO.NET software for its
> intended use of interfacing with software applications and
> relational databases. …
>
> Defendants point out that the customer-suit exception applies when
> "customers are being sued for their **ordinary use** of the
> manufacturer's products."

*Id.* (quoting *Cadence Design Sys., Inc. v. OEA Int'l, Inc.*, 2011 WL 4403619, *2 (N.D. Cal.

2011) (emphasis in original)).   As the defendants explained to the court in their briefing,

***DataTern's infringement contentions cite to BusinessObjects for every limitation of the '502***

***Patent***.   *See* Defendants' Reply to Mtn. to Stay, *Staples* (Ex. L) at 4 (citing DataTern's

Contentions, D.I. 150 Ex. C).   Accordingly, Magistrate Judge Craven determined that the

Customer Suits "should be stayed because 'in all likelihood [the New York cases] will settle

many [issues] and simplify them all.'"   March 12, 2012 Order, *Eli Lilly* (Ex. I) at 6. (quoting

*Landis v. North American Co.*, 299 U.S. 248, 256 (1936)).  Magistrate Judge Craven "applie[d] the customer-suit exception [] based primarily on considerations of efficiency."  *Id.* at 9.

On July 16, 2012, Judge Schneider affirmed the substantive basis of Magistrate Craven's ruling in *Staples* and *Eli Lilly* but modified the order to provide that the stays would expire on the earlier of August 12, 2012 or entry of a claim construction order in the Manufacturer Suits. Order Denying Plaintiffs' Mtn. for Reconsideration, *Staples* (Ex. M); *Eli Lilly* (Ex. M).  The stay in *Abbott Labs* was not so modified.

> D.    **This Court Denies DataTern's Request To Stay Or Dismiss This Action**

At the same time the Customer Defendants were first litigating the issue of stay in the Customer Suits, DataTern moved to stay this action in favor of the Customer Suits and other Texas suits pending at the time.  *Microsoft*, DataTern's Memorandum ISO Mtn. to Stay [D.I. 38] at 1.  At this Court's hearing regarding the motion to stay this action, DataTern argued that a stay would promote efficiency by ensuring there would be only one claim construction proceeding:

> So with respect, then, to the stay, your Honor, it's both a judicial efficiency issue -- and, of course, if the patents -- for example, there's a Markman hearing coming up in March, March 28th, in the Staples case, DataTern v. Staples, et al, in Texas.  That will resolve some claim construction issue.
>
> Now I agree that you wouldn't necessarily be bound by the findings at the district court level; but should that go up on appeal to the Federal Circuit before we reach it here, then there will be binding issues of claim construction rulings in the Federal Circuit with that case.  So that would be one very good example of how a stay could be more efficient here.

Feb. 15, 2012 Order [D.I. 43] at 19 (transcript of hearing on DataTern's motion to stay).  In denying DataTern's motion to stay, the Court found that, "[a]s to whether or not the New York court or the Texas court is going to reach final judgment first, who knows.  And there may be situations in which inefficiencies will be created, and there may not be."  *Id.* at 21.

E.      **DataTern Concedes That SAP Is Entitled To Summary Judgment Of Non-Infringement In Light Of The Court's Claim Construction Order**

On August 24, 2012, this Court issued its Opinion and Order construing the disputed claim terms ("Claim Construction Order"). Claim Construction Order [D.I. 151]. Five days later, DataTern "submitted a letter to the Court conceding that it would not be able to prove infringement on the basis of the Court's construction of the contested claims in this action." August 30, 2012 Order [D.I. 152].[4] DataTern, on the one hand, and Microsoft and SAP, on the other hand, submitted competing proposals to the Court as to how to proceed with the case given DataTern's concession. The Court elected to proceed according to Microsoft and SAP's proposal. Endorsed Letter Order, September 17, 2012 [D.I. 157]. Accordingly, SAP filed its motion for summary judgment on October 26, 2012, asserting numerous independent bases of noninfringement.

