IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>DATATERN, INC.,<br><br>    Defendant. | Civil Action No. 1:11-cv-02648-KBF<br><br>**SAP AG AND SAP AMERICA, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,101,502**<br><br>ECF Case |
| SAP AG AND SAP AMERICA, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>DATATERN, INC.,<br><br>    Defendant. | |

**TABLE OF CONTENTS**

Page

I. A Complete Record For Appellate Review Should Include All Independent Grounds For The Judgment ...................................................................................................1

II. DataTern Agrees To Four Independent Non-Infringement Grounds, But The Record Establishes Six Independent Grounds ...........................................................................2

  A. DataTern Agrees To Four Independent Non-Infringement Grounds ..............2

  B. There Are Two Additional Non-Infringement Grounds That DataTern Attempts To Challenge—Unsuccessfully .............................................3

    1. SAP's Products Do Not Permit "Selecting An Object Model" That Includes "Classes" ........................................................................3

    2. SAP's Products Do Not Have "[At Least One Interface Object] Associated With An Object Corresponding To A Class Associated With The Object Oriented Application" ..............................4

III. SAP Is Entitled To Summary Judgment Of No Infringement Under The Doctrine Of Equivalents ..................................................................................................6

IV. DataTern Does Not Contest SAP's Request For Summary Judgment Of No Indirect Infringement .......................................................................................................8

V. SAP Is Entitled To Summary Judgment On The Full Scope Of Its Declaratory Judgment Claims ..........................................................................................9

VI. CONCLUSION ..............................................................................................................10

## TABLE OF AUTHORITIES

Page

**Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
  651 F.3d 1318 (Fed. Cir. 2011) .................................................................................... 6

*Biogen, Inc. v. Berlex Labs, Inc.*,
  113 F.Supp.2d 77 (D. Mass. 2000) ............................................................................... 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................................................... 7

*DataTern, Inc. v. MicroStrategy, Inc.*,
  1:11-cv-12220-FDS (D. Mass.) .................................................................................... 1

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  600 F.3d 190 (2d. Cir. 2010) ........................................................................................ 9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011) ................................................................................................. 8

*Nystrom v. Trex Co., Inc.*,
  580 F.3d 1281 (Fed. Cir. 2009) .................................................................................... 7

*Scanner Techs. Corp. v. ICOS Vision Sys Corp.*,
  528 F.3d 1365 (Fed. Cir. 2008) .................................................................................. 10

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
  665 F.3d 1269 (Fed. Cir. 2012) ............................................................................... 9, 10

**Statutes**

35 U.S.C. § 271 ................................................................................................................. 9

SAP AG and SAP America, Inc. ("SAP") respectfully submit this Reply Memorandum of Law in support of their Motion for Summary Judgment on Their Declaratory Judgment Claim for Non-Infringement of U.S. Patent No. 6,101,502 (the "'502 Patent").

**I.  A Complete Record For Appellate Review Should Include All Independent Grounds For The Judgment**

To permit the most efficient resolution of this action, which is the nucleus of DataTern's sprawling litigation campaign, this Court should enter summary judgment on *all* the grounds presented by the record. This will permit the Federal Circuit to evaluate all such grounds so it can rely on its preferred grounds to affirm this Court's judgment.

This approach makes particular sense because DataTern has made clear that it plans to challenge essentially all of this Court's many claim construction rulings on the '502 Patent at the Federal Circuit. *See* Exhibit T to Declaration of Edward R. Reines in Support of SAP's motion to enjoin [D.I. 195] [DataTern's Memo. in Support of Mtn. for Stay, *DataTern, Inc. v. MicroStrategy, Inc.*, 1:11-cv-12220-FDS (D. Mass.)] at 12 ("DataTern believes that it will prevail at the Federal Circuit (as do *forty percent* of those parties aggrieved by Markman decisions by district courts who seek appellate review).") (emphasis in original).

DataTern has also made clear that it plans to collaterally attack this Court's constructions via its cases in the Eastern District of Texas. *See* Ex. A to Declaration of Edward R. Reines ("Reines Decl.") [DataTern's December 4, 2012 Letter] at 2 ("until the Federal Circuit Court of Appeals rules on any final judgment emanating from this Court, the rulings concerning claims construction lack collateral or preclusive effect.") and ("claim construction ruling has no preclusive effect").

In view of DataTern's intent to challenge this Court's claim construction rulings both directly and collaterally, the best path to the efficient resolution of the parties' dispute is to include all non-infringement grounds in the final judgment.

