# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

———————————————————

SAP AG, and SAP AMERICA, INC.,

    Plaintiffs,

    v.

DATATERN, INC.,

    Defendant.

———————————————————

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 11-cv-02648-KBF

## MEMORANDUM OF LAW IN SUPPORT OF
## DATATERN, INC.'S OPPOSITION TO SAP AG
## AND SAP AMERICA, INC.'S MOTION TO ENJOIN DATATERN'S
## ASSERTION OF INFRINGEMENT OF U.S. PATENT NOS.
## 5,937,402 AND 6,101,502 BASED ON THE USE OF
## SAP'S BUSINESSOBJECTS PRODUCTS

## <u>TABLE OF CONTENTS</u>

FACTUAL HISTORY ……………………………………………………..1

    Brief Patent History …………………………………………………….. 1

    The Texas Litigation …………………………………………………… 3

        Texas Defendants' Motions to Stay Texas Actions ………………  3

        Motions to Reconsider Denial of Motions to Stay ……………….  5

        Expiration of the Stay and Motions to Renew …………………….  6

        Recent Settlement Activity ………………………………………….. 8

    The Massachusetts Stay ……………………………………………… 9

    DataTern's Offer To Stay ……………………………………………… 10

ARGUMENT …………………………………………………………... 11

I.  SAP Fails To Satisfy The Traditional Requirements
    For Obtaining Injunctive Relief ……………………………………  11

    A.     There Is No Irreparable Harm, There Is An Adequate Remedy At
             Law And The Scope Of Any Success For SAP Is More Limited
             Than It Represents …………………………………………………12

    B.     SAP's Factual Premise For Seeking The Injunction, That
             Its Customers Are Being Harassed About Infringement Claims
             Based On Their Use Of SAP Products, Is False ………………… 13

II.  The Court Should Reject SAP's Request for Injunctive Relief Under The
    Customer-Suit Exception And Similar Cases…………………………….. 14

III.  There Is No Enforceable Final Judgment On Which To Base An
    Injunction…………………………………………………………………….19

IV.  The Texas District Court's Consideration, And Final Rejection, Of The
    Customer-Suit Exception To The First-To-File Rule Should Be Respected… 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*A.P.T., Inc. v. Quad Environmental Technologies Corp., Inc.*,
  698 F.Supp. 718 (N.D. Ill. 1988) ...........................................................................24

*Advanced Communication Design, Inc. v. Premier Retail Networks, Inc.*,
  46 Fed. Appx. 964, 2002 WL 31108793 (Fed. Cir. 2002) .......................................22

*Alke B.V. v. L.B. White Co., Inc.*,
  2008 WL 2447357 (W.D.N.C. June 13, 2008) ........................................................23

*Apeldyn Corp. v. Sony Corp.*,
  852 F. Supp. 2d 568 (D. Del. 2012) ........................................................................23

*Atari Games Corp. v. Nintendo of America, Inc.*,
  897 F.2d 1572 (Fed. Cir. 1990)..........................................................................18, 19

*BBC Intern. Ltd. v. Lumino Designs, Inc.*,
  441 F. Supp. 2d 438 (E.D.N.Y. 2006) .....................................................................24

*Bergh v. State of Washington*,
  535 F.2d 505 (9th Cir. 1976) ...................................................................................27

*Codex Corp. v. Milgo Electronic Corp.*,
  553 F.2d 735 (1st Cir. 1977).....................................................................................25

*Cybor Corp. v. FAS Techs, Inc.*,
  138 F.3d 1448 (Fed.Cir. 1998) (en banc).................................................................26

*DataTern, Inc. v. MicroStrategy Corp.*,
  Docket No. 11-cv-12220 (D. Mass.)..........................................................................14

*eBay Inc. v. Mercexchange, L.L.C.*,
  547 U.S. 388 (2006)............................................................................................18, 22

*Epperson v. Entertainment Express, Inc.*,
  242 F.3d 100 (2d Cir. 2001)......................................................................................26

*In re Laughlin Products, Inc.*,
  265 F. Supp. 2d 525 (E.D. Pa. 2003) .......................................................................24

*Intergraph Corp. v. Intel Corp.*,
  195 F.3d 1346 (Fed. Cir. 1999).................................................................................22

*JoeScan, Inc. v. LMI Techs., Inc.*,
  2007 U.S. Dist. LEXIS 65498 (W.D. Wash. Sept. 5, 2007)....................................25

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989)...................................................................................22, 23

*Katz v. Lear Seigler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990)...................................................................................21, 25

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*,
    342 U.S. 180 (1952)......................................................................................................23, 25

*Kessler v. Eldred*,
    206 U.S. 285 (1907)......................................................................................................26, 27

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Organisation*,
    2007 WL 4376104 (E.D. Tex. Dec. 13, 2007), *aff'd* on other grounds, 2008
    WL 4680559 (Fed. Cir. 2008).............................................................................................23

*National Union Fire Ins. Co. of Pitts., PA v. Payless Shoe Source, Inc.*,
    2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ....................................................................27

*Phonometrics v. N. Telecom*,
    133 F.3d 1459 (Fed. Cir. 1998).........................................................................................26