DataTern agrees that it cannot prove infringement for four independent reasons. *See* DataTern's Partial Opposition to SAP's Motion for Summary Judgment [D.I. 180]. Specifically, it agrees that, under the Court's Claim Construction Order, SAP is entitled to summary judgment of the '502 Patent based on DataTern's concessions that:

1.  "BusinessObjects does not have inheritance relationships between 'classes' of the object model, as required by the Court's construction," *id.* at 8;

2.  "[T]here is insufficient evidence that the accused 'object model' of SAP's products includes 'classes' if class is defined using the joint agreed upon construction so that it must include both attributes (properties) and behaviors (methods)," *id.*;

---

[4] The Court previously granted SAP's Motion for Partial Summary Judgment of Noninfringement of the '402 Patent [D.I. 66] in its June 27, 2012 Order [D.I. 159].

3. "BusinessObjects does not meet [the "Create at least one Interface Object"] limitation because there was insufficient evidence that BusinessObjects generated code for at least one class and instantiated a query object from that class," *id.* at 10; and

4. "BusinessObjects does not meet [the "Runtime Engine"] limitation because … DataTern's expert concluded that under the Court's claim construction … it does not meet the first part, namely (i), which reads 'the object oriented software application depends on to run,'" *id.* at 12-13.

F.    **DataTern Argues "It Makes No Sense To Proceed" In Its Infringement Actions On The Patents-in-Suit In The District of Massachusetts**

In 2011, DataTern also filed actions for patent infringement—based on the same patents at issue in this case—against MicroStrategy and its customers in the District of Massachusetts (the "Massachusetts Court").    Those cases are now consolidated as *DataTern, Inc. v. MicroStrategy, Inc.*, 1:11-cv-12220-FDS (D. Mass.) ("*MicroStrategy*").

In light of this Court's Claim Construction Order, DataTern sought to stay the *MicroStrategy* case.  DataTern told this Court that the "cases that were filed in Boston have to do with a completely different technology that does not implicate Microsoft or SAP."   Feb. 15, 2012 Order [D.I. 43] at 18-19 (transcript of hearing on DataTern's motion to stay). Nevertheless, DataTern explained to the Massachusetts Court that it made no sense to proceed with that case until the Federal Circuit ruled on this Court's claim construction:

> DataTern and MicroStrategy are in agreement that *it makes no practical sense to proceed in this matter now that the New York court has issued the Markman Order*.  DataTern concedes that if the Markman Order is endorsed by the New York court in a final judgment, and upheld on appeal to the Federal Circuit, it will have an adverse impact on DataTern's claims against MicroStrategy and the Other Defendants.

DataTern's Memorandum of ISO Mtn. to Stay, *MicroStrategy* (Ex. T) at 11.[5]  In fact, DataTern

stated that, because "a final judgment [in the New York action] will likely have some preclusive

effect against DataTern in this action, requiring the parties to proceed at full bore through the

claim construction process in this case would be duplicative, wasteful and burdensome."  *Id.* at

15.  DataTern continued, "[m]oreover, since claim construction shapes discovery and argument

on both validity and infringement, a stay of such matters makes eminent sense."  *Id.*

Once again, DataTern drove its point home with the Massachusetts Court by insisting that

parallel claim construction proceedings would be a waste until the Federal Circuit rules on this

Court's construction:

> It advances no one's interests (tactical or otherwise) to continue
> with this phase of litigation, and it is ***wasteful*** for the Court to now
> expend the effort to wade through the parties' likely voluminous
> submissions, and to consider and reach decision on any ancillary
> issues that arise during this process, when ***all of these efforts will
> ultimately be revisited once the New York court rules***.

*Id.* at 15-16.  Referring to the analysis of whether DataTern is bound by the claim construction

decision of this Court, DataTern stated that the Massachusetts Court "may avoid this thornbush

by staying this action until the final arbiter of claim construction, the Federal Circuit, determines

whether the New York court's *Markman* Order was correct."  *Id.* at 18.

### G.    DataTern Opposes Renewed Stay In Texas But Admits It Cannot Prove Infringement Based Upon The Use Of SAP's BusinessObjects Products

Shortly before this Court issued its claim construction ruling, defendants in both *Staples*

and *Eli Lilly* filed renewed motions to stay their respective cases because the Texas stay expired

the earlier of August 12, 2012 or when this Court issued its claim construction ruling.  *See*

Defendants' Mtns. to Extend Stay, *Staples* (Ex. N); *Eli Lilly* (Ex. O).  The Customer Defendants

explained to the Texas Court that it would promote judicial efficiency to continue to stay the

---

[5] Emphasis supplied here—and throughout the brief, except as otherwise noted.