1

## II.   DataTern Agrees To Four Independent Non-Infringement Grounds, But The Record Establishes Six Independent Grounds

As established below, there are six independent non-infringement grounds. Below SAP documents the four undisputed grounds and then confirms that judgment is proper on two additional grounds, which are disputed by DataTern.

### A.   DataTern Agrees To Four Independent Non-Infringement Grounds

DataTern concedes that SAP's BusinessObjects products do not infringe the '502 Patent under the Court's Order and Opinion (Markman) [D.I. 151] ("Claim Construction Order") for four independent reasons.

All of the '502 Patent claims require an "object model." This Court construed "object model" to mean "a template with a predetermined standardized structure both relating to an object oriented software application and including <u>object classes</u> and <u>inheritance relationships</u> among classes" (emphasis added). [D.I. 151] at 15. The parties agreed that "class" means "a definition that specifies attributes and behaviors of objects, and from which objects are instantiated." Joint Claim Construction Statement [D.I. 92] ("JCCS") at 2.

1. BusinessObjects does not permit selecting an "object model" because the accused "object model" does not contain inheritance relationships among "classes." *See* Deposition of Neeraj Gupta, September 28, 2012 [Exhibit A to Declaration of Andrew L. Perito] ("Gupta Dep.") at 14:15-19 ("There was insufficient evidence of the object model we were looking at [] which had the inheritance relationships between such classes."); *see also id.* at 57:16-18 ("[W]e don't have inheritance relationships between those types of classes."); *see also* DataTern's Partial Opposition to SAP's Motion for Summary Judgment [D.I. 180] ("Opposition") at 7-8.

2. BusinessObjects also does not permit selecting an "object model" because the alleged "classes" in the accused object model do not include behaviors. *See* Gupta Dep. at 14:15-19 ("There was insufficient evidence of the object model we were looking at having classes that met the Parties' agreed construction for 'a class.'"); *see also* Opposition [D.I. 180] at 8.

Each of the claims of the '502 Patent also require that the accused software "create at least one interface object." This Court construed this phrase to mean, in relevant part, "to generate code for at least one class and instantiate an object from that class." [D.I. 151] at 18.

2

3. BusinessObjects does not "create at least one interface object" because it "d[oes] not generate code for at least one class and then instantiate a query object from that class." Gupta Dep. at 48:25-49:3; *see also* Opposition [D.I. 180] at 10. In fact, BusinessObjects does not generate code for any class at all. Gupta Dep. at 49:6-15.

Lastly, all of the '502 patent claims require a "runtime engine," which this Court construed, in relevant part, to mean "[s]oftware that (i) the object oriented software application depends on to run." [D.I. 151] at 22.

4. BusinessObjects does not have a "runtime engine," at least because its alleged "runtime engine" is not one that the object oriented software application depends on to run. Gupta Dep. at 157:14-17, 158:4-10; *see also* Opposition [D.I. 180] at 12-13.

### B. There Are Two Additional Non-Infringement Grounds That DataTern Attempts To Challenge—Unsuccessfully

Summary judgment of non-infringement is appropriate for two additional reasons. First, SAP's products do not permit users to select an object model that includes "classes." Second, SAP's products do not have "[at least one interface object] associated with an object corresponding to a class associated with the object oriented application."

#### 1. SAP's Products Do Not Permit "Selecting An Object Model" That Includes "Classes"

As noted in section II.A, *supra*, DataTern does not dispute that SAP's products fail to meet the "object model" limitation, under the Court's claim construction, for two independent reasons. SAP's Motion for Summary Judgment [D.I. 167] at 14-15; Opposition [D.I. 180] at 7-8. SAP's motion for summary judgment presented a third basis for non-infringement of this limitation, even under *DataTern*'s own construction (which references the "object model" having "object classes"). This basis for non-infringement arises from the parties' agreed-upon construction of "class."

DataTern's infringement theory points to BusinessObjects Classes, which are not object-oriented programming classes at all, despite coincidentally sharing the name. Because BusinessObjects Classes meet none of the requirements of the parties' agreed-upon construction

3

of "class," SAP explained that it is entitled to summary judgment even under DataTern's proposed construction. In opposition, DataTern argues that BusinessObjects classes need not have behaviors, and thus satisfy a construction of class with "just attributes." Opposition [D.I. 180] at 9.