*ProBatter Sports, LLC v. Joyner Techs., Inc.*,
    463 F. Supp. 2d 949 (N.D. Iowa 2006)............................................................................21

*Tegic Communications Corp. v. Board of Regents of the Univ. of Texas Sys.*,
    458 F.3d 1335 (Fed. Cir. 2006).........................................................................................22

*Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*,
    676 F. Supp. 2d 321 (D. Del. 2009)..................................................................................23

*Williams Gold Refining Co. v. Semi–Alloys, Inc.*,
    198 U.S.P.Q. 100 (W.D.N.Y. 1978) .................................................................................24

*Zemel Bros., Inc. v. Dewey Electronics Corp.*,
    218 U.S.P.Q. 722 (N.D.N.Y. 1982) ..................................................................................24

**RULES**

Fed. R. Civ. P. 52(a) ..............................................................................................................15

SAP AG and SAP America, Inc.'s ("SAP") moving papers do not support the demand for the extraordinary remedy they seek.  The United States District Court for the Eastern District of Texas (the "Texas District Court") has already decided that the Texas Actions should proceed and that the customer-suit exception does not apply.  The injunctive relief that SAP seeks would cause harm, potentially irreparable harm, to DataTern's rights in another forum after the Court in that forum determined, on the basis of virtually all of the information being presented to this Court, that DataTern should no longer have to wait to have its rights adjudicated there.  This Court should reject SAP's Motion.

## FACTUAL HISTORY

### Brief Patent History

DataTern owns U.S. patent numbers 5,937,402 (the "'402 patent" or the "'402'") and 6,101,502 (the "'502 patent" or the "'502'").  The '402 patent is titled "System For Enabling Access To A Relational Database From An Object Oriented Program."  The '502 patent is titled "Object Model Mapping and Runtime Engine for Employing Relational Database with Object Oriented Software."  DataTern accuses defendants of infringing one or more of the claims of the '402 and '502 patents.

Historically, object oriented applications had a difficult time accessing data from relational databases. The difficulty stems from the difference in the structure of objects from the structure of tables. The '402 patent teaches solving this problem using logical tables that are representations of the table structure in the relational database and permit object oriented applications to access the relational database.  The claimed normalized relational schema objects ("NRSOs") are used to represent the logical tables.

The '502 patent teaches solving this problem by using Interface Objects. A map is created between the database tables and a selected object model. A request from an object that is part of the object oriented application, via the runtime engine, causes the runtime engine to create the interface object to access the database.

The '502 patent resulted from extensive work by the inventors in 1997 to develop new object to relational mapping technology aimed at allowing end users to access discrete sets of data from large databases without having to re-write code after each executed query. *See* DataTern, Inc. Counterstatement of Facts in Response to SAP AG and SAP America, Inc.'s Motion for Summary Judgment ("CSoF"), p. 29-31, ¶5, 6, 9, 10. The invention was created in connection with product development by Ontos, Inc. that was intended to address marketplace and customer issues concerning the use and accessibility of data.

In September 2000, Ontos launched ObjectSpark, a software product which embodied the '502 patent. CSoF, p. 31 ¶14. In 2001, a new company, FireStar Software, was created to develop and commercialize ObjectSpark and the '502 patent, which FireStar acquired from Ontos. CsoF, p. 33 ¶21-22. During 2001 and 2002, SAP negotiated with FireStar about acquiring the rights to the '502 patent, SAP having concluded that the '502 was one of the ten most important patents at the time. CSoF, pp. 33-34, ¶23-25. When the negotiations ended, FireStar continued developing and licensing ObjectSpark until it discovered that another party had infringed the '502 patent in 2005. CSoF, pp. 35-36, ¶32-35. In 2007, FireStar divested itself of the '402 and '502 patents so that it could concentrate on its software development business. CSoF, pp. 36-38 ¶39-41,46-48,50.

**The Texas Litigation**

In 2006, FireStar sued Red Hat, Inc. for infringement of the '502 patent in Texas

District Court.  By 2009, DataTern, which acquired the patents in 2007, learned that there

was widespread infringement of the '402 and '502 patents.  CSoF, p. 39 ¶55.  As a result,

DataTern filed several lawsuits in Texas District Court against entities that it had a good

faith basis to believe were infringing the patents.  Among the lawsuits were/are

*DataTern, Inc. v. Staples, Inc., et al,* C.A. No. 2:10-cv-133 (the "Staples Litigation"),

which was filed in 2010; *DataTern, Inc. v. Eli Lilly & Company, Inc., et al,* C.A. No.

2:10-cv-413 (the "Lilly Litigation"), also filed in 2010; and *DataTern, Inc. v. Abbott*

*Laboratories, Inc., et al,* C.A. No. 2:11-cv-203 (the "Abbott Litigation") (collectively the

"Texas Actions" and the individual defendants in the Texas Actions the "Texas

Defendants"), which was filed in 2011.  The Complaints in the Staples Litigation and the

Lilly Litigation accuse each of the defendants of infringing the '402 and the '502 patents

and do not mention either Microsoft or SAP.  *See Declaration of Scott J. Nathan, Esq.*

*("Nathan Decl.")* at Ex. A and B, respectively.