Customer Suits while awaiting the claim construction ruling and, ultimately, the final judgment from this Court and/or the Court of Appeals for the Federal Circuit on appeal from such judgment given that DataTern conceded it could not prove infringement.

In opposition, DataTern focused on what it alleged were unique aspects of its claims against Microsoft users:  "The fundamental difference between the cases in other jurisdictions and this one is that this case was brought against end-users which, DataTern believes, are using the Microsoft products accused in the New York litigation, such as ADO.NET and Entity Framework, to create independent applications that separately infringe the patents at issue." DataTern's Response to Mtn. to Extend Stay, *Staples* (Ex. P) at 1; *Eli Lilly* (Ex. Q) at 1.  Even more pointedly, DataTern argued to the Texas Court that it could not prove infringement by SAP products (as compared to the Microsoft situation) in Texas:

> Assuming this Court agrees with the New York Court's final claim construction and that construction is finally upheld, ***DataTern admits that it would not be able to prove infringement by these defendants based upon their use of SAP's product BusinessObjects.***  However, the same is not true with respect to Microsoft's products.  In that regard, Microsoft's ADO.Net and Entity Framework are building blocks that allow defendants to create a system that infringes.  DataTern previously argued that the defendants here are not "merely resellers" of ADO.NET.  Instead, they independently manufacture accused products that incorporate and utilize software developed by Microsoft.

Plaintiff's Response to Defendants' Mtn. to Extend Stay, *Staples* (Ex. P) at 6-7; *Eli Lilly* (Ex. Q) at 6-7.  Finally, DataTern suggested to the Texas Court that it was only planning to pursue Microsoft issues before the Court, although it sought to vacate the stay in all regards: "[DataTern] should be permitted to develop the evidence of infringement concerning the applications developed by the defendants that are separate from ADO.NET or ADO.NET entity Framework."  Plaintiff's Response to Defendants' Mtn to Extend Stay, *Staples* (Ex. P) at 7-8; *Eli Lilly* (Ex. Q) at 7-8.

11

As if to set its position in stone, DataTern fought off the stay in its sur-reply using its

Microsoft allegation as the basis:

> ***To end any confusion on Defendants' behalf, DataTern's
> allegations against these Defendants concern their use of
> Microsoft products*** such as ADO.NET, Linq to Sql and Entity
> Framework to create their own independent applications that
> infringe the patents at issue. These allegations are supported by
> the Complaint, DataTern's Initial Disclosures and, most recently,
> claim charts demonstrating infringement in light of the New York
> Court claim construction that were voluntarily provided on
> October 25, 2012 to each Defendant.

Plaintiff's Sur-Reply to Defendants' Mtn. to Stay, *Staples* (Ex. R) at 2. Notably, DataTern said

nothing about SAP's technology being the reason for continuing litigation in Texas. Quite the

contrary, as noted above, DataTern "admit[ted] that it would not be able to prove infringement

by these defendants based upon their use of SAP's product BusinessObjects." Plaintiff's

Response to Defendants' Mtn to Extend Stay, *Staples* (Ex. P) at 6-7; *Eli Lilly* (Ex. Q) at 6-7.

Based on DataTern's Microsoft-focused arguments, Magistrate Judge Craven totally

denied motions to stay in both *Staples* and *Eli Lilly*, Nov. 20, 2012 Order, *Staples* (Ex. S) and

Nov. 20, 2012 Order, *Eli Lilly* (Ex. S), and ordered that the parties in *Abbott Labs* file letters by

December 10, 2012 presenting their position on lifting stay in that case. Nov. 12, 2012 Order,

*Abbott Labs* (Ex. S).