But object-oriented programming classes do not simply have attributes and behaviors—as the parties agreed, they are definitions that specify "attributes and behavior of objects, and from which objects can be instantiated." JCCS [D.I. 92] at 2; *see also* Declaration of Anthony Hosking in Support of Plaintiffs' Opening Claim Construction Brief [D.I. 91] ¶ 24; Ex. B to DataTern's Opening Claim Construction Brief [Declaration of Neeraj Gupta; D.I. 88-2] ¶ 12. BusinessObjects Classes do *not* specify attributes "**of objects**," nor are they definitions "**from which objects can be instantiated**." Despite submitting a 149-page expert report, DataTern has no evidence—nor does it argue—that BusinessObjects Classes meet these two requirements.

Summary judgment is warranted on this ground, even under DataTern's construction.

    2.    **SAP's Products Do Not Have "[At Least One Interface Object] Associated With An Object Corresponding To A Class Associated With The Object Oriented Application"**

All of the '502 Patent claims require at least one interface object "associated with an object corresponding to a class associated with the object oriented application." The Court construed this phrase to mean "the interface object (as defined above) corresponds to an object instantiated from a *single* class associated with the object oriented software." Claim Construction Order [D.I. 151] at 19-20 (emphasis added).

DataTern cannot satisfy this claim requirement. The issue DataTern raises turns on the meaning of the phrase "*single* class associated with the object oriented software." The patent requires that each interface object be associated with **only one** object model class, as the Court acknowledged in its Claim Construction Order, which cites portions of the patent that make this

4

clear. [D.I. 151] at 20 (citing *inter alia* '502 Patent col. 6:8-64; *see also* '502 Patent col. 5:65-67 ("The generated DLLs 56 contain one COM interface and implementation class"—the interface object—"**for each class** defined by a mapping model.") (emphasis supplied); Ex. E to Declaration of Jeb Bacon Oblak in Support of Plaintiffs' Opening Claim Construction Brief [D.I. 90] [Dec. 1997 provisional application] at p. 12 ("The Employee COM object"—the interface object—"would have methods **specific to a CEmployee class**....") (emphasis supplied).

DataTern misapplies the Court's construction. DataTern identifies only one alleged "interface object" in BusinessObjects: the Query object. But as DataTern's expert himself admitted, the Query object is an "all-purpose" object associated by design with *many* different classes and objects. *See* Gupta Dep. at 72:8-12; 72:14-73:6. DataTern cannot point to a **single** class (or an object instantiated therefrom) with which the Query object is associated. SAP is entitled to summary judgment because there is no evidence its products meet this limitation.

DataTern's forced reading of the Court's construction should also be rejected because it would render the word "single" superfluous—as both parties agree, any object-oriented programming object is necessarily instantiated from one, and only one, class. SAP, however, gives meaning to the word "single": the claimed interface object is associated with "a *single* class associated with the object oriented software," not any number of classes of the object oriented software. Claim Construction Order [D.I. 151] at 19 (emphasis added).

The fact that SAP's products do not meet this limitation follows directly from the distinct differences between BusinessObjects and the technology of the '502 Patent. The '502 Patent was intended to assist programmers developing object-oriented applications in persisting objects from their applications to relational databases. In order to do so, programmers had to be able to seamlessly and unobtrusively access database elements as if those elements were object-oriented programming objects. Because the '502 Patent's interface objects had methods **specific to a**

5

**particular class** in the application's object model, each interface object was able to perform the database access tasks necessary for persisting **that particular class** to the database.

BusinessObjects, on the other hand, is not designed to allow users to persist objects to relational databases, but rather solves an entirely different problem: enabling business users to pull information from a database without having to know database-centric programming languages like SQL. Indeed, BusinessObjects does not allow its users to write any information to a relational database. This is precisely why Mr. Gupta could find only **one** "interface object" in BusinessObjects: the Query object does not perform certain database access tasks specific to a single other class, but rather is involved in the database access flow for **any query**. Because SAP's products do not meet this limitation, which fact is grounded in the fundamental difference between BusinessObjects and the '502 Patent, SAP is entitled to summary judgment on this ground.