**Texas Defendants' Motions to Stay Texas Actions**

In April 2011, SAP filed this lawsuit in New York, ***choosing a forum other than***

***the Texas District Court or its home forum*** to adjudicate infringement.  In early August

2011, most of the defendants in the Lilly Litigation and the remaining defendants

(Staples, J.C. Penney and Sears) in the Staples Litigation, in separate motions, requested

that the Texas District Court stay both cases based on the customer-suit exception to the

first-to-file rule.  *See Declaration of Edward R. Reines ("Reines Decl.")* Ex. D, E.  The

bases for both motions were essentially the same: Microsoft and SAP had filed

declaratory judgment actions in this Court alleging that the '402 and '502 patents were invalid, neither Microsoft's products nor SAP's BusinessObjects directly infringed the patents, neither company contributed to or induced infringement of the patents by their respective customers, and the New York litigation would resolve the infringement claims in the Texas Actions. *Id.* In addition, the Staples defendants apprised the Texas District Court of some of the terms of DataTern's Initial Infringement Contentions, which had been served months earlier, in an effort to convince the Texas Court that use of the SAP and Microsoft products were the only basis for DataTern's infringement claims.

In its opposition to the Motion to Stay in the Lilly Litigation, DataTern made clear that it was not accusing the Texas Defendants of being, and was not relying on a claim that the Texas Defendants were, mere resellers of Microsoft or SAP software. Instead, DataTern accused the Texas Defendants of "creating their own systems using the manufacturers' products as tools," *see Nathan Decl.* at Ex. C, p. 2. In DataTern's opposition to Staples' Motion to Stay, which was supported by DataTern's Initial Infringement Contentions against the Staples defendants, DataTern explained that (a) Staples, et al., were using "software components, or "Tools," to create independent, proprietary systems, which, when used by the "[Texas] Defendants, practice independent method claims of the patents-in-suit," *see Nathan Decl.*, at Ex D, p. 3; and (b) the discovery and other pre-trial activities already completed in the case made it inappropriate to stay the Staples Litigation. *See Nathan Decl.*, at Ex D, p. 4-6.

On November 29, 2011, the Texas District Court denied Lilly's Motion to Stay, concluding that DataTern would be prejudiced by a stay and that, based on DataTern's assertions that the infringement accusations went beyond mere resale of the

4

manufacturers' products and the Texas Defendants' refusal to be bound by a decision in the New York cases, the customer-suit exception to the first-filed rule should not be applied. *See* Order, *Reines Decl.*, at Ex. H. On January 24, 2012, notwithstanding claims by the Staples defendants that DataTern's Initial Infringement Contentions supported the application of the customer-suit exception, the Texas District Court denied the Motion to Stay. In so doing, the Texas Court found the Staples defendants' refusal to be bound by the outcome of the cases in New York significant. *See* Order, *Reines Decl.* at Ex. G, p. 4.

**Motions to Reconsider Denial of Motions to Stay**

In early February 2012, shortly after this Court denied DataTern's Motion to Dismiss or, in the Alternative, for a Stay, the Lilly and Staples defendants filed separate but essentially identical motions for reconsideration of the Texas District Court's decisions to deny the stay. In an Order dated March 12, 2012, the Texas District Court reversed its prior Orders and imposed a stay.[1] As grounds for its reversal, the Texas Court opined that a stay would avoid duplicative litigation and simplify the issues in the Texas Actions.

Thereafter, on July 14, 2012, in response to DataTern's Motion for Reconsideration of the stay, the Texas District Court ordered that the stay would automatically expire on the first to occur of the date on which this Court issued its claim construction ruling or August 12, 2012. *See* Order, *Reines Decl.* at Ex. M, p. 8. In its decision to impose time limits on the stay, the Texas Court recognized both that DataTern's right to enforce its patents would be harmed, and the defendants' statement

---

[1] Prior to February 2012, the defendants in the Abbott Litigation did not participate in the motion practice regarding a stay of the litigation. In February 2012 several of the Abbott defendants requested a stay that was unopposed. On March 24, 2012, the Texas District Court ordered a stay in the Abbott case until such time as the stays in the Staples and Lilly cases were lifted.

that the harm would be of limited duration because this Court's *Markman* hearing was scheduled for late July 2012.  *See* Order, *Reines Decl.* Ex. M, p. 6-7.

**<u>Expiration of the Stay and Motions to Renew</u>**

The stays imposed by the Texas Court expired on August 12, 2012.  The Lilly defendants filed a Motion to Stay and Administratively Close case on August 14.  *See* Motion to Stay, *Reines Decl.* at Ex. O.  The Staples defendants filed a Motion to Extend Stay on August 15.  *See* Motion to Stay, *Reines Decl.* at Ex. N.  The arguments in these Motions were: the Texas Court had good reason to impose the stay previously; the claim construction proceedings in the New York cases were almost concluded and those cases were scheduled for trial on December 10; a settlement in the New York cases would render the Texas Actions moot; and the underpinnings of the customer-suit exception still applied.  *See* Motion to Stay, *Reines Decl.* at Ex. N, Motion to Stay, *Reines Decl.* at Ex. O.