H.    **DataTern Pursues Its Infringement Allegations Against SAP's Customers,
      Continuing Its Cynical Litigation Campaign**

In the wake of the Texas Court's denial of a renewed stay, Customer Defendants are

being intimidated into accepting below-cost-of-defense settlement offers. *See, e.g.*, Buccino

Decl. ¶ 13 (DataTern has offered to settle with an SAP Customer for a five-figure amount, i.e.,

less than $100,000).[6] This SAP customer has been accused of infringement by DataTern based

---

[6] Should the Court wish to review this communication between SAP's in-house counsel and in-
house counsel for its customer, SAP will submit it for *in camera* review.

solely on its use of BusinessObjects, *id.*—which allegation DataTern has admitted to the Texas Court it cannot prove given this Court's Claim Construction Order. Plaintiff's Response to Defendants' Mtn to Extend Stay, *Staples* (Ex. P) at 6-7; *Eli Lilly* (Ex. Q) at 6-7. The continued assertion of infringement against users of SAP's BusinessObjects products is contrary to the position DataTern took in opposing a renewed stay in the Customer Suit that "DataTern's allegations against these Defendants concern their use of Microsoft products." Plaintiff's Sur-Reply to Defendants' Mtn. to Stay, *Staples* (Ex. R) at 2.

Due to DataTern's continued pursuit of claims in the Customer Suits that it has admitted are not viable under this Court's Claim Construction Order, SAP reached out to DataTern's counsel in this action. *See* Ex. A [Email Chain]. In an e-mail to counsel, SAP asked DataTern to agree to "cease its attempts to enforce the patents-in-suit against SAP customers." *Id* at 6. In response, DataTern's counsel stated that while he was not representing DataTern in the Customer Suits, he thought "DataTern's position in Texas exempted infringement claims based on SAP's BusinessObjects." *Id.*at 5. Ultimately, DataTern stated that it would be willing to agree that it "will not pursue claims of infringement against SAP customer that use BusinessObjects as a so-called off-the-shelf product." *Id.* at 4. But it included conditions, stating that it would hold off only "until the first to occur of a ruling by the Federal Circuit Court of Appeals in the case between SAP and DataTern currently pending in New York and a ruling by another Federal District Court that construes the claims of the '502 patent in a manner that conflicts with the ruling in New York and provides a basis for DataTern's claims of infringement." *Id*. DataTern also told SAP that it needed "more specific information about the nature of the infringing activity by the current defendants in Texas" before it could agree to a stay of those claims. *Id.*

In response to a draft stipulation sent by SAP to resolve this issue without this Court's intervention, Ex. B [draft stipulation], DataTern reiterated these same two objections about the

duration and scope of SAP's request for it to cease attempts to enforce its patents until the appeal

in this case is resolved:

> [SAP has] not offered any information to indicate whether the
> defendants in Texas that use SAP's BusinessObjects products are
> using those products off-the-shelf, in which case we might agree
> not to pursue claims of infringement based under appropriate
> circumstances, rather than as a platform to create other infringing
> products, in which case we cannot agree not to pursue such claims.
>
> …
>
> [I]f another District Court issues a claims construction ruling upon
> which infringement by a Texas defendant in its use of SAP
> BusinessObjects can thereafter be proved, DataTern should be
> permitted to pursue those infringement claims.

*Id.* at 1.

## III.    ARGUMENT

### A.    **Choice of Law And Legal Standard**

The Supreme Court recognized over a century ago in *Kessler v. Eldred*, 206 U.S. 285

(1907), that a manufacturer who prevails in an infringement suit against a patentee is entitled to

enjoin infringement actions by that same patentee against its customers for the use of the

manufacturer's products found not to infringe the patent(s)-in-suit.

The Federal Circuit has respected this right of the exonerated manufacturer to protect its

customers and obtain the equitable benefit of its judgment against the patentee.  *See MGA, Inc. v.*

*Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) ("The *Kessler* doctrine bars a patent

infringement action against a customer of a seller who has previously prevailed against the

patentee because of invalidity or noninfringement of the patent; otherwise, the effect of the prior

judgment would be virtually destroyed.").  Moreover, as explained below, the law recognizes

that considerations of efficiency and fairness are promoted by staying or enjoining infringement

actions against a manufacturer's customers even prior to issuance of a final judgment in a co-

pending manufacturer suit.  *See, e.g.*, *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir.

1990) (recognizing that "the manufacturer is the true defendant in the customer suit").  This is what happened initially in the Customer Suits, and DataTern appears to agree that a renewed halt of its litigation campaign is appropriate, though it disputes the duration and scope, as explained below.