### III.    SAP Is Entitled To Summary Judgment Of No Infringement Under The Doctrine Of Equivalents

DataTern's attempt to preserve a doctrine of equivalents theory fails. Summary judgment on a doctrine of equivalents theory is appropriate when the patentee fails to submit "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process." *Am. Calcar, Inc. v. Am. Honda Motor Co.,* 651 F.3d 1318, 1338-39 (Fed. Cir. 2011). Such a showing must be established on an "element-by-element" basis. *Id.*

DataTern does not even purport to meet this demanding burden of proof. DataTern's expert, Mr. Gupta, acknowledged that he "didn't offer any opinions that applied the doctrine of equivalents." Gupta Dep. at 76:7-10 (in response to the question, "you didn't apply the doctrine of equivalents in this case at all?"). Indeed, DataTern explicitly concedes that there is no infringement under the doctrine of equivalents under this Court's claim constructions.

Opposition [D.I. 180] at 13 (quoting Gupta Dep. at 76:12-14 ("The opinions I offered up regarding non-infringement I didn't feel would change under a DOE analysis.")).

DataTern nevertheless argues that "the issue regarding the doctrine of equivalents should not be reached because it has not been separately joined." Opposition [D.I. 180] at 13. This makes no sense. If DataTern had evidence to satisfy its burden under the doctrine of equivalents it was obligated to produce such evidence. This is mandated by a simple application of *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (requiring the non-moving party to submit competent evidence sufficient to satisfy its burden).

For this argument, DataTern relies on *Biogen, Inc. v. Berlex Labs, Inc.*, 113 F.Supp.2d 77, 125 (D. Mass. 2000) *aff'd in part, vacated in part,* 318 F.3d 1132 (Fed. Cir. 2003). But *Biogen* is inapposite. The *Biogen* court found the issue of summary judgment of invalidity moot because it was premised on a *rejected* claim construction. *Biogen*, 113 F.Supp.2d at 125. Here, SAP is seeking summary judgment based on the claim construction this Court issued, not one it rejected.

A more relevant case is *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281 (Fed. Cir. 2009) ("*Nystrom II*"). As the Federal Circuit explains in *Nystom II* (a case in which Nystrom takes a course of action surprisingly similar to that which DataTern would like to take here), Nystrom initially "stipulated to 'non-infringement' without reference to equivalents," then "[o]n remand, Nystrom attempted to pursue his infringement claim under the doctrine of equivalents." *Id.* at 1284. The Federal Circuit held that Nystrom's actions constituted a waiver:

> Noting that Nystrom had previously stipulated to 'non-infringement' without reference to equivalents in the first action, the district court held that Nystrom had waived the argument. Nystrom again appealed and, in a *per curiam* opinion directly following oral argument, this court affirmed the district court's holding that Nystrom had waived his infringement claim based on the doctrine of equivalents. *Id.*

7

DataTern also waived any doctrine of equivalents claim under either party's construction by failing to preserve it in its infringement contentions. This Court's Procedures for Patent Cases specify that the "'Disclosure of Asserted Claims and Infringement Contentions' shall contain … [w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Hon. Katherine B. Forrest's Individual Practices in Civil Cases at 10. DataTern made no such identification. Instead, it purported to "reserve[] the right, if merited by the Court's order on claim construction, to assert that any elements which are not literally present in the Accused Instrumentalities are present under the doctrine of equivalents." Ex. B to Reines Decl. [Excerpt from DataTern's Infringement Contentions] at p. 5. DataTern had every opportunity to offer evidence regarding the doctrine of equivalents. It did not.

Based on DataTern's failure to submit evidence that would support a doctrine of equivalents argument, SAP is entitled to summary judgment on that issue.

## IV. DataTern Does Not Contest SAP's Request For Summary Judgment Of No Indirect Infringement

DataTern does not dispute that SAP is entitled to summary judgment of no indirect infringement. As SAP explained in its summary judgment motion, "SAP has not been willfully blind to the infringement of the asserted patents and this is required to prove indirect infringement in the absence of actual knowledge." SAP's Motion for Summary Judgment [D.I. 167] at 21. This "bad intent" requires culpability worse than recklessness. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011). As SAP explained, because it has such a legitimate position on the merits (even if this Court's claim construction were somehow reversed), DataTern cannot prove the scienter required to establish indirect infringement under any construction. Thus, summary judgment of indirect infringement should be entered regardless of the underlying direct infringement issue.

8

## V. SAP Is Entitled To Summary Judgment On The Full Scope Of Its Declaratory Judgment Claims

SAP's claims and DataTern's counterclaims define the scope of this action and extend beyond BusinessObjects. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d. Cir. 2010).