In response, DataTern fully informed the Texas Court of the issues and status of the pending cases (including this case).  Specifically, DataTern informed the Court of the following:

> On August 24, 2012, the New York Court issued its claim construction order regarding some of the disputed (and undisputed) claim terms of the patents in suit.  Following its receipt of the Court's *Markman* Order, DataTern informed SAP, Microsoft and the New York Court, that it could not prove infringement based on the Court's Claim Construction Order. At the same time, DataTern served its expert report on infringement on Microsoft and SAP, providing an opinion of non-infringement based on the New York Court's construction of the disputed terms and an opinion of infringement based on DataTern's construction of the disputed terms. So that it could immediately appeal the Court's claim construction order to the Federal Circuit, DataTern moved for a declaratory judgment of non-infringement, and sought dismissal without prejudice of SAP's and Microsoft's invalidity claims with all other issues reserved for any potential post-appeal remand.  SAP and Microsoft objected to DataTern's

6

motion, arguing that they should be permitted to establish a full record for appeal by deposing DataTern's expert and moving for summary judgment on all grounds supporting non-infringement. The New York Court agreed with SAP and Microsoft, establishing a schedule for the deposition of DataTern's expert and the briefing of summary judgment motions (October 26 through December 3, 2012) on infringement. No motions for summary judgment have been filed yet. However, in light of the New York Court's schedule, DataTern anticipates that the New York Court will issue its final judgment in December 2012 or early January 2013.

Plaintiff's Response to Motion to Stay, *Reines Decl.* at Ex. P, at p. 3-4, and Plaintiff's Response to Motion to Stay, *Reines Decl.* at Ex. Q, at p. 3-4. In support of its argument that it will be prejudiced by an ongoing, interminable stay of the infringement claims in Texas, DataTern said:

If the applications developed by the defendants infringe DataTern's patents as the claims have been construed by the New York Court, then DataTern should be given the opportunity to prove it. . . . [DataTern] should be permitted to develop the evidence of infringement concerning the applications developed by the defendants that are separate from ADO.NET or ADO.NET Entity Framework. DataTern's contemplated discovery would have to occur even if the New York Court's claim construction were upheld on appeal. As a result, no benefit is recognized by continuing the broad stay requested by the defendants —other than defendants will not have to defend their own products for an undetermined amount of time.

Plaintiff's Response to Motion to Stay, *Reines Decl.* at Ex. P, at p. 7-8, and Plaintiff's Response to Motion to Stay, *Reines Decl.* at Ex. Q, at p. 3-4.

In reply, the Staples defendants argued that DataTern requested a temporary stay of infringement litigation concerning the '502 patent pending in the District of Massachusetts[2] in the interest of judicial economy, and should not be permitted to argue the opposite position in Texas. In its sur-reply, DataTern once again informed the Texas Court that the claims pending in the Staples and Lilly cases involved possible infringement that exceeded the scope of the claims in this case and the Massachusetts

---

[2] *DataTern, Inc. v. MicroStrategy Corp.,* Docket No. 11-cv-12220 (D. Mass.), and consolidated cases.

case and should be permitted to go forward.  *See* Plaintiff's Sur-Reply to Defendants'
Motion to Extend Stay, *Reines Decl.* at Ex. R ("DataTern's theories of infringement by
software developers – Microsoft, SAP and MicroStrategy – are simply different than the
theories of infringement for end users like the defendants in [the Texas Actions]").

The Texas District Court, in an Order entered on November 20, 2012, concluded
that an additional stay was unwarranted.  *See* Order, *Reines Decl.* Ex. S.  First, while
being fully apprised of this Court's claim construction ruling, DataTern's concession of
non-infringement based on that ruling, and DataTern's request for a stay in the
Massachusetts litigation, the Texas Court nevertheless found "that DataTern would be
prejudiced by a renewed stay." *Id.*, p. 4.  The Court also said it was not convinced that
judicial resources would be saved by staying the Texas Actions a second time.  *Id.*  As a
result, the Court would not stay the Texas Actions again.[3]

**Recent Settlement Activity**

DataTern has occasionally engaged in settlement discussions with various
defendants in the Texas Actions since this case was filed.  Since approximately October
1, 2012, Timothy Haller, Esq., former counsel for DataTern in this case and in the
Texas Actions, has been authorized by DataTern to contact defendants in the Texas
Actions to explore the possibility of settlement.  *See* Declaration of Timothy Haller,
Esq. ("*Haller Decl.*"), attached as Ex. 2, at ¶2.  Mr. Haller has communicated with
Texas defendants through their outside counsel of record.  According to Mr. Haller, the
existence and content of those communications were understood by him to be
confidential.  *Id.*

---

[3] The Texas Court also ordered the appointment of a technical advisor and ordered the parties to agree on a
Scheduling and Discovery Order.

In anticipation of these discussions, Mr. Haller's office prepared infringement claim charts directed at each of the remaining Texas defendants. Each of these infringement claim charts applied the rulings by this Court in its Markman Opinion and Order dated August 24, 2012 **to Microsoft products only**. These infringement claim charts were silent regarding SAP's BusinessObjects products. *See Haller Decl.*, ¶ 3.