           1.      **Applicable Law**

"[I]njunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit." *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004).  Courts routinely consider staying or enjoining suits against customers in favor of suit between a patent holder and manufacturer out of concerns of judicial economy and fairness to litigants.  *See, e.g.*, *Katz*, 909 F.2d at 1463.  In *Katz*, the Federal Circuit explained the appropriate analysis as to whether an injunction of a customer suit is appropriate.  *Id.*

           2.      ***Katz* Governs SAP's Request For An Injunction Against DataTern**

The *Katz* court addressed an appeal from the District of Massachusetts's order enjoining the patent holder Katz from proceeding in two actions that he had filed in the Western District of New York.  *Katz, 909* F.2d at 1460.  Katz argued on appeal that "the enjoinder of concurrent litigation must meet the traditional four-part test for entitlement to a preliminary injunction," (citing *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981)).  *Id.* at 1462.  The Federal Circuit disagreed:

> [W]e agree with the district court that [the traditional four-part test], which was developed to test the grant of the requested remedy before the case has been tried on the merits, does not apply to the different question of whether to enjoin the prosecution of concurrent litigation. In the latter case it is not controlling whether the plaintiff is likely to succeed on the merits. Instead, a primary question is ***whether the issues and parties are such that the disposition of one case would be dispositive of the other***.

*Id.* at 1463 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). The Federal Circuit clarified in *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357-58 (Fed. Cir. 2011), that the manufacturer's case need only resolve the "major issues" concerning the claims against the customer—not every issue. *Id.* at 1358 (citing *Katz*, 909 F.2d at 1464 (affirming the district court's exercise of discretion to enjoin a co-pending customer suit where the "major issues" would be resolved by the manufacturer suit)).

Notably, the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), did nothing to disturb the applicability of *Katz* to an injunction of the type sought here. The *eBay* Court considered only the question of whether "a federal court considering whether to award permanent injunctive relief to a prevailing plaintiff applies the four-factor test historically employed by courts of equity," as opposed to a "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances." *Id.* at 390. This question is inapposite to the instant motion, where SAP seeks not a commercial injunction against continued infringement based on a final judgment against DataTern, but instead an injunction against DataTern preventing it from pursing assertions of infringement of the Patents-in-Suit based on the use of SAP's BusinessObjects products.

### B.  An Injunction Is Particularly Appropriate In Light Of This Court's Claim Construction Order And DataTern's Concessions Of Noninfringement

In affirming an injunction against a customer suit pending resolution of an infringement suit against the manufacturer, the Federal Circuit has explained that "at the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit," and that "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at

16

1464; *see also Kessler v. Eldred*, 206 U.S. 285 (1907) (holding that a manufacturer who obtained a judgment of noninfringement could enjoin the patent-holder's infringement action against the manufacturer's customer). Injunction of DataTern's continued assertions of infringement of the Patents-in-Suit against users of SAP's BusinessObjects will conserve judicial resources, promote the orderly and fair adjudication of this action between the real parties-in-interest, and prevent continued harm to SAP's business and its customers from infringement allegations that DataTern admits are not viable in light of this Court's Claim Construction Order.

1.    **Enjoining DataTern Will Prevent "Duplicative, Wasteful, and Burdensome" Litigation**

In light of issuance of this Court's Claim Construction Order, DataTern argued in the *MicroStrategy* litigation—involving the same Patents-in-Suit but different accused products than in this action—that "requiring the parties to proceed at full bore through the claim construction process in this case would be duplicative, wasteful and burdensome," DataTern's Memorandum ISO Mtn. to Stay, *MicroStrategy* (Ex. T) at 15. DataTern's own rationale supporting a stay of the *MicroStrategy* action applies with substantially greater force to SAP's request for an injunction here. An appropriate injunction against DataTern would prohibit it from asserting infringement claims against use of the ***same SAP products*** that DataTern admits do not infringe under this Court's claim constructions.

This case presents a far stronger set of facts supporting an anti-suit injunction than *Katz*, where the manufacturer's claims of noninfringement and invalidity had not yet been adjudicated. *Katz*, 909 F.2d at 1464. Moreover, unlike *Katz,* in which the customer defendants did not agree to be bound by the results of the manufacturer's action, *id.* (affirming issuance of an injunction of the customer suit despite the lack of an agreement to be bound), the *Staples* defendants have agreed to be bound by the results of the claim construction in this case. *See* Defendant's Reply to Response to Mtn. for Reconsideration, *Staples* (Ex. U) at 2; *Eli Lilly* (Ex. I) at 6. There is no

17

question that the Claim Construction Order and the anticipated judgment of noninfringement in this action are dispositive of the major issues of liability in the Customer Suits. Accordingly, an injunction would prevent the wasteful expenditure of additional court resources, reduce the likelihood of inconsistent claim constructions during the pendency of any appeal in this case, and lift the cloud over SAP's business created by DataTern's infringement allegations based on the use of SAP's BusinessObjects software.