SAP's declaratory judgment claim of noninfringement is comprehensive. *See* Complaint [D.I. 1] ¶ 1 ("SAP's BusinessObjects [] does not infringe the '402 or '502 patents, nor has SAP infringed [] the '402 or '502 patents."), ¶ 47 ("Neither SAP nor its products have infringed [] the '502 patent"), Request for Relief ("2. For judgment that neither SAP nor its products infringes or has infringed [] the '502 patent").

DataTern's responsive counterclaims of infringement are correspondingly broad. *See* DataTern's Second Amended Counterclaims [D.I. 174-2] ¶ 9 ("Such Accused Products include, *inter alia*, BusinessObjects…."), ¶ 12 ("SAP has been and still is directly infringing one or more claims of the '502 patent by manufacturing, using, offering to sell, selling, and/or supplying within the United States, and/or importing into the United States, certain software programs and programming tools, including, *inter alia*, BusinessObjects…."), ¶ 13-14 (alleging similarly broad counterclaims of indirect infringement), Request for Relief ("A. Judgments under 35 U.S.C. § 271 finding that SAP infringes the '502 patent").

DataTern again argues[1] that *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1281 (Fed. Cir. 2012) permits a patentee to unilaterally narrow a case through its contentions such that whatever accused products are not explicitly included in its infringement contentions are effectively dismissed *without* prejudice. But *Streck* specifically acknowledges

---

[1] DataTern made the same argument in its Opposition to SAP's Motion for Partial Summary Judgment, [D.I. 87], and in its Motion for Clarification of the Court's Order on SAP's Partial Summary Judgment Motion, [D.I. 121].

9

that jurisdiction is a fact-specific analysis based on all the circumstances. *Id.* at 1283-84. In *Streck*, *both* parties treated the dispute as limited to the asserted claims identified by the patentee, and the court made clear that this bilateral narrowing of the case through both side's contentions was critical to its analysis. *Id.* at 1284. In *Scanner Techs. Corp. v. ICOS Vision Sys Corp.*, 528 F.3d 1365 (Fed. Cir. 2008), which *Streck* distinguishes, the parties never affirmatively narrowed the case and the original pleadings broadly defined the dispute. *Streck*, 665 F.3d at 1283. The Federal Circuit found jurisdiction over all claims based on the broad pleadings. *Id.*

Here, both parties expressly included products *other than* BusinessObjects in their pleadings and, as in *Scanner Techs.*, the parties did not *mutually* limit those broad pleadings in any way. To the contrary, DataTern repeatedly alleged that SAP sells Microsoft products that allegedly infringe the '502 Patent, as well as U.S. Patent No. 5,937,402. *See, e.g.*, DataTern's Motion for Clarification [D.I. 121] at 5 (referring to "claims that SAP directly infringes the '402 patent through its resale of [] Microsoft products."), 9 (referring to the "issue of whether SAP, as a customer of Microsoft, engages in infringement under the '402 patent for its sale of Microsoft products."). Because the parties have maintained the scope of their pleadings throughout this action, and because a justiciable case or controversy has existed throughout this litigation that extends beyond SAP's BusinessObjects products, SAP is entitled to summary judgment on the full scope of its pleadings. This Court should hold that SAP has not infringed by its involvement with BusinessObjects or any other software.

## VI.   CONCLUSION

For the foregoing reasons and those in SAP's Motion, the Court should enter judgment that neither SAP nor its products directly infringe any claim of the '502 Patent, either literally or under the doctrine of equivalents, nor has SAP contributed to or induced infringement by third parties—including its customers.

| | |
|---|---|
| Dated:  December 12, 2012 | Respectfully submitted,<br><br>/s/ Edward R. Reines<br>Edward R. Reines (*pro hac vice*) |
| Aleksander J. Goranin (*pro hac vice*)<br>Erich M. Falke (*pro hac vice*)<br>WOODCOCK WASHBURN LLP<br>Cira Centre, 12th Floor<br>2929 Arch Street<br>Philadelphia, PA 19104<br>Tel. (215) 568-3100 | Andrew L. Perito (*pro hac vice)*<br>Evan N. Budaj (*pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065-1134<br>Telephone: (650) 802 3000<br>Facsimile: (650) 802 3100<br><br>Douglas McClellan (*pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>700 Louisiana, Suite 1600<br>Houston, TX 77002-2755<br>Telephone: (713) 546 5000<br>Facsimile: (713) 224 9511<br><br>Timothy E. DeMasi<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br><br>***Attorneys for Plaintiffs-Counterclaim Defendants***<br>*SAP AG and SAP America, Inc.* |