Contrary to the statements and inferences offered by SAP in the Motion, Mr. Haller states:

> In all of my contacts with Texas defendants since about October 1, 2012, I have never mentioned or suggested that a basis for any settlement is or should be the customer's use of SAP's BusinessObjects. Put differently, every communication with each Texas defendant has been focused entirely on their infringement in connection with the use of Microsoft products. To the extent any of the Texas defendants engaged in settlement discussions with me I presumed it was based on the updated infringement claim charts I sent to their counsel.

*Haller Decl.*, ¶ 5.

## The Massachusetts Stay

In late 2011, DataTern sued MicroStrategy Inc., a company that develops and sells a business intelligence reporting platform, and a number of its customers for infringement of the '502 patent in Federal District Court in Massachusetts. The cases were consolidated and eventually all of the MicroStrategy customers agreed to be bound by the outcome of the infringement dispute between DataTern and MicroStrategy. On April 26, 2012, DataTern moved to voluntarily dismiss all of the customer-related claims other than those for direct and indirect infringement based solely on the use of the MicroStrategy platform. *See* Plaintiff's Notice Regarding and Motion to Dismiss Without Prejudice Infringement Claims That Are Independent of Defendants' Use of Products of MicroStrategy, Inc., *Nathan Decl.* Ex. E. The Massachusetts District Court,

on July 5, 2012, approved DataTern's motion to dismiss.  *See* Electronic Order, *Nathan Decl.* Ex. F.

Shortly after this Court issued its claims construction ruling, DataTern requested that the Massachusetts District Court temporarily stay the proceedings in that case.  *See* Plaintiff DataTern, Inc.'s Memorandum in Support of Motion for Stay of Proceedings Until U.S. District Court for the Southern District of New York Enters Judgment of Non-Infringement, *Reines Decl.*, Ex. T.  Unlike the circumstances in the Texas Actions, where a variety of infringement claims are pending against end users for building their own infringing applications, as well as using products other than SAP's BusinessObjects, DataTern's claims in Massachusetts are focused on MicroStrategy's platform and all of MicroStrategy's customers are bound by the result of the consolidated case. Consequently, based on this Court's construction of the claims in the '502 patent, DataTern likely could not prove infringement by the MicroStrategy platform, the only claim in the case, and therefore requested the temporary stay.  The situation in the Texas Actions, in contrast, which involves users building their own infringing applications based on their use of Microsoft and SAP products (among other things) is therefore very different.

**DataTern's Offer To Stay**

SAP has attached as Exhibit A to the Reines Declaration a string of emails that make DataTern's effort to provide comfort to SAP clear.  More specifically, and despite DataTern's repeated unsuccessful requests for additional information from SAP concerning the basis for SAP's concerns, DataTern offered to stipulate in a letter agreement that it would not pursue claims of infringement against SAP's customers based

on their use of BusinessObjects products without more.  However, DataTern could not

agree to forego such claims to the extent they involve enhancements of BusinessObjects

that infringe without regard to the basic operation of BusinessObjects.  DataTern made

this offer twice; SAP's response the second time was the filing of the Motion.  SAP's

rejection of DataTern's offer makes clear SAP's true intention, which is to attempt to

override the decision of the Texas District Court.

## ARGUMENT

SAP does not meet its burden of showing an entitlement to injunctive relief.

Accordingly, SAP's motion should be denied.

## I.    SAP Fails To Satisfy The Traditional Requirements For Obtaining Injunctive Relief

In patent infringement actions, the ordinary factors for obtaining injunctive relief,

*i.e.*  (1) irreparable harm; (2) inadequate remedies at law; (3) balancing of the hardships;

(4) likelihood of success on the merits; and (5) the public interest, must be established.

*See eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 394 (2006) ("the decision whether

to grant or deny injunctive relief rests within the equitable discretion of the district courts,

and … such discretion ***must be exercised consistent with traditional principles of equity,***

***in patent disputes no less than in other cases governed by such standards***.") (emphasis

added).  Moreover, "[t]he granting of a preliminary injunction is an extraordinary

remedy….  The court must examine carefully extraordinary relief which precludes the

filing of civil lawsuits for an indeterminate period of time. A preliminary injunction must

be supported by sufficient factual evidence and a sufficient basis must be articulated by

the court in the order granting the injunction."  *Atari Games Corp. v. Nintendo of*

*America, Inc.*, 897 F.2d 1572, 1578 (Fed. Cir. 1990).[4]  In light of this express holding, and SAP's failure to satisfy the traditional requirements for securing injunctive relief, SAP's Motion should be denied.

>    **A.      There Is No Irreparable Harm, There Is An Adequate Remedy At Law, And The Scope Of Any Success For SAP Is More Limited Than It Represents**

The only information offered by SAP to the Court makes it clear that SAP cannot meet the traditional standard for injunctive relief.  There is no admissible evidence highlighting any form of irreparable harm.  Indeed, the only harm for which any information is supplied, the out-of-court statement of an unnamed Texas defendant to Lisa Buccino, is that several of the Texas defendants have requested indemnification.[5] As SAP has repeatedly made clear to everyone, the settlements in the Texas Actions involve the payment of money in exchange for a license.  This means that, if any harm has arisen, there is an adequate remedy at law (*i.e.*, money damages).