Similarly, in *ProBatter Sports, LLC v. Joyner Technologies, Inc.*, 463 F. Supp. 2d 949, 956 (N.D. Iowa 2006), a district court granted a manufacturer's request for an injunction against a patentee's continued prosecution of co-pending customer suits during the manufacturer's action. Following the reasoning in *Katz*, the *ProBatter* court concluded that because the resolution of the major issues in the manufacturer's action would "advance the prosecution or resolution of those issues" in the customer suit, an injunction was appropriate. *Id.*; s*ee also Unisys Corp. v. Amperif Corp.*, 1994 WL 116105 at *2 (E. D. Penn., March 15, 1994) (granting an injunction of a co-pending suit where the initial infringement action "would be dispositive of all issues involving infringement" in the enjoined action and where the enjoined actions appeared to be the products of forum-shopping). In light of these cases, and particularly where DataTern has conceded that if this Court's "construction is finally upheld, DataTern admits that it would not be able to prove infringement by [the Texas customer] defendants based upon their use of SAP's product BusinessObjects," Plaintiff's Response to Defendants' Mtn to Extend Stay, *Staples* (Ex. P) at 6-7; *Eli Lilly* (Ex. Q) at 6-7, a limited injunction—pending the Federal Circuit's resolution of the likely appeal in this case—would promote conservation of judicial resources and would not impair the ultimate pursuit of any viable claim that DataTern might have.

2.    **The Customer Suits Are An Inappropriate And Inequitable Vehicle To Relitigate Claim Construction And Liability Issues**

As the developer and manufacturer of BusinessObjects, SAP is the party best able to defend against DataTern's allegations. *See Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.*, 2004 WL 1554382, at *3 (D. Del. May 13, 2004) ("Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of [the patentee's] asserted patents."). DataTern's approach of initiating multiple customer suits, rather than litigating against SAP, has been used by DataTern to extract settlements from customers (particularly small customers) who are ill-suited to defend a patent litigation based on their normal use of someone else's product, while excluding from the litigation the company with the most interest in the accused product and knowledge of the technology. *See*, *e.g.*, *Kahn v. General Motors, Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989); *Ricoh Co. Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003); *see also, e.g., Delphi Corp. v. Automotive Tech. Int'l, Inc.*, No. 08-11048, 2008 WL 2941116, *5 (E.D. Mich. Jul. 25, 2008) ("[S]ignificant policy considerations favor global resolution of ATI's dispute with the actual source of the allegedly infringing products."); *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F. Supp. 2d 561, 566 (E.D. Wisc. 2007) ("A favorable declaratory judgment would provide [the manufacturer] WS relief, for it would clear the air as to whether WS's game pieces infringe the '062 patent. Without such clarification, [the patentee] Global remains free to 'attempt[] extra-judicial patent enforcement with scare-the customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.'").

Accordingly, permitting DataTern's continued litigation against SAP's customers would frustrate the fair adjudication of infringement claims regarding the use of BusinessObjects, as to which DataTern has conceded that SAP is entitled to judgment of noninfringement based on this

19

Court's Claim Construction Order. An injunction is thus an appropriate remedy to protect the integrity of the judicial process—including by avoiding inconsistent claim constructions—and to accord respect to this Court's anticipated judgment of noninfringement in SAP's favor. *See MGA*, 827 F.2d at 734 ("The *Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be virtually destroyed."); *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 596 (N.D. Tex. 2003) ("Having two different courts interpret the same patent claims would risk inconsistent claim construction rulings which, in turn, would promote uncertainty and impede the administration of justice.")