Moreover, the success that SAP is trumpeting as the reason it is entitled to the injunction is in fact more limited than SAP represents.  DataTern has conceded that if this Court's claims construction ruling becomes final and is not altered, DataTern will be unable to prove that SAP's BusinessObjects products infringe the '502 patent.  This concession is, and has always been, limited to the use of BusinessObjects products as an

---

[4] In *Atari* the Federal Circuit noted "[a]s a general rule, a preliminary injunction should not issue on the basis of affidavits alone…  Moreover, a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff….  When granting an injunction, Rule 52(a) requires that a court set forth the findings of fact and conclusions of law which are the basis of its decision.  Fed. R. Civ. P. 52(a).  The district court need not make binding findings of fact, but at the very least, must find probabilities that the necessary facts can be proved."  *Id.* at 1575-76 (citations omitted).

[5] Notwithstanding document requests served by DataTern on SAP in this case seeking copies of indemnity agreements between SAP and any of its customers in the Texas Actions, and repeated written and informal requests that SAP produce such documents, SAP has failed to produce any such agreements. Consequently, there is substantive argument that any reimbursement by SAP is purely voluntary.

end product, *i.e.*, unaltered by third parties that themselves may create infringing products. It has never been a blanket concession that all of SAP's products, or all third party uses of SAP's BusinessObjects products, do not infringe. Indeed, as DataTern has taken pains to articulate in the Massachusetts action and the Texas Actions, this concession has different impacts in different places.

In the early stages of the Massachusetts cases, DataTern dismissed without prejudice its claims against MicroStrategy's customers for infringement unrelated to the off-the-shelf use of the MicroStrategy application. Consequently, the Massachusetts cases will only resolve whether the MicroStrategy platform infringes the '502 patent. So, to the extent the claim construction ruling by this Court bears on the methods used by the MicroStrategy products, the final claims construction ruling in this case could impact DataTern's claims in Massachusetts.

In contrast to the Massachusetts cases, the Texas Actions have always involved claims that the Texas defendants are, among other things, creating infringing applications either in conjunction with and/or independently of their use of SAP and Microsoft products. The Complaints in the Texas Actions and various pleadings in those cases make this point quite clear. As such, and as the Texas District Court recognized in its November 20 Orders, all of DataTern's claims of infringement should proceed to conclusion.

**B.  SAP's Factual Premise For Seeking The Injunction, That Its Customers Are Being Harassed About Infringement Claims Based On Their Use Of SAP Products, Is False**

SAP offers as the sole basis for rushing into Court for emergency injunctive relief the vague, hearsay statement of its Senior Counsel, Lisa Buccino, coupled with an

inference, that DataTern is pursuing settlement based solely on claims of infringement arising from the use of BusinessObjects. The statement and the inference are rebutted by the contrary admissible statements of DataTern's sole representative in the settlement discussions with the Texas defendants, Tim Haller.

As described above, Mr. Haller testifies that his discussions with Texas defendants regarding settlement, which have been ongoing since well before the Texas District Court's recent decision concerning the stay, and which he thought were confidential until he read SAP's Motion, did not involve claims against SAP's BusinessObjects products at all. Rather, after this Court's claim construction ruling Mr. Haller's office prepared claim charts concerning Microsoft products only and presented those charts to one or more of the Texas defendants. Mr. Haller declares under oath that he never discussed infringement concerning BusinessObjects, much less urged that such infringement is a basis for settlement. In addition, Mr. Haller declares that one or more of the Texas defendants have contacted him about settlement and offered terms for settlement. With these facts in mind, SAP can offer no basis for this Court to enjoin DataTern on an emergency or any other basis.

## II. The Court Should Reject SAP's Request for Injunctive Relief Under The Customer-Suit Exception And Similar Cases

In the patent infringement context, courts have discretion to enjoin a first-filed lawsuit against a customer reseller if a second-filed declaratory infringement suit is brought by the manufacturer, who is deemed the real party in interest, in the manufacturer's home forum. *See Katz v. Lear Seigler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990); *ProBatter Sports, LLC v. Joyner Techs., Inc.*, 463 F. Supp. 2d 949 (N.D. Iowa 2006). While some have read *Katz* to stand for the proposition that the traditional five-

part test for an injunction does not apply in the customer-suit injunction context, that issue was conclusively resolved by the Supreme Court in *eBay* (as discussed above). Assuming, without conceding, that SAP must satisfy a lesser standard for injunctive relief than is required by *eBay, supra,* SAP still fails to meet that lesser standard.

As the moving party, SAP bears the burden of showing that it is entitled to the relief it seeks. *See Advanced Communication Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. Appx. 964, 967, 2002 WL 31108793, at *1 (Fed. Cir. 2002) ("Given that a movant for a preliminary injunction always maintains the burden of establishing an entitlement to such extraordinary relief, we conclude that Advanced's conclusory assertion cannot establish an entitlement to that relief here."); *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1351 (Fed. Cir. 1999) ("The burden of establishing entitlement to the injunction is on the movant.").