3. **Other Equitable Considerations Support Issuance Of An Injunction**

As illustrated above, a host of equitable factors support SAP's request for an injunction against DataTern's assertions of infringement based on the use of SAP's BusinessObjects products. First and foremost, no retrospective legal remedy is sufficient to protect SAP's business goodwill that is destroyed by DataTern's threats of infringement liability and its attempts to garner below-cost-of-defense settlements. As the Supreme Court explained in *Kessler*, where a manufacturer had won a judgment of noninfringement for its products, injunction of customers suits was necessary to protect the manufacturer's judgment:

> It is certain that such [customer] suits if unsuccessful would at the same time tend to diminish [the manufacturer] Kessler's sales and to impose upon him the expense of defending many suits in order to maintain the right which by a judgment has already been declared to exist. If the suits are successful the result will be practically to destroy Kessler's judgment right. Moreover, though the impairment or destruction of Kessler's right would certainly follow from the course of conduct which Eldred has begun, it would be difficult to prove in an action at law the extent of the damage inflicted. An action at law would be entirely inadequate to protect fully Kessler's unquestioned right, and under these

20

> circumstances, though there may be no exact precedent, we think
> that the jurisdiction in equity exists.

208 U.S. at 289-290.

When SAP filed this suit to protect its business and its customers from DataTern's meritless accusations, it had already received numerous indemnification requests from the Customer Defendants. *See* Buccino Decl. [D.I. 25]. And even as recently as 4 days ago, an SAP Customer Defendant requested that SAP pay for its settlement offer (less than $100,000) from DataTern rather than continue to litigate the Customer Suit now that the stay has been lifted. *See* Buccino Decl. ¶ 13.[7] SAP's ongoing injury from DataTern's continued pursuit of its infringement claims against SAP's customers is clear and unmistakable.

By contrast, DataTern would suffer no hardship if it were it forced to stop its pursuit of infringement allegations against users of SAP's BusinessObjects software until the Federal Circuit decides the inevitable appeal of this Court's anticipated judgment. Indeed, DataTern is the party that sought an abrupt end to this litigation so that it could appeal the Claim Construction Order, and it was DataTern that sought a stay of the *MicroStrategy* action—which does not even concern SAP's BusinessObjects products—on the basis that continued litigation in Massachusetts would be "duplicative, wasteful and burdensome." Put simply, DataTern cannot have it both ways. If the *MicroStrategy* litigation involving different products is duplicative, the Texas cases are even more so, since they involve the same products at issue in New York. As DataTern represented to the Texas Court, if the claims it seeks to pursue in that court are based on use of Microsoft's products, an injunction against DataTern's pursuit of infringement allegations based on the use of SAP's BusinessObjects works no cognizable harm at all.

---

[7] DataTern's parade of below-cost-of defense settlements against SAP's customers are further evidence that this is an exceptional case.

Finally, the public interest in the efficient use of judicial resources and in providing clear notice of the scope of the Patents-in-Suit supports an injunction. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ("[T]he limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others and the assurance that the subject of the patent will be dedicated ultimately to the public."); *DataTreasury*, 243 F. Supp. 2d at 596 ("Having two different courts interpret the same patent claims would risk inconsistent claim construction rulings which, in turn, would promote uncertainty and impede the administration of justice."). Indeed, the concern for the efficient use of judicial resources is the primary factor articulated by the Federal Circuit in *Katz* that should guide the injunction analysis. *See Katz*, 909 F.2d at 1463 ("primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other").

### 4. DataTern's Objections To The Scope And Duration of SAP's Proposed Injunction Are Meritless

DataTern's responses to SAP's attempt to seek a stipulated resolution of this issue creates two disputes: (1) whether DataTern should be permitted to seek a competing claim construction of the Patents-in-Suit useable against SAP's Customers while it appeals this case, and (2) whether DataTern's claims in the Customer Suits extend beyond its concessions of noninfringement based on the Court's Claim Construction Order.

#### a. The Litigation Against SAP's Customers Should Not Proceed Until The Federal Circuit Rules In This Case

DataTern's position that it should be permitted to seek a competing claim construction would eviscerate the judicial economy gains that a stay or injunction of co-pending litigation is intended to achieve. Moreover, DataTern has attempted in the Customer Suits to marginalize its infringement allegations regarding the use of SAP's BusinessObjects without actually dismissing or consenting to a stay of those claims. *Compare* Plaintiff's Sur-Reply to Defendant's Mtn. to

Extend Stay, *Staples* (Ex. R) ("To end any confusion on Defendants' behalf, DataTern's allegations against these Defendants concern their use of Microsoft products ….") *with* Ex. A [Email Chain] at 1 ("[SAP has] not offered any information to indicate whether the defendants in Texas that use SAP's BusinessObjects products are using those products off-the-shelf … rather than as a platform to create other infringing products, in which case we cannot agree not to pursue such claims.").