Because the customer-suit exception provides a marked departure from traditional practice, courts construe the exception narrowly, and routinely refuse to apply the exception unless the first-filed suit involves a suit against a "mere reseller" of the infringing product while the second-filed action involves the actual manufacturer itself proceeding in its home forum. Where the accused defendants in infringement proceedings are not mere resellers, and the accused infringing product is not the only product being used and/or sold by the defendants, the application of the customer-suit exception loses its primary justification, to wit, that it will resolve the issues in the customer suits. *See Tegic Communications Corp. v. Board of Regents of the Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-1082 (Fed. Cir. 1989) ("in those cases in which a customer suit exception has been held to

favor the forum of the second-filed action, the second action would resolve all charges against the customers in the stayed suit, including liability for damages." *Id.* at 1081); *Microsoft Corp. v. Commonwealth Scientific and Indus. Research Organisation*, 2007 WL 4376104, at *3 (E.D. Tex. Dec. 13, 2007) ("the customers' end products are what allegedly directly infringe, not the components.  The Marvell Action would not completely resolve the issues of the Microsoft and Toshiba Actions as the fact-finder would still need to find that the customers directly infringed before finding that Marvell indirectly infringed.  Therefore, the customer suit exception does not apply."), *aff'd* on other grounds, 2008 WL 4680559 (Fed. Cir. 2008).  *See also Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185-86 (1952) ("[t]he manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgment Act to give him a paramount right to choose the forum for trying out questions of infringement and validity.").  If more than merely reselling is involved by the customers, as DataTern alleges, then the customer-suit exception is inapplicable and the requested injunction is not appropriate.  *See Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 576 (D. Del. 2012) ("Sony is more than a mere reseller of goods, and the 'customer suit' exception is inapplicable."); *Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*, 676 F. Supp. 2d 321, 327 (D. Del. 2009) ("The customer suit action exception is used when the first suit is filed against a customer who is a mere reseller of the accused goods …."); *Alke B.V. v. L.B. White Co., Inc.*, 2008 WL 2447357, at *3 (W.D.N.C. June 13, 2008) (refusing to apply the customer-suit exception when "GFP is not a 'mere customer,' but … 'is involved in the manufacturing and assembly that takes place after the components delivered by Alke arrive' ….").

As a corollary, the customer-suit exception does not apply when, as here, a process or method patent is involved.  *See In re Laughlin Products, Inc.*, 265 F. Supp. 2d 525, 537 (E.D. Pa. 2003) ("where the patentee alleges that the customers themselves have directly infringed the method or process disclosed in the patent, the customer suit exception does not apply."); *Williams Gold Refining Co. v. Semi–Alloys, Inc.*, 198 U.S.P.Q. 100 (W.D.N.Y. 1978) (denying motion to enjoin first-filed actions against customer claiming infringement of a method patent because such actions were not against "mere customers"); *Zemel Bros., Inc. v. Dewey Electronics Corp.*, 218 U.S.P.Q. 722, 724 (N.D.N.Y. 1982) ("Although the present action involves the manufacturers and the prior actions involve customers, since the customer suits allege violations of a patented process, enjoining these prior actions would not be appropriate."); *A.P.T., Inc. v. Quad Environmental Technologies Corp., Inc.*, 698 F.Supp. 718, 722 (N.D. Ill. 1988) (same).

Further, the presumption favoring the manufacturer's suit only applies when the manufacturer suit is filed in its home-forum.  *See*, *e.g.*, *BBC Intern. Ltd. v. Lumino Designs, Inc.*,   441 F. Supp. 2d 438, 443 (E.D.N.Y. 2006) ("In any event, although the Illinois Action otherwise bears the basic hallmarks of a customer suit, the exception is inapplicable because BBC did not properly file its declaratory judgment action in its home forum."); *A.P.T., Inc.*, 698 F. Supp. at 722 ("there is no concern here that Calvert would be deprived of its home forum. The Northern District of Illinois is not a home forum to Calvert and enjoining the San Francisco lawsuit so that Calvert can maintain its action here would not further the goals behind [28 U.S.C.] § 1400(b).").[6]

---

[6] SAP AG, the parent company, is incorporated in Walldorf, Germany, and its U.S. subsidiary, SAP America, Inc., is a Delaware corporation with its principal place of business in Pennsylvania.  New York, therefore, is clearly not SAP's home forum and raises questions about whether SAP was forum shopping when it filed this lawsuit.

Applying the above law, the customer-suit exception cannot be applied here for several reasons.  First, DataTern has never accused, and does not now accuse, any of the Texas Defendants of being mere resellers.  To the contrary, the record is quite clear that these customers are being accused of using the accused products and then developing infringing works of their own.  *See JoeScan, Inc. v. LMI Techs., Inc.*, 2007 U.S. Dist. LEXIS 65498, at *6 (W.D. Wash. Sept. 5, 2007) (denying request to enjoin customer suits, holding "[a]s a result, the Court should not find that NBE is a 'mere customer' of JoeScan as set forth by the court in [*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)]").