Absent an order from this Court, DataTern would be allowed to move forward with claim construction proceedings on the basis of its allegations against Microsoft's products, and thereby obtain a competing claim construction that it can improperly leverage against SAP's customers who remain in the Texas actions.  All of this allows DataTern to threaten SAP customers with additional litigation cost and continue to extract below-cost-of-defense settlements.

> b.    **An Injunction Would Prohibit Any Assertion Of Infringement Based On The Use Of SAP's BusinessObjects Products**

As to the appropriate scope of an injunction with respect to DataTern's infringement allegations against SAP's customers, DataTern has repeatedly admitted that, under this Court's Claim Construction Order, it cannot prove infringement "based upon the[] use of SAP's product BusinessObjects."  Plaintiff's Response to Defendants' Mtn to Extend Stay, *Staples* (Ex. P) at 6-7; *Eli Lilly* (Ex. Q) at 6-7.  DataTern's infringement contentions in the Customer Suit rely on citation to the normal use of BusinessObjects for all the limitations of the '502 Patent.  *See* Defendants' Reply to Mtn. to Stay, *Staples* (Ex. L) at 4 (citing DataTern's Infringement Contentions, D.I. 150 Ex. C).

The dispute regarding the technical scope of an injunction is a façade.  DataTern's concession of noninfringement and its infringement contentions in the Customer Suit concerning BusinessObjects are of the same scope—and none suggest that SAP's customers are meaningfully altering BusinessObjects.  But DataTern's counsel recently suggested that it was

23

somehow SAP's duty to prove that the Customer Defendants do **not** change BusinessObjects products such that they would infringe under this Court's claim construction. *See* Ex. A [Email Chain] at 1 ("you have not offered any information to indicate whether the defendants in Texas that use SAP's BusinessObjects products are using those products off-the-shelf, in which case we might agree not to pursue claims of infringement based under appropriate circumstances").

DataTern's position defies the record. SAP is not aware of any evidence that its customers are altering or recoding the BusinessObjects product so it falls within this Court's claim construction. Indeed, there are four different, uncontested reasons why BusinessObjects does not infringe, so DataTern's argument is speculative at best. DataTern thus attempts to reverse the burden it bears to identify alleged infringement. Because DataTern lacks a factual basis to allege infringement more broadly than the scope of its current contentions—which rely on the normal use of BusinessObjects to satisfy the elements of the asserted claims—this argument is a red herring. Thus, the appropriate scope for an injunction is against assertions of infringement of the Patents-in-Suit based on the use of SAP's BusinessObjects products.

## IV.   CONCLUSION

For the reasons stated above, SAP respectfully requests that the Court enjoin DataTern, until the Federal Circuit's final disposition of an appeal of the anticipated judgment in this case, from asserting infringement of the Patents-in-Suit based on the use of SAP's BusinessObjects products, including, without limitation, DataTern's pursuit of its infringement claims based on use of SAP's BusinessObjects products in the Customer Suits; and DataTern's commencing or threatening, expressly or by implication, any patent infringement action on the Patents-in-Suit against SAP's BusinessObjects customers and/or users based on their use of SAP's BusinessObjects products.

Dated:  December 3, 2012

Aleksander J. Goranin (*pro hac vice*)
Erich M. Falke (*pro hac vice*)
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Tel. (215) 568-3100

Respectfully submitted,

*/s/ Edward R. Reines*
Edward R. Reines (*pro hac vice*)
Andrew L. Perito (*pro hac vice*)
Evan N. Budaj (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Telephone: (650) 802 3000
Facsimile: (650) 802 3100

Douglas McClellan (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002-2755
Telephone: (713) 546 5000
Facsimile: (713) 224 9511

Timothy E. DeMasi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

***Attorneys for Plaintiffs-Counterclaim***
***Defendants***
*SAP AG and SAP America, Inc.*