Second, SAP's BusinessObjects is not the only product being used by the Texas Defendants to infringe.  Again, the record is quite clear that Microsoft products are being used to infringe, and this infringement is part of every claim against every defendant. Where there is an accusation that a customer is using or distributing more than one infringing product by multiple manufacturers, an injunction is inappropriate.  *Cf. Katz v. Lear Seigler, Inc*., 909 F.2d at 1464-5 (plaintiff, representing himself pro se, did not substantiate that the customer defendants were dealers of infringing goods of several manufacturers, so the customer-suit exception applied).

Finally, and as suggested in *Kerotest*, a manufacturer takes a risk when it chooses to seek declaratory relief in a jurisdiction other than the one in which the patentee has already filed suit that issues may be litigated in parallel.  DataTern filed the Staples case and the Lilly case almost a year before SAP filed this case.  In a blatant example of forum shopping, SAP chose to file in New York rather than Texas, where SAP could have consolidated all of the claims.  (SAP did not even attempt to file in its home forum,

which is a prerequisite to the application of the customer-suit exception.)  The Court

should not reward SAP for its forum shopping, and should permit DataTern to pursue its

claims in Texas.

### III.    There Is No Enforceable Final Judgment On Which To Base An Injunction

SAP's Motion and some of the cases it cites in support of the imposition of an

injunction in these circumstances do not support its request.  First, SAP treats this Court's

claim construction order as final, but that is not the case.  A district court's claim

construction is an interlocutory order not subject to appeal.  *See Cybor Corp. v. FAS*

*Techs, Inc.,* 138 F.3d 1448, 14799 (Fed.Cir. 1998) (en banc) (Newman, J., additional

views) (claim construction ruling interlocutory and not subject to appeal); *Phonometrics*

*v. N. Telecom*, 133 F.3d 1459, 1464 (Fed. Cir. 1998) (claim construction ruling has no

preclusive effect).  In the Second Circuit, it is necessary to demonstrate that the issue

being litigated "was necessary to support a valid and final judgment on the merits" before

it will be given preclusive effect.  *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100,

108 (2d Cir. 2001).  Consequently, and at a minimum, SAP must wait for the entry of a

valid and final judgment in this case concerning issues that are relevant to the Texas

Actions before there can be a basis for enjoining DataTern's litigation in the Texas

Actions.

Second, SAP's citation to *Kessler v. Eldred*, 206 U.S. 285 (1907), is of no help to

SAP's cause.  *Kessler* arose after judgment entered against Eldred, the patent holder, for

non-infringement.  In finding that Eldred should be enjoined from suing Kessler's resale

customers, the Supreme Court held:

> The effect which may reasonably be anticipated of harassing the purchasers of Kessler's manufactures by claims of damages on account of the use of them would be to diminish Kessler's opportunities for sale. . . . ***That the effect to be anticipated was the actual effect of the Breitwieser suit is shown by the statement of facts. Kessler's customers ceased to send orders for lighters, and even refused to pay for those which had already been delivered.***

*Id.* at 209 (emphasis added). Here, in addition to the fact that there is no final judgment in this case, SAP has provided no evidence, admissible or otherwise, that any customer has threatened to or actually ceased doing business with SAP, or that SAP has lost sales, revenue or market share as a result of DataTern's claims in Texas; indeed, SAP's market share seems to continue growing. Consequently, there is no basis for the Court to enjoin DataTern.

### IV.    The Texas District Court's Consideration, And Final Rejection, Of The Customer-Suit Exception To The First-To-File Rule Should Be Respected

An injunction seeking to enjoin a party from litigating before another court further implicates considerations of comity. *See*, *e.g.*, *Bergh v. State of Washington*, 535 F.2d 505 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."); *National Union Fire Ins. Co. of Pitts., PA v. Payless Shoe Source, Inc.*, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ("principles of comity restrain a district court from enjoining an action underway in a sister court."). *See also* 1 IP Litigation Guide: Patents & Trade Secrets § 6:6 ("Although the court has inherent power to stay its own proceedings, comity among courts requires consideration of the effect on the other tribunal when an injunction is being considered.").

The record and other evidence presented thus far in this case makes it clear that DataTern is accusing the Texas defendants of infringement based on the use and development of applications unrelated to SAP's BusinessObjects (and SAP has not met its burden of showing otherwise). The Texas District Court was presented with all of the information currently available to all parties, including DataTern's initial infringement contentions served in the Texas Actions. On that basis, the Texas District Court ruled that the Texas Actions should proceed. This Court, exercising discretion and prudence, should not undermine the authority and decision of the Texas Court.

## CONCLUSION

On the basis of the foregoing, DataTern respectfully requests that the Court deny SAP's Motion to Enjoin DataTern.

DATATERN, INC.
By its Attorney,


 /s/ Scott J. Nathan_____
Scott J. Nathan
BBO# 547278
200 Homer Avenue
Ashland, MA  01721
Telephone: (508) 881-0060
 sjnathan@mindspring.com

Date:   December 13, 2012

## CERTIFICATE OF SERVICE

I certify that, on the above date, I served copies of this document on counsel of record for each other party through the Court's CM/ECF system.

/s/ Scott J. Nathan_____
Scott J. Nathan

21